**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION**

| | |
|---|---|
| EMERSON CREEK POTTERY, INC., ) | Civil Case No.: ___6:20CV00054___ |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| COUNTRYVIEW POTTERY CO., ) | |
| EMERSON CREEK EVENTS, INC., ) | |
| CHRISTINA DEMIDUK and ) | |
| DAVID DEMIDUK ) | |
| ) | |
| Defendants. ) | |

Plaintiff, Emerson Creek Pottery, Inc. ("Plaintiff"), by and through its attorneys, submits this Complaint for federal and common law trademark infringement, false designation of origin, unfair competition and breach of contract against Defendants Countryview Pottery Co., Emerson Creek Events, Inc., Christina Demiduk and David Demiduk (collectively "Defendants"), and, in support thereof, states and alleges as follows:

**NATURE OF THE ACTION**

1.     This action is for infringement of Plaintiffs' respective federally-registered and common law trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) and common law; for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); for cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), and for substantial and related claims of unfair competition and breach of contract under the laws of the Commonwealth of Virginia, all arising from Defendants unauthorized use of Plaintiff's federal

1

and common law trademark rights and breach of the agreement between the parties regarding the same.   Plaintiff seeks injunctive and monetary relief.

2.      Plaintiff owns the trademark EMERSON CREEK POTTERY, which it adopted in 1977 and registered at the U.S. Patent and Trademark Office ("PTO").   In 2001, Plaintiff orally licensed Defendant Christina Demiduk to open an outlet for its marked pottery and later expanded the license to cover restaurant "tea room" services at a single location, a cookbook and weddings there.   In 2017, Defendants breached the license by selling third-party, low quality pottery, ceasing to buy Plaintiff's pottery and applying to register the trademarks to itself.   Plaintiff opposed these applications at the PTO, tried to resolve the matter, and then formally terminated the license. Defendants nonetheless continue to use Plaintiff's trademarks to sell their products at their single location, as well as on their internet website and in social media.   Defendants are hold-over licensees, never developed any ownership rights and are willful, bad-faith infringers, trying to purloin a valuable trademark Plaintiff developed decades before their arrival.   Defendants' continued use of Plaintiff's venerable trademark is causing severe injury.

## PARTIES

3.      Plaintiff Emerson Creek Pottery, Inc. is a Virginia corporation with principal place of business at 1068 Pottery Lane, Bedford, VA 24523.   Emerson Creek Pottery was founded by James Leavitt, a Virginia resident, in 1977 to design, manufacture and sell pottery, which it has done continuously since then at the same place.

4.      Defendant Countryview Pottery Co. ("Defendant Countryview") is an Illinois corporation formed in 2001 with principal place of business at 4914 Stephens Road, Oswego, IL 60543 and a business telephone number of (630) 554-7100.

5.      Defendant Emerson Creek Events, Inc. ("Defendant EC Events") is an Illinois corporation formed in 2012 and having its principal place of business at 4914 Stephens Road, Oswego, IL 60543 and a business telephone at the same number — (630) 554-7100.

6.      Defendants Christina Demiduk and David Demiduk are residents of Illinois, married and the owners of Defendants Countryview and EC Events. According to the records of the Illinois Secretary of State, Ms. Demiduk is listed as President of both entities, and Mr. Demiduk is listed as secretary of both. Defendants collectively operate their gift shop, tearoom café and wedding venue at 4914 Stephens Road, Oswego, IL, using Plaintiff's trademarks.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over Plaintiff's Lanham Act claims under 15 U.S.C. § 1121 and subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the Plaintiff and Defendants are citizens of different states and the amount in controversy is over $75,000.00.

8.      This Court has supplemental jurisdiction over Plaintiff's related common law claims pursuant to 28 U.S.C. § 1367 in that these claims are integrally related with Plaintiff's federal claims and arise from a common nucleus of operative facts such that the administration thereof with Plaintiff's federal claims furthers the interest of judicial economy.

9.      This Court has personal jurisdiction over Defendants because Defendant Christina Demiduk travelled to Virginia multiple times to negotiate, enter into and maintain a purchase and license agreement with Plaintiff and that agreement was entered into in Virginia. Defendant Christina Demiduk formed the corporate Defendants to maintain and continue her tortious activities complained of herein along with her husband Defendant David Demiduk. All

Defendants purposefully directed their commercial activities to Virginia by sourcing and purchasing goods from Plaintiff here, which constitutes a significant component if not all of their business endeavor, and the harm is incurred by Plaintiff as a resident of Virginia.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside in this district, a substantial part of the acts or omissions giving rise to Plaintiffs claims occurred in this district, and Defendants are subject to personal jurisdiction in this district.

## U.S. PATENT AND TRADEMARK OFFICE PROCEEDINGS

11.     The corporate parties have been litigating oppositions against trademark applications filed by each other at the Trademark Trial and Appeal Board in the PTO with proceeding numbers 91241725 and 91244057.  Plaintiff is filing a notice of this instant lawsuit with the TTAB to suspend those proceedings.

## PLAINTIFF ADOPTED ITS EMERSON CREEK MARK IN 1977.

12.     In 1977, Plaintiff adopted the trademark EMERSON CREEK POTTERY and has continuously used it for its pottery goods and services ever since.  There is no "Emerson Creek" in Virginia or Illinois to Plaintiff's knowledge.  Plaintiff Emerson Creek Pottery, Inc., was formed in 1977 by Mr. James Leavitt of Bedford, VA, and his former wife.  Plaintiff designs, makes, distributes and sells artisanal pottery from its workshop located in Bedford under the EMERSON CREEK POTTERY mark.  Plaintiffs' pottery is varied and includes ceramic sculptures, vases, vessels, bowls, dishes, plates, pots, tea pots, mugs, cups, pitchers, trays, platters, shakers, rests, crocks, holders, baskets, lamps, decorations and other goods.  Exhibit A hereto contains pages 1-3 and 38-39 of Plaintiff's 2018 catalog, showing some of its marked pottery.  Plaintiff prides itself on the craftsmanship of its locally-made, American pottery.  Plaintiff operates a retail shop in Bedford to sell its pottery.

13.     Over the course of four-plus decades, Plaintiff has established a valuable reputation for high-end pottery and craftsmanship.  Due to Plaintiff's long, continuous and successful use, EMERSON CREEK POTTERY is a well-recognized and famous mark for Plaintiff's pottery, which communicates the high-quality and authenticity thereof to consumers.

14.     EMERSON CREEK POTTERY is a highly distinctive and valid trademark. Plaintiff has consistently used its EMERSON CREEK POTTERY mark to sell its goods nationwide by putting the mark on each piece of its pottery, shown on Exhibit B hereto, and in other typical ways for the market, including online via its website at www.EMERSONCREEKPOTTERY.com, signage at its physical location in Bedford, VA, and at tradeshows.  Plaintiff's advertising and promotion also includes its own annual catalogs, other print advertising and promotions and Internet and physical mail mailing lists resulting in distribution and sales in practically every geographic market in the United States.  As such, Plaintiff has acquired priority in the EMERSON CREEK POTTERY mark in practically every geographic market in the United States in connection with Plaintiff's goods and services.  Plaintiff has built up valuable goodwill in its EMERSON CREEK and EMERSON CREEK POTTERY brands.

15.     Plaintiff registered its EMERSON CREEK POTTERY mark with the PTO and received Reg. No. 4835568 on October 20, 2015, for "ceramic sculptures, vases, vessels, bowls, plates and pots; Household containers for foods; Mugs; Serving platters; Tea pots," since 1977 with rights to the generic term "pottery" disclaimed.  Defendants have not sought to cancel Plaintiff's EMERSON CREEK POTTERY registration 4835568 in any of the PTO proceedings. Exhibit C hereto is a copy of Plaintiff's PTO registration.

16.     Plaintiff filed an additional U.S. trademark application (Ser. No. 87400157) on April 5, 2017 to cover its logo used with its EMERSON CREEK POTTERY mark and expand its registered goods and services, which is shown at Exhibit D, for:

> Ceramic sculptures, vases, vessels, bowls, plates and pots; household containers for foods; mugs; serving platters; tea pots; baking cloches in the nature of pans and lids to cradle food that is baked; colanders, honey jars, non-electric slow cookers; pet feeding and drinking bowls, cutlery holders in the nature of household containers for cutlery, serving trays, pitchers, casserole dishes, pie plates, pizza pans, tea sets, dinnerware, chili bowls, giftware in the nature of bowls, plates, spoon rests, baking pans, trivets, pasta bowls, bath and kitchen sets comprised of soap dishes, soap dispensers, tooth brush holders and drinking cups; ceramic craft and cooking molds;  Retail store services for those same goods;  and Restaurant services; rental of banquet and social function facilities for wedding receptions, birthday parties and like social functions.

Plaintiff disclaimed exclusive rights to "made in the USA" and "pottery" apart from the mark as a whole.  The PTO completed examination and approved the mark for publication on April 25, 2018, stating: "The mark of the application identified appears to be entitled to registration."

### DEFENDANT CHRISTINA DEMIDUK ASKS PLAINTIFF<br>FOR PERMISSION TO OPEN AN OUTLET IN ILLINOIS.

17.     In or about 2000, Christina Demiduk and her then-partner Mr. Ron Wehrli visited Plaintiff's workshop in Bedford, VA, while on vacation.  Ms. Demiduk expressed interest in opening an EMERSON CREEK POTTERY outlet shop back in Illinois to sell Plaintiff's pottery. Plaintiff subsequently authorized Ms. Demiduk and Mr. Wehrli to use its EMERSON CREEK POTTERY mark in connection with her outlet shop in Illinois for Plaintiff's goods.  Plaintiff's license was contingent upon Ms. Demiduk and Mr. Wehrli purchasing pottery only from it, at a discount, and selling no other or any third-party pottery.  Ms. Demiduk and Mr. Wehrli were allowed to sell non-pottery goods at the shop, but all pottery had to be Plaintiff's pottery in order to keep using Plaintiff's trademark.  Attached as Exhibit E are screen prints from Defendants'

website in 2018 at www.ecreekpotteryandtearooom.com, replete with photos of Plaintiff's pottery,

in which Defendants state:

> Located inside the renovated 100 year old farmhouse, **Emerson Creek Pottery Shop offers a wide array of hand crafted gifts and accessories as well as our <u>namesake hand painted pottery</u>.** From artisan-crafted candles and beautiful, unique jewelry, to the ever-popular dinner and bakeware and locally made honey, each item in the shop is personally selected to offer a unique and original collection of merchandise. Whether you are looking to add to **your collection of Emerson Creek Pottery** or simply pick up a new handmade candle there is something for everyone at the shop.
>
> Whats [<i>sic</i>] in store?<br>Emerson Creek Pottery<br>….
>
> **All of our beautiful pottery is created and painted in Bedford, Virginia and is the original source of inspiration for the Pottery Shop and Tearoom that you enjoy today. This family owned company began in 1977 and has been producing functional pottery pieces ever since.** Each piece is an authentic original as there is not a template or stencil used in the process. There is an **Emerson Creek pottery [<i>sic</i>]** piece for almost every use in your home!
>
> In our Pottery Shop you will find dinnerware, coffee and tea mugs, bakeware, serving dishes, bathroom accessories, and more! There are currently 14 patterns available. All the pottery is lead free, and can be used in the oven, microwave and dishwasher. Come on in and check out our full line of Brie Bakers. This is the ideal pottery bakeware for baking casseroles or desserts.

(emphasis added). The 14 lines available were all Plaintiff's designs, which Defendants acquired

directly from Plaintiff under the license.

18.     Ms. Demiduk incorporated Defendant Countryview in 2001 to operate the outlet

shop, which opened in 2001 on the property located at 4914 Stephens Road, Oswego, IL 60543.

Unbeknownst to Plaintiff, Defendant Countryview registered the assumed names EMERSON

CREEK POTTERY and EMERSON CREEK TEAROOM with the Illinois Secretary of State.

None of the defendants have ever filed a trademark application for COUNTRYVIEW.

19.     Plaintiff subsequently licensed Ms. Demiduk to operate a tea room at the gift shop location under the mark and sold her pottery to use in serving food there.  Likewise, Plaintiff licensed Ms. Demiduk to offer a cookbook and events such as weddings there.  Over the years, Ms. Demiduk visited Plaintiff's Virginia workshop several times to affect the license, discuss business, designs, shipments and payments, including in 2007 and 2012 / 2013.  According to records of the Illinois Secretary of State, Ms. Demiduk and/or Mr. Demiduk incorporated Defendant EC Events in 2012.

20.     Through Ms. Demiduk's visits and regular and extensive communications with her regarding pottery orders, shipments, accounts and operations, Plaintiff monitored and knew that Ms. Demiduk was personally active in and managing the provision of all the gift shop, restaurant and events services in her typical best efforts and quality.

21.     Defendants use Plaintiff's pottery for serving at least some foods at their café restaurant using the EMERSON CREEK POTTERY & TEAROOM mark.  Attached hereto as Exhibit F is a page from a Specimen of Use Defendant Countryview filed with the PTO in its application no: 87613773 stating: "Our classic Flower Pot salad, served in an actual Emerson Creek flower pot, is the favorite of many."  Also attached as Exhibit G is an image taken from Defendants' website at www.EMERSONCREEK.com on or about the date hereof, showing a scoop of ice cream a la mode over a baked food item in an actual EMERSON CREEK bowl.

22.     Defendants also use the EMERSON CREEK POTTERY & TEAROOM mark to offer wedding event services.  Attached as Exhibit H are images from Defendants' July 19, 2020, Facebook post for a recent wedding using the mark at the beginning, twice, followed by 30 hashtags, the text "@ Emerson Creek Pottery and Tearoom" and photos of the event, as well as a

photo of Defendants' road signage from an earlier wedding prominently using the EMERSON CREEK POTTERY mark separated from the generic terms "tea room."

23.     Defendants advertise, promote and market all their uses of Plaintiff's EMERSON CREEK POTTERY mark online at the website <emersoncreek.com> and in multiple social media platforms.  Defendants have expressly highlighted their association with Plaintiff in these venues. Defendants' tearoom and events services and cookbook benefit greatly from association with Plaintiff's EMERSON CREEK mark and the associated good will Plaintiff developed in the mark over the roughly 25 years Plaintiff offered its pottery before Christina Demiduk first visited Plaintiff in Virginia.

### DEFENDANTS STOP PURCHASES FROM PLAINTIFF AND APPLY TO REGISTER ITS TRADEMARKS.

24.     In February 2017, Defendant Christina Demiduk asked Plaintiff's Jim Leavitt for an increased discount for purchasing pottery.  Plaintiff declined to increase the discount, and Mr. Leavitt told Ms. Demiduk that Defendants' use of EMERSON CREEK in social media posts was creating confusion.  On or about March 1, 2017, Mr. Leavitt emailed Defendant Dave Demiduk and stated:  "Also keep in mind that "Emerson Creek Pottery" is our trademarked name and you should only use it appropriately and with "and Tea Room" when referring to your store."

25.     Defendant's last placed an order with Plaintiff for EMERSON CREEK POTTERY marked pottery on or about July 19, 2017.

26.     In September 2017, a private investigator visited Defendants' location in Oswego, Illinois, and Plaintiff learned for the first time that Defendants were selling third-party pottery, rather than Plaintiff's brand pottery, in violation of the license.  Specifically, on or about September 26, 2017, the investigator purchased 6 pieces of third-party pottery from Defendants at their location in Oswego.  Attached hereto as Exhibit I are two purchase receipts given to the

investigator by Defendants marked EMERSON CREEK POTTERY and EMERSON CREEK POTTERY AND TEAROOM and images of the purchased pottery. This third-party pottery included foreign-made pottery, some of which was manufactured in China. This third-party pottery is typically of a much lower quality than Plaintiff's goods.

27.     On September 19, 2017, Defendant Countryview filed trademark application 87613743 in the PTO for EMERSON CREEK POTTERY & TEAROOM for "Tea rooms; Providing banquet and social function facilities for special occasions; Restaurant and café services." The PTO refused to register the mark to Defendant. The assigned PTO Examining Attorney concluded such registration would violate Trademark Act Section 2(d), 15 U.S.C. §1052(d), because of a likelihood of confusion with Plaintiff's registration 4835568 for EMERSON CREEK POTTERY. The PTO Examining Attorney also stated Countryview's mark might be refused because of Plaintiff's application 87400157. Countryview subsequently expressly abandoned its '743 application.

28.     Also on September 19, 2017, Defendant Countryview filed trademark application 87613773 in the PTO for EMERSON CREEK TEAROOM for "tea rooms; restaurant and café services," and subsequently disclaimed the generic term TEAROOM. The PTO also refused to register this mark to Defendant. The PTO Examining Attorney concluded such registration would violate the Trademark Act for the same reason, because of a likelihood of confusion with Plaintiff's registration 4835568 for EMERSON CREEK POTTERY. And the Examining Attorney again stated the PTO might refuse Countryview's mark because of Plaintiff's application 87400157. Defendant submitted argument, but the Examining Attorney maintained the rejection, stating: "Applicant's arguments have been carefully considered but found unpersuasive."

29.     Defendant Countryview and Defendant EC Events also filed trademark application number 87613813 on September 19, 2017, for EMERSON CREEK EVENTS for "providing banquet and social function facilities for special occasions."  Plaintiff has opposed this application at the PTO.

30.     Defendants Christina Demiduk and Dave Demiduk subsequently registered for a trade show in Las Vegas, Nevada, identifying themselves with company name "emerson creek pottery" and email addresses at info@ecreekpotteryandtearoom.com and chris@ecreekpotteryandtearoom.com.  Attached hereto as Exhibit J is a printout showing these registrationswithtext "THE PAVILIONS TEMPS JAN 28 – 31-2018."

31.     More recently, on June 7, 2019, Defendant Countryview filed trademark applications 88464124 and 88464155 for EMERSON CREEK CAFE for "restaurant and café services" and EMERSON CREEK CONFECTIONERY for "retail bakery shops," and subsequently disclaimed the generic terms CAFE and CONFECTIONERY.  The PTO again refused to register Defendants' marks.  A different PTO Examining Attorney from their above '743 and '773 applications concluded like the first Examining Attorney that such registration would violate the Trademark Act because of a likelihood of confusion with Plaintiff's registration 4835568 for EMERSON CREEK POTTERY among other reasons.

## PLAINTIFF'S ATTEMPT TO RESOLVE THE DISPUTE, FILING OF PTO OPPOSITIONS, AND TERMINATION OF THE LICENSE.

32.     Plaintiff sought to resolve the matter and formalize the license in writing.  The parties filed oppositions at the PTO against each other's trademark applications, and Plaintiff continued to try to negotiate the matter with Defendants.  In a letter on or about January 5, 2018, Plaintiff through counsel terminated its license to Defendants and demanded an immediate

cessation of all use of its EMERSON CREEK mark in all forms.  In subsequent emails in 2018, Plaintiff through counsel repeated its cease and desist demand to Defendants' counsel.  And again on March 12, 2019, Plaintiff's counsel wrote Defendants' counsel: "In any case, the Demiduks must discontinue and not resume any sales of 3d party pottery."

33.     Nonetheless, on or about May 30, 2019, Plaintiff's investigator returned to Defendants' location in Oswego and observed Defendants continuing to use the EMERSON CREEK POTTERY and EMERSON CREEK POTTERY & TEAROOM mark on outdoor signage. Despite receiving actual notice of infringement, Defendants continued to sell third-party pottery alongside Plaintiff's pottery at the gift shop and serving food in the tearoom on Plaintiff's marked pottery.  On that visit, the investigator purchased two pieces of third-party pottery from Defendants' gift shop and two items of food from its tearoom, which were served on Plaintiff's pottery.  Printed on both the pottery and tearoom receipts prominently is the header EMERSON CREEK POTTERY AND TEAROOM, and the menu has the email address …@ecreekpotteryandtearoom.com.  Attached hereto as Exhibit K are photographs of the inferior pottery, purchase receipts, menu and road signage from the investigator's May 30, 2019, visit.

34.     There have been several instances of actual consumer confusion with respect to the affiliation, association, connection, sponsorship, or approval between the parties directly resulting from Defendants' use of EMERSON CREEK.  These instances have come in various forms, including social media posts by consumers and phone calls to Plaintiff.  Attached as Exhibit L is an example of a customer post on Plaintiff's website inquiring whether the Oswego, Illinois location sold linens.

35.     The parties' goods and services travel in the same channels of commerce.  Plaintiff and Defendants maintain presences on the internet and social media, including Facebook, Twitter

and Instagram for example, and are featured in the same commercial platforms such as Yelp and Google business profiles.  Defendants currently identify themselves as EMERSON CREEK POTTERY AND TEAROOM on various platforms including Yelp, Trip Advisor, Facebook and Instagram.

36.     More specifically, Defendants continue to use Plaintiff's EMERSON CREEK and EMERSON CREEK POTTERY marks to the date of this Complaint.  Defendants market their goods and services at a single website and various social media platforms, all using Plaintiff's EMERSON CREEK POTTERY trademark in various forms, with and without the term "pottery." Attached hereto as Exhibit M are internet screen shots of:  (i) a Google search of the terms "emerson creek," showing in the first result Defendants' website with address www.emersoncreek.com followed by the enlarged text Emerson Creek | Home | Emerson Creek Pottery & Tearoom;  (ii) Defendants' home page at www.emersoncreek.com, showing uses of the EMERSON CREEK mark, a photograph of an à la mode desert item in one of Plaintiff's marked EMERSON CREEK POTTERY bowls and an imbedded video with text "EC Emerson Creek-Day in The Country / SIT AND RELAX A WHILE" — when the video is played, at about 4 seconds, the mark EMERSON CREEK POTTERY & TEAROOM appears and pauses, followed by video of road signage with the text EMERSON CREEK POTTERY / tea room and concluding at time 3:15 with one of Defendants' website addresses – www.ecreekpotteryandtearoom.com; (iii) link in the lower-right hand corner of Defendant's webpage to their Terms and Conditions page, which refers to the site providers as "Emerson Creek Pottery and Tearoom" and uses both domain names referenced in this paragraph;  (iv) link to Defendants' Facebook page, prominently titled Emerson Creek Pottery and Tearoom, followed by text "@EmersonCreekPotteryandTearoom;" (v) link to Defendants' twitter page, prominently titled

Emerson Creek with hotlink ecreekpotteryandtearoom.com;  (vi) link to Defendants' Pinterest age,

prominently    titled    Emerson    Creek    Pottery    &    Tearoom    with    link

www.ecreekpotteryandtearoom.com;  (vii) link to Defendants' Instagram social media page, titled

emersoncreekevents and Emerson Creek with link to their www.emersoncreek.com website.

## COUNT I
## (FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §§ 1114 and 1125)

37.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation

in the preceding paragraphs as though fully set forth herein.

38.    Defendants' confusingly similar use of Plaintiff's registered EMERSON CREEK

POTTERY mark (Reg. No. 4835568) in connection with Defendants' business which includes a

pottery gift shop, cookbook, café and restaurant, and event hosting services located on the same

property, is likely to cause confusion, deception, and mistake by creating the false and misleading

impression that Defendants' goods and services are provided by, or affiliated, associated or

connected with, or have the sponsorship, endorsement or approval of Plaintiff.

39.    Defendants' confusingly similar use of Plaintiff's unregistered EMERSON

CREEK mark, in connection with Defendants' business which includes a pottery gift shop,

cookbook, café and restaurant, and event hosting services located on the same property, is likely

to cause confusion, deception, and mistake by creating the false and misleading impression that

Defendants' goods and services are provided by, or affiliated, associated or connected with, or

have the sponsorship, endorsement or approval of Plaintiff.

40.    On or about May 30, 2019, Defendants sold inferior third-party pottery using the

EMERSON CREEK and EMERSON CREEK POTTERY trademarks and used the mark to sell

food.  Defendants' license to do so was formally terminated well before this date.  Defendants are

continuing to this day to use these trademarks on signage, internet websites and social media platforms to offer goods and services without Plaintiff's permission.

41.     At all relevant times, Defendants knew Plaintiff was the originator and owner of the EMERSON CREEK POTTERY and EMERSON CREEK marks.  Defendants also knew without doubt that Plaintiff terminated their license.  Defendants' actions demonstrate a knowing, deliberate, intentional, willful, and malicious intent to continue to trade on the goodwill associated with Plaintiff's brand, to Plaintiff's great and irreparable harm, even after Plaintiff terminated its permission for Defendants to use its EMERSON CREEK POTTERY or EMERSON CREEK marks.

42.     Plaintiff is the originator of its EMERSON CREEK POTTERY and EMERSON CREEK marks, and having long and continuously used same in interstate commerce across the nation, enjoys priority and superior rights therein and thereto.  All of Defendants' use of Plaintiff's trademarks and associated good will inured to Plaintiff under the license, until Plaintiff terminated the license.  All post-termination use and any use beyond the scope of the license is not bona fide and did not provide Defendants with any valid rights.

43.     Defendants' continued, unauthorized use of Plaintiff's registered EMERSON CREEK POTTERY mark violates Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44.     Defendants' continued, unauthorized use of Plaintiff's unregistered EMERSON CREEK mark violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

45.     The knowing and intentional nature of Defendants' usurpation of Plaintiff's brand and goodwill symbolized by the EMERSON CREEK POTTERY and EMERSON CREEK marks renders this an exceptional case under 15 U.S.C. § 1117(a).

46.     Defendants' acts have caused, and will continue to cause, a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Plaintiff's goodwill and reputation as symbolized by the EMERSON CREEK POTTERY and EMERSON CREEK marks, for which Plaintiff has no adequate remedy at law.

47.     Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

## COUNT II
### (FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125)

48.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

49.     Defendants have deliberately and willfully traded on Plaintiff's long-standing and hard-earned goodwill in its name and marks and the reputation established by its products and services, and have continued to do so even after Plaintiff terminated their permission to do so.

50.     Defendants' confusingly similar use of Plaintiff's EMERSON CREEK POTTERY and EMERSON CREEK marks, in connection with Defendants' business which includes a pottery shop, cookbook, café and restaurant, and event hosting services located on the same property, is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods and services are provided by, or affiliated, associated or connected with, or have the sponsorship, endorsement or approval of Plaintiff.

51.     On or about May 30, 2019, Defendants sold inferior third-party pottery using the EMERSON CREEK and EMERSON CREEK POTTERY trademarks and used the mark to sell food.  Defendants' license to do so was formally terminated well before this date.  Defendants are

continuing to this day to use these trademarks on signage, internet websites and social media platforms to offer goods and services without Plaintiff's permission.

52.     The sale of third-party goods and the services rendered at Defendants' Oswego location have deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its products and services offered under Plaintiff's brand, thereby placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants.

53.     There have been several instances of actual consumer confusion with respect to the affiliation, association, connection, sponsorship, or approval between the parties directly resulting from Defendants' use of EMERSON CREEK.

54.     Through their course of conduct, Defendants have made false representations, false descriptions, and false designations of, on, or in connection with their goods and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's marks, to Plaintiff's great and irreparable harm.

56.     The knowing and intentional nature of Defendants' usurpation of Plaintiff's brand and goodwill symbolized by the EMERSON CREEK POTTERY and EMERSON CREEK marks renders this an exceptional case under 15 U.S.C. § 1117(a).

57.     Defendants' acts have caused, and will continue to cause, irreparable injury to the public, trade and Plaintiff.

58.     Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

## COUNT III
## (COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION)

59.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

60.     Defendants have deliberately and willfully traded on Plaintiff's long-standing and hard-earned goodwill in its name and marks and the reputation established by its products and services, and have continued to do so even after Plaintiff terminated their permission to do so.

61.     At all relevant times, Defendants knew Plaintiff was the originator and owner of the EMERSON CREEK POTTERY and EMERSON CREEK marks.  Defendants' actions demonstrate a knowing, deliberate, intentional, willful, and malicious intent to continue to trade on the goodwill associated with Plaintiff's brand, to Plaintiff's great and irreparable harm, even after Plaintiff retracted its permission for Defendants to use EMERSON CREEK POTTERY or EMERSON CREEK.

62.     Defendants' confusingly similar use of Plaintiff's EMERSON CREEK POTTERY and EMERSON CREEK marks in connection with Defendants' business which includes a gift shop, café and restaurant, and event hosting services located on the same property, is likely to cause confusion, deception, and mistake as to the affiliation, connection or association of Defendants and their goods and services with Plaintiff, and as to the origin, sponsorship or approval of Defendants  and their products and services, in violation of Virginia common law.

63.     The sale of third-party goods and the services rendered at Defendants' Oswego complex have deprived and will continue to deprive Plaintiff of the ability to control the consumer perception of its products and services offered under Plaintiff's brand, thereby placing the valuable reputation and goodwill of Plaintiff in the hands of Defendants.

64.     There have been several instances of actual consumer confusion with respect to the affiliation, association, connection, sponsorship, or approval between the parties directly resulting from Defendants' use of EMERSON CREEK.

65.     Defendants' acts have caused, and will continue to cause, a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Plaintiff's goodwill and reputation as symbolized by the EMERSON CREEK POTTERY and EMERSON CREEK marks, for which Plaintiff has no adequate remedy at law.

66.     Plaintiff is entitled to any and all relief and remedies available under Virginia law.

## COUNT IV
## (BREACH OF CONTRACT)

67.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

68.     The agreement of between Plaintiff and Ms. Demiduk and Mr. Wehrli allowing them to use EMERSON CREEK POTTERY and EMERSON CREEK in conjunction with a shop to retail Plaintiff's goods, and subsequent expansion of Plaintiff's permission to Defendants' restaurant and events services, at all times was conditional on them only selling Plaintiff's pottery at this location, no third-party pottery and continuing to purchase pottery from Plaintiff.

69.     Defendants have not purchased any pottery from Plaintiff since 2017.  Moreover, on May 30, 2019, Defendants sold inferior third-party pottery using the EMERSON CREEK and EMERSON CREEK POTTERY trademarks and used the mark to sell food.  Defendants' license to do so was formally terminated well before this date.  Defendants are continuing to this day to use these trademarks on signage, internet websites and social media platforms to offer third-party goods and services without Plaintiff's permission.

70.     By selling third-party pottery from Defendants' Oswego location, Defendants willfully and materially breached the agreement, causing Plaintiff to since expressly terminate Defendants' license to use its EMERSON CREEK brand in connection with their Oswego business enterprise.

71.     Defendants' breach of the parties' agreement has damaged Plaintiff, entitling it to damages and any other reasonable fees and costs arising therefrom.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for an Order and Judgment as follows:

1.     Entry of a permanent injunction requiring that Defendants and their officers, agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from:

(a)     Using in any manner the EMERSON CREEK and EMERSON CREEK POTTERY trademarks, or any name, mark, social media account name or domain name that incorporates those marks or is confusingly similar thereto or a colorable imitation thereof, including on any products, materials, websites, social media platforms, other digital places or in connection with the rendering of any services;

(b)     Doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or prospective customers as to the source of products or services offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between Defendants and Plaintiff;

(c)     Committing any acts which will tarnish, blur, or dilute, or are likely to tarnish, blur, or dilute the distinctive quality and reputation of Plaintiff's EMERSON CREEK and EMERSON CREEK POTTERY marks; and

(d)      Making any representations, express or implied, that Plaintiff is affiliated with or sponsors or approves of Defendants or their products or services;

2.      Directing Defendants to transfer to Plaintiff (at no cost to Plaintiff) all domain names and social media accounts that contain or consist of the mark EMERSON CREEK, including but not limited to <www.emersoncreek.com>;

3.      Ordering Defendants to preserve through trial and then deliver up for destruction, pursuant to 15 U.S.C. § 1118, all Internet webpages / scripts / html code, articles, packages, wrappers, products, displays, labels, signs, vehicle displays or signs, circulars, kits, packaging, letterhead, business cards, promotional items, clothing, literature, sales aids, receptacles, templates or other matter in the possession, custody, or under the control of Defendants or its agents bearing the EMERSON CREEK and EMERSON CREEK POTTERY marks in any manner, or any mark that is confusingly similar to or a colorable imitation of these marks;

4.      Ordering Defendants to file Express Abandonments for their PTO trademark applications with serial numbers 87613773, 87613813, 88464124 and 88464155 within 10 days of its Order;

5.      Ordering Defendants to withdraw Opposition 91241725 and any counter-claims in Opposition 91244057 currently pending at the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office;

6.      Ordering Defendants to take all steps necessary to cancel any state or local business registrations, including corporate name registrations and dba filings, that include EMERSON CREEK and EMERSON CREEK POTTERY or amend those registrations to names that do not include same;

7.      Directing Defendants to provide a full accounting of profits made by Defendants as a result of Defendants' business conducted using Plaintiff's EMERSON CREEK and EMERSON CREEK POTTERY marks;

8.      Ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Plaintiff within thirty (30) days after entry of the injunction a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction, including ceasing all offering of services under Plaintiff's name and marks as set forth above;

9.      Ordering Defendants to pay a judgment in the amount of Plaintiff's actual damages under 15 U.S.C. § 1117 and Virginia law, as well as Defendants' profits, and pre- and post-judgment interest pursuant to 15 U.S.C. § 1117, in an amount to be proven at trial;

10.     Ordering Defendants to pay Plaintiff's reasonable attorneys' fees and costs of this action under 15 U.S.C. § 1117 and/or Virginia law;

11.     Ordering Defendants to pay a judgment for enhanced damages under 15 U.S.C. § 1117 and punitive damages under Virginia law as appropriate; and

12.     Granting Plaintiff such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Emerson Creek Pottery, Inc., hereby demands a jury trial on all issues triable of right by jury.

Dated:  August 19, 2020

Respectfully submitted,

**EMERSON CREEK POTTERY, INC.**

By counsel,

  /s/ Henry I Willett III
Henry I. Willett III (VSB No. 44655)
**CHRISTIAN & BARTON, LLP**
909 East Main Street, Suite 1200
Richmond, Virginia  23219-3095
(804) 697-4130
Fax: (804) 697-6130
hwillett@cblaw.com

Garfield Goodrum
**GARFIELD GOODRUM, *DESIGN LAW***
9 Canal St., 4th Floor
Boston, Massachusetts  02114
(617) 861-0780
Fax: (617) 507-5983
garfield.goodrum@gdrmlaw.net
*pro hac vice* application being submitted herewith