CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/17/2020
JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| EMERSON CREEK POTTERY, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> EMERSON CREEK EVENTS, INC., *et al.*, <br><br> *Defendants*. | CASE NO. 6:20-cv-54 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

Plaintiff Emerson Creek Pottery Inc. filed this trademark infringement action against Defendants Countryview Pottery Co., Emerson Creek Events, Inc., Christina Demiduk, and David Demiduk. Dkt. 1 (Complaint). Defendants moved to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Dkt. 14. For the following reasons, the Court finds that Defendants failed to show that transfer of venue is appropriate. Thus, the Court will deny Defendants' motion.

## I.    FACTS AS ALLEGED

Emerson Creek Pottery is a Virginia corporation with its principal place of business in Bedford, Virginia. Compl. ¶ 3. Countryview Pottery and Emerson Creek Events are Illinois corporations with their principal places of business in Oswego, Illinois. *Id.* ¶¶ 4–5. Christina Demiduk and David Demiduk are married Illinois residents and owners of Countryview Pottery and Emerson Creek Events. *Id.* ¶ 6.

Plaintiff began making, designing, distributing, and selling pottery from its Bedford workshop in 1977, the same year it adopted the "Emerson Creek Pottery" trademark. *Id.* ¶ 12. The

Patent and Trademark Office ("PTO") approved Emerson Creek Pottery's trademark registration in October 2015 and its trademark logo in April 2018. *Id.* ¶¶ 15–16.

In 2000, Christina Demiduk traveled to Virginia and asked Emerson Creek Pottery's owner, Jim Leavitt, whether she could sell its pottery at an outlet shop in Illinois. *Id.* ¶ 17. Leavitt agreed. *Id.* He authorized Ms. Demiduk to use Emerson Creek Pottery's mark as long as Ms. Demiduk exclusively purchased and sold pottery from Emerson Creek Pottery. *Id.* Ms. Demiduk incorporated Countryview Pottery and opened an outlet shop under that name in 2001. *Id.* ¶ 18. Later, Plaintiff further authorized Ms. Demiduk to operate a tearoom and offer events at the same location under the Emerson Creek Pottery mark. *Id.* ¶ 19. The Demiduks incorporated Emerson Creek Events in 2012. *Id.*

Defendants purchased pottery, including special custom-made pieces, from Emerson Creek Pottery and resold it in Illinois from 2000 until 2017. *Id.* ¶¶ 17–19. In 2007, 2012, and 2013, Ms. Demiduk visited Emerson Creek Pottery to discuss the license arrangement and buy pottery. *Id.* ¶ 19. Defendants highlight their association with Emerson Creek Pottery on social media platforms and on their website, emersoncreek.com. *Id.* ¶¶ 22–23. As of 2018, Defendants' website contained photographs of Plaintiff's pottery and stated, "All of our beautiful pottery is created and painted in Bedford, Virginia and is the original source of inspiration for the Pottery Shop and Tearoom that you enjoy today. This family owned company began in 1977 and has been producing functional pottery pieces ever since." *Id.* ¶ 17.

The parties' relationship began to sour in February 2017, when Ms. Demiduk asked Emerson Creek Pottery for a larger discount on pottery purchases. *Id.* ¶ 24. Plaintiff declined the request and informed the Demiduks that their use of the Emerson Creek Pottery mark on social media "was creating confusion" and that they should only use the mark "appropriately and with

'and Tea Room.'" *Id.* Defendants placed their last order with Emerson Creek Pottery in July 2017. *Id.* ¶ 25. In September 2017, Plaintiff hired a private investigator, who discovered that Defendants were selling third-party pottery at their outlet shop in violation of their agreement. *Id.* ¶ 26.

That same month, Countryview Pottery filed trademark applications with the PTO for "Emerson Creek Pottery & Tearoom" and "Emerson Creek Tearoom," both of which the PTO denied because of a likelihood of confusion with Emerson Creek Pottery's registered trademark. *Id.* ¶¶ 27–28. Emerson Creek Pottery opposed Defendants' simultaneously-filed trademark application for "Emerson Creek Events." *Id.* ¶ 29. The PTO denied Defendants' subsequent trademark applications for "Emerson Creek Café" and "Emerson Creek Confectionery." *Id.* ¶ 31.

Emerson Creek Pottery terminated Defendants' license and demanded that Defendants stop using its trademark in January 2018. *Id.* ¶ 32. Defendants continue using the names "Emerson Creek," "Emerson Creek Pottery," and "Emerson Creek Pottery & Tearoom" both at their physical location and online. *Id.* ¶¶ 33–36. At least some consumers appear to have the impression that Defendants' businesses are closely connected to Plaintiff. *Id.* For example, on Plaintiff's Facebook page, a customer recently asked, "Do u [sic] have table linens at your Oswego location[?]" Dkt. 1-12 at 2.

The complaint requests relief for trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125 (Count I), unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125 (Count II), common law trademark infringement and unfair competition (Count III), and common law breach of contract (Count IV). Compl. ¶¶ 37–71.

Defendants move to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Dkt. 14. They contend that the Western District of Virginia has little connection to the

causes of action apart from Ms. Demiduk's four "sporadic" visits to the district over the past two decades, and thus Plaintiff's choice of forum is entitled to little weight. *Id.* ¶¶ 10–11. Defendants also argue that their alleged trademark infringement, breach of a purported license agreement, and unfair competitive conduct occurred in the Northern District of Illinois, where their gift shop, restaurant, and wedding event services are located. *Id.* ¶ 12. Therefore, sources of proof, including Defendants' business records and non-party witnesses, are concentrated in the Northern District of Illinois. *Id.* ¶ 13.

In response, Plaintiff argues that it resides in the Western District of Virginia and thus that its choice of forum is "entitled to substantial weight." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015) (internal quotation marks omitted). Plaintiff notes that its workshop, warehouse, and retail shop are located in the Western District of Virginia, along with several of its non-party witnesses and nearly all of its non-testimonial evidence—including orders, invoices, and communications with Defendants. Dkt. 16 at 6–7, 10. Finally, Plaintiff emphasizes that during Ms. Demiduk's travel to the Western District of Virginia, she both initiated and entered into the agreement to purchase and resell Emerson Creek Pottery. *Id.* at 7.

## II.   LEGAL STANDARD

Venue in a civil action is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(b). To determine whether events or omissions are sufficiently substantial to support venue, a court "should review the entire sequence of events underlying the claim." *Mitrano v.*

*Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (quotations omitted). Venue may be proper in more than one judicial district. *Id.*

If the venue in which the plaintiff filed the action is proper, "a district court may transfer any civil action to any other district or division where it might have been brought . . . " "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). This subsection gives a district court wide discretion in deciding whether to change a proceeding's venue. *See In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984). Its purpose is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted). If the claims might have been brought in the requested transferee forum, the Fourth Circuit considers four factors in determining whether transfer of venue is appropriate: (1) the weight given to the plaintiff's choice of venue, (2) convenience of the parties, (3) convenience of the witnesses, and (4) the interest of justice. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444.

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1946)). A plaintiff's choice of forum deserves substantial weight, except when "(1) the plaintiff chooses a foreign forum, and (2) the chosen venue has little connection to the cause of action." *Gen. Creation LLC v. Leapfrog Enters., Inc.*, 192 F. Supp. 2d 503, 505 (W.D. Va. 2002). Defendants have the burden "to disturb the plaintiff's choice of forum by showing that the balance of equities is in their favor and that judicial economy and convenience to all parties favor suit in another forum." *Glamorgan Coal Corp. v. Ratners Grp. PLC*, 854 F. Supp. 436, 437–38 (W.D. Va. 1993) (internal quotation marks and citation omitted). The court

should not transfer venue if the transfer would "simply shift[] the inconvenience from the defendant to the plaintiff." *Sourcetech, LLC v. DeatschWerks, LLC*, No. 5:20-cv-00041, 2020 WL 7123164, at *1 (W.D. Va. Dec. 4, 2020) (quoting *Triangle Grading & Paving, Inc. v. Rhino Servs., LLC*, No. 1:19-cv-486, 2020 WL 2086188, at *17 (M.D.N.C. Apr. 30, 2020)) (internal quotation marks omitted).

## III.   ANALYSIS

The parties do not dispute that venue is proper in either the Western District of Virginia or the Northern District of Illinois. The question in this case is whether the four factors outlined in *Trustees of the Plumbers & Pipefitters National Pension Fund* weigh in Defendants' favor, warranting transfer to the federal court in Illinois. 791 F.3d at 444.

### 1.    Plaintiff's Choice of Venue

The first factor, the weight accorded to Plaintiff's choice of forum, strongly favors the Plaintiff. Plaintiff filed suit in its home forum—the Western District of Virginia. Plaintiff is incorporated and has its primary place of business in this district. On this basis alone, Plaintiff's choice of forum is "entitled to considerable deference." *Gen. Creation LLC*, 192 F. Supp. 2d at 505.

Moreover, here "a substantial part of the events . . . giving rise to [Plaintiff's] claim[s]" occurred in this District. 28 U.S.C. § 1404(a). Plaintiff and Defendants entered into a license agreement to purchase and resell its pottery in the Western District of Virginia. The terms of the parties' contract—particularly those governing Defendants' use of Plaintiff's "Emerson Creek Pottery" mark—are critical issues in this case. Even if the parties did not enter into a license agreement, as Defendants appear to argue, Defendants do not dispute their travel to this district on a number of occasions to buy pottery from and conduct business with Plaintiff. That fact that some

of Defendants' alleged infringement, breaches, and unfair competition occurred through in-person sales and services at their retail shop, tearoom, and wedding event space in the Northern District of Illinois, does not outweigh the connections of Plaintiff's claims with this District.

*Noetic Specialty Insurance Co. v. North Carolina Mutual Wholesale Drug Co.* does not support Defendants' argument that Western District of Virginia has little connection to the cause of action and Plaintiff's choice of forum should be given little weight. 453 F. Supp. 3d 842 (E.D. Va. 2020); *see* Dkt. 17 at 2. In that case, the Eastern District of Virginia first determined that the plaintiff had *not* filed suit in its home forum. *Noetic Specialty Ins. Co.*, 453 F. Supp. 3d at 846 ("On this record, Noetic's home forum is Vermont, the state in which it is incorporated and where its home office is located . . . . [A]lthough Noetic has an office in Virginia, Noetic's choice of forum receives less deference because Noetic has not brought suit in its home forum of Vermont."). The court then analyzed where the events giving rise to the litigation occurred and concluded that the "overwhelming majority" of such events took place outside the plaintiff's chosen forum, providing a "further reason" to give the plaintiff's choice of forum "less deference than it is typically accorded." *Id.* As described above, that is not this case.

Because the Western District of Virginia is Emerson Creek Pottery's home forum and has a substantial connection to the underlying claims in this case, Plaintiff's choice of forum deserves significant weight.

### 2.    Party Convenience

With respect to the second factor, the convenience of the parties, Plaintiff and Defendants are in equipoise.

Plaintiff operates its workshop, warehouse, and retail shop in the Western District of Virginia. Defendants operate their gift shop, restaurant, and wedding event services in the Northern

District of Illinois. Plaintiff's business records are located in the Western District of Virginia, and Defendants' business records are located in the Northern District of Illinois. Both parties have been involved in opposition proceedings in front of the PTO's Trademark Trial and Appeal Board for two years, suggesting that many relevant written documents on both sides are already in digital form and thus accessible in either district. *See* Dkts. 16 at 5; 17 at 4. Plaintiff has also alleged that Defendants have infringed on its mark on the Internet, particularly on social media. That evidence, too, is digital and accessible in either district.

Still, any relevant physical evidence in the Northern District of Illinois that could not be digitized would, of course, be inconvenient for Defendants to bring to the Western District of Virginia. Yet the same would be true for Plaintiff with respect to any such evidence in the Western District of Virginia if the litigation were transferred to the Northern District of Illinois. Thus, "[d]efendants may be inconvenienced by litigating in plaintiff['s] home forum, but transfer would likely serve only to 'shift the balance of inconvenience' from defendant[s] to plaintiff." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1259 (E.D. Va. 1988).

Defendants' reliance on *Global Touch Solutions, LLC v. Toshiba Corp.*, a patent infringement case, is misplaced. 109 F. Supp. 3d 882 (E.D. Va. 2015); *see* Dkt. 14 at 4. Defendants cite *Global Touch Solutions* for the proposition that, because "the bulk of relevant evidence usually comes from the accused infringer, . . . the place where the defendant's documents are kept weighs in favor of transfer to that location." 109 F. Supp. 3d at 900 (internal quotation marks and citations omitted). This proposition makes sense in the context of a patent infringement case, in which "the preferred forum is that which is the center of the accused activity" because the "trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered

around its production." *Id.* at 899 (quoting *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999)) (internal quotation marks omitted).[1]

But this is not a patent infringement case. The Court does not need to evaluate the design and production of an allegedly infringing device. Instead, the Court must ascertain the terms of an agreement involving the use of Plaintiff's mark and evaluate whether those terms have been breached. Thus, where the agreement was entered into is just as material as where the breach may have occurred.

On the facts as presented in the parties' briefing, the inconvenience to Defendants from litigating in this forum is minimal.

### 3.    Witness Convenience

The third factor—convenience of the witnesses—does not favor Defendants either.

Defendants have not provided reliable and particularized information in an affidavit or declaration "identifying the witnesses involved and specifically describing their testimony," as is typically required to assess the relative degree of inconvenience witnesses would face in this and the proposed transferee forum. *Bd. of Trs., Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1258. In their reply, Defendants identify a single non-party witness—Ron Wehrli—located in the Northern District of Illinois. Dkt. 17 at 4–5. Wehrli was present when the license agreement was entered into and "played a large role in the initial development of Defendants' business." *Id.* at 5. Defendants express concern that they would be unable to compel Wehrli's testimony in the Western District of Virginia. At the hearing on this motion, Defendants alluded to "local residents"

---

[1] Accordingly, venue in patent infringement actions is governed by a different statute, which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

of Oswego, Illinois, who might testify about their experiences purchasing items, food, and wedding event services from Defendants. But Defendants have not presented any evidence about the inability of any potential witnesses, aside from Wherli, to attend trial in the Western District of Virginia.[2]

In any event, Defendants' proposed inference is not appropriate here because Plaintiff provided "contrary evidence" through a declaration from its owner, Jim Leavitt, indicating that at least one non-party witness—Priscilla Leavitt, a former owner of Plaintiff and Jim Leavitt's ex-wife—resides in the Western District of Virginia.   Dkt. 16-1 at 2. Priscilla Leavitt was present when the alleged license agreement was entered into. *Id.* Jim Leavitt expresses concern that Plaintiff would be unable to compel Priscilla Leavitt's testimony in the Northern District of Illinois. *Id.* at 3.

The parties appear to be in similar positions with respect to this factor. Therefore, on this record, Defendants have not persuaded the Court that the inconvenience to their witnesses is enough to merit transfer to the Northern District of Illinois.

### 4.      Interest of Justice

The fourth factor—the interest of justice—again favors neither Plaintiff nor Defendants. This prong captures "all those factors bearing on transfer that are unrelated to convenience of witnesses and parties," such as "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties and the possibility of harassment." *Bd. of Trs., Sheet*

---

[2] Defendants rely on *Global Tech Solutions* in asserting that the Court may "infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities . . . ." 109 F. Supp. 3d at 900 (internal quotation marks and citations omitted); *see* Dkt. 14 at 3–4. That patent infringement case is no more persuasive here than it was in the prior factor analysis.

*Metal Workers Nat'l Fund*, 702 F. Supp. at 1260. The parties note that the Western District of Virginia and the Northern District of Illinois have roughly comparable dockets in terms of total filings per judgeship. Dkts. 16 at 12; 17 at 5. The time from filing to trial is about 2.5 years in the Western District of Virginia and about 3.5 years in the Northern District of Illinois, making it slightly more likely that this case would be resolved faster in this district. *Id.* In addition, both Plaintiff and Defendants argue that their respective communities will be "most affected" by the outcome of this case. Dkts. 16 at 13; 17 at 6.

Based on these arguments, the Court finds that the interest of justice does not tip the scales in favor of Defendant.

## IV.    CONCLUSION

To disturb Plaintiff's chosen forum, Defendants must show that the factors are strongly in their favor. They have failed to do so. Accordingly, the Court finds that transfer of venue is inappropriate and will deny Defendants' motion to transfer venue.

An appropriate Order will issue.

The Clerk of Court is hereby directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this 17th day of December 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

11