IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **EMERSON CREEK POTTERY, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 6:20-CV-0054-NKM |
| ) | |
| **COUNTRYVIEW POTTERY CO.,** ) | |
| **EMERSON CREEK EVENTS, INC.,** ) | |
| **CHRISTINA DEMIDUK, and** ) | |
| **DAVID DEMIDUK** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

Plaintiff, Emerson Creek Pottery, Inc. ("ECP"), by counsel, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 11, and as directed by the Court's Minute Order, entered December 3, 2021 (ECF No. 42), submits this memorandum in support of its Motion to Compel Defendants, Countryview Pottery Co. ("Countryview"), Emerson Creek Events, Inc. ("EC Events"), Christina Demiduk, and David Demiduk (collectively, the "Defendants"), to fully respond to ECP's Interrogatories and Request for Production of Documents, produce relevant documents responsive to the same, which have been identified in depositions of the parties and the recent depositions and document productions of third-parties, as well as specific items previously promised by Defendants' counsel, and requiring that Defendants and/or their counsel pay ECP's reasonable expenses incurred in making this motion, including attorneys' fees and costs, and states as follows:

**RELEVANT FACTS AND PROCEDURAL STATUS**

This trademark infringement action arises out of a licensing dispute between the parties and was preceded by consolidated adverse proceedings before the Trademark Trial and Appeal Board at the United States Patent and Trademark Office (TTAB), Opposition No. 91241725.

As part of the Joint Rule 26(f) Report and Proposed Discovery Plan (ECF No. 29), the parties agreed to adopt and supplement all written discovery served in the matter before the TTAB. Defendants, however, maintained meritless relevancy objections and failed to produce or supplement documents responsive to TTAB Document Requests Nos. 1, 4, 5, 6, and 16, namely: email, text messages, social media, and other material related to Defendants' trademark use, advertising and marketing efforts, and financial documents. A copy of Defendants' Responses to ECP's TTAB Requests for Production of Documents are attached as Exhibit 1.

The parties exchanged initial disclosures in the instant case on March 1, 2021. ECP served its first set of requests for production of documents and interrogatories to Defendants on March 31, 2021. A copy of this discovery is attached as Exhibit 2. With ECP's consent, Defendants responded to the interrogatories and produced documents on May 27, 2021.

ECP's counsel sent a deficiency letter to Defendants' counsel on June 4, 2021, requesting supplemental responses to several interrogatories and the production of financial documents related to Defendants' profits, to be utilized in verifying and measuring ECP's damages and market penetration related to Defendants' use of the trademarks in this matter. A copy of this correspondence is attached as Exhibit 3.

ECP served a second set of requests for production of documents to Defendants on June 18, 2021. A copy of this discovery is attached as Exhibit 4. ECP also served second sets of

interrogatories on Defendants on August 2, 2021. A copy of this discovery is attached as Exhibit 5. Defendants responded to the second sets of interrogatories on September 27, 2021.

The Demiduks were deposed on September 27 and 28, 2021. During the depositions, counsel for ECP specifically asked Mr. Demiduk about emails and he identified Jonathan Domanus as the person responsible for setting up Defendants' latest email account. D. Demiduk Depo. Trans. 44:6-21, attached as Exhibit 6. In response to specific questions about the locations of emails, Mr. Demiduk stated "we lost e-mails in the transition [from ecreekpotteryandtearoom.com to emersoncreek.com]. I remember talking to Jonathan about it because I'd go back and look for specific e-mail, and I couldn't find them. And some of them were lost in the—going from one—regular gmail to G Suites." D. Demiduk Depo. Trans. 46:2-7, attached as Exhibit 6. Counsel specifically asked if this transition had occurred in 2017, and Mr. Demiduk responded "[n]o, I think we changed e-mails relatively recently." *Id* at 46:12-15. Over the course of the depositions of the Demiduks, counsel met and conferred on a number of discovery related topics, and counsel for Defendants committed to providing additional financial information for missing years, as well as for the "events" portion of Defendants' business.

During the Demiduks' depositions, ECP learned for the first time that the Demiduks hired third-parties, Lindsay Winkler and Jonathan Domanus, to assist them with their email system, domain names, and marketing efforts, in addition to website development. Based on this newly learned information, ECP immediately located and served deposition and document subpoenas on Ms. Winkler and Mr. Domanus.

ECP's counsel sent a deficiency letter to Defendants' counsel on October 6, 2021, stating that no internal or external correspondence had been produced by any of the Defendants. A copy of this correspondence is attached as Exhibit 7. ECP's counsel sent another deficiency letter to

3

Defendants on October 8, 2021, requesting documents in support of Defendants' response to ECP's Interrogatory No. 16, related to the sale of third-party pottery. A copy of this correspondence is attached as Exhibit 8. Defendants did not respond to either of these deficiency letters.

On October 26, 2021, ECP's counsel sent a follow-up letter to Defendants' counsel regarding the discovery deficiencies. A copy of this correspondence is attached as Exhibit 9. Counsel for Defendants responded that same day stating "I will provide a formal response this week. The short answer is that my clients do not have emails from years back for the reasons they stated in their depositions. They do have a few of the 2017 emails that you produced, which I can provide a copy of. They are all settlement-related, however." A copy of this correspondence is attached as Exhibit 10. Defendants did not provide a "formal" response and did not produce any emails or otherwise supplement their discovery responses or production.

Following service of the subpoenas, counsel for Ms. Winkler and Mr. Domanus reached out to counsel for ECP to coordinate the production of more than 20,000 documents, which ECP then had to review and prepare for the depositions of Ms. Winkler and Mr. Domanus on an expedited basis.

On November 11, 2021, ECP's counsel sent yet another follow-up letter to Defendants' counsel regarding the discovery deficiencies. A copy of this correspondence is attached as Exhibit 11. ECP's counsel's letter specifically referenced the documents produced by Ms. Winkler and Mr. Domanus and the fact that there are "hundreds of emails between Defendants and Lindsay Winkler and Jonathan Domanus from 2015 through, most recently, the Fall of 2021. Nevertheless, Defendants have still failed to produce a single email." Examples of emails and text messages produced by Ms. Winkler and Mr. Domanus are attached hereto as Exhibit 12. Additionally, these

emails identified communications between Defendants and their employees responsible for trademark use and advertising and marketing activities, in particular on their internet websites and social media pages, that had not been produced by Defendants. *Id.* Notably, Ms. Winkler testified that her company did not handle social media (e.g., FaceBook, Instagram, etc.) marketing for Defendants, as Defendants had other people to manage those responsibilities. L. Winkler Depo. Trans. 23:21-24:15, attached as Exhibit 16. Accordingly, since Defendants have continued to fail to produce any internal email or text message communications, ECP has not received any communications related to Defendants' social media activities/marketing. In addition, ECP's counsel noted the failure of Defendants to provide certain financial documents promised by their counsel, namely tax returns and financial documents regarding Defendants' actions. *See* Exhibit 11. ECP's counsel also noted that the delay in providing these documents had already prejudiced ECP. *Id.*

That same day, November 11, 2021, Defendants' counsel sent a letter regarding the discovery deficiencies, asserting that no documents had been withheld by Defendants and stating "as explained to you by my clients in their depositions, they do not have access to emails prior to 2017 because they were lost during their migration to G-suites. They identified all of the email addresses they used and attempted to check to see if any had archived emails but found they did not." A copy of this correspondence is attached as Exhibit 13. Counsel went on to say "[t]hey did not print these emails when they were generated, as prior to your 2017 demand, no complaints had been lodged by Mr. Leavitt (ECP's founder and president), and therefore, there was no reason to retain them." However, according to deposition testimony, this email migration did not take place until September 2020, well after ECP commenced the TTAB action.[1] Indeed, Mr. Domanus

---

[1] Mr. Domanus was able to confirm the timing of the migration based on the email attached as Exhibit 14 received from Dave Demiduk identifying the email addresses to be migrated.

testified that up until the migration in September 2020, Mr. Demiduk would have been able to access his email through Gmail, utilizing the dave@emersoncreek.com email address, prior to the emails being transitioned to the new "Google G Suite". J. Domanus Depo. Trans. 53:1-63:6, attached as Exhibit 15. With the November 11 letter, counsel produced 23 pages of emails between Defendants and ECP, Bates stamped ECP 682–704, but not a single internal email or text message or non-ECP external email. *See* Exhibit 13. Defendants' counsel also reiterated objections to the production of financial documents and asserted that, nevertheless, they had already been produced—ignoring his commitment of September 28, 2021, to provide specified financial information. *Id.* Defendants' counsel's November 11 letter also stated "I understand that you were able to retrieve emails through Lindsay Winkler, but my clients do not have those emails on their end." *Id.* (Emphasis added).

In response to questions regarding Defendants' emails and email accounts, Mr. Domanus testified that he does not remember the exact date, but that Mr. Demiduk had reached out to him regarding locating emails. J. Domanus Depo. Trans. 54:22-55:1, attached as Exhibit 15. Mr. Domanus testified that the emails were not backed up because "mail migration doesn't delete them from the source. It just creates a copy of them." *Id* at 62:8-9. Mr. Domanus further testified that he "was under the impression that everything had copied over successfully" and that he had not been notified of any issues relating to any emails not transferring properly as part of the migration process. *Id* at 56:24-57:24. When asked if he attempted to access the emails, Mr. Domanus stated that he was unable to do so because he could not log in to the account. *Id* at 62:25-63:11. Mr. Domanus further testified:

> Q. Okay. But that doesn't mean that the Gmail doesn't exist, it just means you weren't able to access it from what you know?
> A. That's correct.

*Id* at 63:16-19.  When asked if he had attempted a password reset, Mr. Domanus testified:

> A.   … I remember that Dave had sent over a couple of passwords to try, and none of them worked for me.  I did not attempt a password reset.

*Id* at 84:3-6.

With respect to the financial documents, Defendants' counsel committed to produce documents that related to the Defendants' business operations, earnings, and costs.  But other than incomplete and redacted pages from the Defendants' corporate tax returns, summary reports from QuickBooks, point of sale system reports, and scant advertising vendor invoices, Defendants produced nothing from which direct costs and profits can be calculated.  For example, Defendants have not provided sufficiently detailed information regarding separate income streams or pottery sales from sources other than ECP.

Lastly, Lindsay Winkler testified that Defendants had spreadsheets used for Mailchimp mailings on email and hard copy postcards via USPS in promotional marketing efforts, but they have not been produced by Defendants.  L. Winkler Depo. Trans. 31:1-39:22, attached as Exhibit 16.

As directed by the Pretrial Order, entered January 4, 2021 (ECF No. 23), and in the absence of any further production of documents or supplementation of discovery by Defendants, on November 23, 2021, ECP's counsel contacted Chambers regarding this discovery dispute and a conference call was scheduled with Magistrate Judge Ballou regarding this discovery dispute.

On November 29, 2021, the conference was set for December 3, 2021, at 4:00 p.m., and the parties were directed to submit a joint conference statement not less than 24 hours beforehand.  The parties submitted a Joint Statement regarding the discovery dispute to Chambers on December 2, 2021.  During the conference held on December 3, the Court directed the parties to brief this discovery issue.

On December 10, 2021, at 7:00 p.m. EST, Defendants produced approximately 3,000 files, all of which are emails, in their native format and not Bates stamped. ECP had to incur the considerable expense of loading and hosting these documents in a searchable format, and the cost of four attorneys to conduct an initial review of these documents starting on Sunday afternoon, December 12, in order to meet applicable deadlines. In doing so, ECP discovered that well over half of the files Defendants produced were exact duplicates of each other. Further, the significant majority of the approximately 1,200 remaining email files were redundant of the emails already produced by Lindsay Winkler—raising serious concerns over the very limited scope of the searches conducted by Defendants.[2] Accordingly, Defendants again caused ECP to incur significant expense in a short period of time without providing any of the additional documentation sought in discovery, which is highly relevant to the claims at issues in this litigation.

Defendants' counsel has failed to address the apparent limited scope of the email search conducted, and Defendants' continued failure to produce: (1) any internal communications, emails or otherwise, (2) any text messages, (3) the requested marketing materials, existing within or outside (residing on computers or servers) of email communications, or (4) the requested financial information.

Trial is currently set for February 22–25, 2022, and the deadline to file dispositive motions is December 17, 2021. *See* Pretrial Order.

**ARGUMENT**

Rule 26(b)(1) of the Federal Rules of Civil Procedure states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

---

[2] For example, the emails produced do not reflect many of the email addresses set forth in Exhibit 14.

> parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The information sought by ECP is relevant, responsive to discovery duly served to Defendants, and no privilege has been claimed by Defendants. Further, the information sought is proportional to the needs of the case under the consideration of Rule 26(b)(1):

A.  **Importance of Issues at Stake in the Action**

In this action, ECP has been damaged by Defendants' use of ECP's registered and common law trademarks EMERSON CREEK POTTERY and EMERSON CREEK in connection with pottery and related goods and services. Deposition testimony and correspondence from Defendants' counsel confirms that there is electronically stored information regarding Defendants' use of the same trademarks in connection with the same, similar, or related goods and services. Defendants' assertions that EC Events' wedding and event services are not related to the pottery claimed in ECP's federal trademark registrations are incorrect. As this Court has said:

> [I]t is clear that "[a] markholder is not limited to protection of only the products listed in its application to USPTO or by the resulting certificate of registration." *Rebel Debutante LLC v. Forsythe Cosmetic Group, Ltd.*, 799 F. Supp. 2d 558, 573 (M.D.N.C. 2011) (citing *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 172–73 (4th Cir. 2006). As such, the parties' services "need not be identical or in direct competition with each other," *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 397 (4th Cir. 2009), but only "related . . . [such that] the public is likely to attribute the products and services to a single source." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 244 (4th Or. 2007); *see also IDV N. Am., Inc. v. S & M Brands, Inc.*, 26 F. Supp. 2d 815, 826 (E.D. Va. 1998) (noting that goods can be "related" when consumers believe an infringer's goods are "sponsored" or "approved" by the senior user).

*Dynamic Aviation Grp. Inc. v. Dynamic Int'l Airways, LLC*, No. 5:15-CV-00058, 2016 WL 1247220, at *20 (W.D. Va. Mar. 24, 2016). This case law suggests that the requested information

9

regarding EC Events will lead to admissible evidence, and the proportionality considerations of Rule 26(b)(1) support disclosure.

The issues at stake in this action are important both to ECP and to future customers who might be harmed due to a likelihood of confusion if Defendants are not held responsible for their infringement of ECP's trademarks. Moreover, Defendants are holdover licensees. Thus, the traditional likelihood of confusion analysis may be unnecessary. *See, e.g.*, *Choice Hotels Int'l, Inc. v. A Royal Touch Hosp., LLC (NC)*, 409 F. Supp. 3d 559, 566 (W.D. Va. 2019) (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) ("[P]roof of continued, unauthorized use of an original trademark by one whose license to use the trademark has been terminated is sufficient to establish likelihood of confusion.")).

**B.  Amount in Controversy/the Parties' Relative Access to Relevant Information/the Parties' Resources**

As the Demiduks and third parties have indicated, and counsel for the Demiduks now confirmed, Defendants have access to the information sought. ECP cannot obtain this information otherwise. Defendants can produce this information with little to no cost to them, which is proportional with respect to the amount in controversy in this infringement action.

**C.  Importance of the Discovery in Resolving the Issues**

Here the requested information is "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," *see* Rule 26(b)(1), and is therefore discoverable. Moreover, the information in the documents that have not been produced is directly related to ECP's damages and the claims and defenses of the parties.

Defendants are making it difficult to determine their costs and profits with any accuracy. Defendants also have not produced any third-party financial source documents for their purchases or sales of their products. For example, Defendants failed to provide financial source

10

documents for pottery or restaurant and wedding/event services, e.g., invoices, purchase orders, receipts, complete or verifiable point of sale receipts, or documents, inventory lists, packing lists, daily and other periodic transaction records and reports. Defendants also failed to provide complete financial data related to their wedding or events services, the Demiduks' individual tax returns, tax returns for Countryview or EC Events for 2019 or 2020, or any data or information about 2020 restaurant sales.

When Defendants did provide information about what they did have, it was misleading or contradictory. For example, Christina Demiduk testified that Defendants had QuickBooks records for the restaurant, shop, and events, yet David Demiduk said they did not use QuickBooks for EC Events.

> Q. Okay. Do you know, would you still have the sort of native QuickBook files for 2017 to 2021?
> A. For what? For the restaurant? For the shop?
> Q. For the restaurant, shop, and events?
> A. Of course we probably would have it in our records, and I'm -- of course, I believe.

C. Demiduk Depo. Trans. 393:2–18, attached as Exhibit 17.

> Q. Now, what about for QuickBooks? Do you use QuickBooks at all for the events?
> A. No.
> Q. You do not. It's what your son came up with on the Excel spreadsheets, that's what you use for the finances on the event side of things?
> A. Correct.

D. Demiduk Depo. Trans. 57:7–13, attached as Exhibit 6.

As previously noted by ECP's counsel, Defendants' failure to timely produce relevant information has prejudiced ECP. ECP also has been damaged by this because the lack of information precluded it from verifying the summary data Defendants provided and being able to designate a cost accountant expert or the ability to determine how cash flowed through the

corporate Defendants' books or to the Demiduks individually. *See*, *e.g.*, *Peebles v. Four Winds Int'l*, No. CIV. 6:07CV00001, 2008 WL 901550, at *6 (W.D. Va. Mar. 31, 2008) ("The discovery process requires cooperation by all parties and it is clear that did not occur here."). In *Peebles*, the plaintiff prevented a defendant from properly designating its expert witness "because the corresponding report had not yet been filed due to Peebles' refusal to allow the experts to inspect the vehicle." *Id.*, 2018 WL 901550 at *5.

D.  **Whether the Burden or Expense of the Proposed Discovery Outweighs its Likely Benefit**

While producing the requested information likely would be of little to no expense to Defendants other than *de minimis* efforts to access the requested information, and any burden to Defendants would be minimal, the likely benefit may be significant as with any documents that may establish the intent and extent of an alleged infringers use of the marks at issue. Defendants' objection to producing the information should be overruled because the information sought is likely to lead to admissible evidence and may be admissible evidence itself—both of which are discoverable. As the Court mentioned in teleconference on the issue, everyone has a duty to preserve relevant information when litigation is reasonably foreseeable.

## CONCLUSION

WHEREFORE, ECP respectfully requests that the Court enter an order:

1. Granting its motion to compel;

2. Require Defendants to describe with specificity the processes utilized to collect the documents produced on December 10, 2021;

3. Directing Defendants to identify all efforts made to preserve and collect electronically stored evidence related to the TTAB action and this litigation;

4. Directing Defendants to search for and produce the information requested—based upon the use of search terms and parameters agreed to by ECP and the Court—including:

   a. all responsive communications, emails, text messages, social media, and other materials related to Defendants' trademark use, advertising, and marketing efforts, such as mailing lists, and

   b. complete financial documents, including the Demiduks' individual tax returns since 2017, source documents like original invoices, purchase orders (including, but not limited to, those related to third-part pottery sales), etc., revenue from weddings and other events, complete QuickBooks files and charts of accounts for Countryview and EC Events, and nonredacted tax returns for corporate Defendants;

5. Awarding ECP its reasonable expenses incurred in making this motion, including attorneys' fees and costs, as well as the costs of the recent e-discovery process ECP was compelled to undertake; and

6. Granting Plaintiff such other and further relief the Court deems proper.

Dated:  December 15, 2021

Respectfully submitted,

/Henry I. Willett III/
Henry I. Willett III, Esq. (VSB No. 44655)
CHRISTIAN & BARTON, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219-3095
(T) (804) 697-4130
(F) (804) 697-6130
hwillett@cblaw.com

Garfield Goodrum (*pro hac vice*)
DESIGN LAW
90 Canal Street, 4th Floor

Boston, Massachusetts 02114
(T) (617) 861-0780
(F) (617) 507-5983
garfield.goodrum@gdrmlaw.net

*Counsel for Plaintiff*
*Emerson Creek Pottery, Inc.*

14

## CERTIFICATE OF SERVICE

I certify that on December 15, 2021, I filed a copy of the foregoing memorandum with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record as follows:

Lawrence E. Laubscher Jr.
1160 Spa Road, Suite 2B
Annapolis, Maryland 21403
llaubscher@laubscherlaw.com

Kenneth S. McLaughlin, Jr. (*pro hac vice*)
1 E. Benton Street, Suite 301
Aurora, Illinois 60505
kmclaughlin@ma-lawpc.com

*Counsel for Defendants*

/Henry I. Willett III/
Counsel