and common law trademark rights and breach of the agreement between the parties regarding the same. Plaintiff seeks injunctive and monetary relief.

2. Plaintiff owns the trademark EMERSON CREEK POTTERY, which it adopted in 1977 and registered at the U.S. Patent and Trademark Office ("PTO"). In 2001, Plaintiff orally licensed Defendant Christina Demiduk to open an outlet for its marked pottery and later expanded the license to cover restaurant "tea room" services at a single location, a cookbook and weddings there. In 2017, Defendants breached the license by selling third-party, low quality pottery, ceasing to buy Plaintiff's pottery and applying to register the trademarks to itself. Plaintiff opposed these applications at the PTO, tried to resolve the matter, and then formally terminated the license. Defendants nonetheless continue to use Plaintiff's trademarks to sell their products at their single location, as well as on their internet website and in social media. Defendants are hold-over licensees, never developed any ownership rights and are willful, bad-faith infringers, trying to purloin a valuable trademark Plaintiff developed decades before their arrival. Defendants' continued use of Plaintiff's venerable trademark is causing severe injury.

## PARTIES

3. Plaintiff Emerson Creek Pottery, Inc. is a Virginia corporation with principal place of business at 1068 Pottery Lane, Bedford, VA 24523. Emerson Creek Pottery was founded by James Leavitt, a Virginia resident, in 1977 to design, manufacture and sell pottery, which it has done continuously since then at the same place.

4. Defendant Countryview Pottery Co. ("Defendant Countryview") is an Illinois corporation formed in 2001 with principal place of business at 4914 Stephens Road, Oswego, IL 60543 and a business telephone number of (630) 554-7100.

Defendants' Exhibit 5

16. Plaintiff filed an additional U.S. trademark application (Ser. No. 87400157) on April 5, 2017 to cover its logo used with its EMERSON CREEK POTTERY mark and expand its registered goods and services, which is shown at Exhibit D, for:

> Ceramic sculptures, vases, vessels, bowls, plates and pots; household containers for foods; mugs; serving platters; tea pots; baking cloches in the nature of pans and lids to cradle food that is baked; colanders, honey jars, non-electric slow cookers; pet feeding and drinking bowls, cutlery holders in the nature of household containers for cutlery, serving trays, pitchers, casserole dishes, pie plates, pizza pans, tea sets, dinnerware, chili bowls, giftware in the nature of bowls, plates, spoon rests, baking pans, trivets, pasta bowls, bath and kitchen sets comprised of soap dishes, soap dispensers, tooth brush holders and drinking cups; ceramic craft and cooking molds; Retail store services for those same goods; and Restaurant services; rental of banquet and social function facilities for wedding receptions, birthday parties and like social functions.

Plaintiff disclaimed exclusive rights to "made in the USA" and "pottery" apart from the mark as a whole. The PTO completed examination and approved the mark for publication on April 25, 2018, stating: "The mark of the application identified appears to be entitled to registration."

### DEFENDANT CHRISTINA DEMIDUK ASKS PLAINTIFF FOR PERMISSION TO OPEN AN OUTLET IN ILLINOIS.

17. In or about 2000, Christina Demiduk and her then-partner Mr. Ron Wehrli visited Plaintiff's workshop in Bedford, VA, while on vacation. Ms. Demiduk expressed interest in opening an EMERSON CREEK POTTERY outlet shop back in Illinois to sell Plaintiff's pottery. Plaintiff subsequently authorized Ms. Demiduk and Mr. Wehrli to use its EMERSON CREEK POTTERY mark in connection with her outlet shop in Illinois for Plaintiff's goods. Plaintiff's license was contingent upon Ms. Demiduk and Mr. Wehrli purchasing pottery only from it, at a discount, and selling no other or any third-party pottery. Ms. Demiduk and Mr. Wehrli were allowed to sell non-pottery goods at the shop, but all pottery had to be Plaintiff's pottery in order to keep using Plaintiff's trademark. Attached as Exhibit E are screen prints from Defendants'

website in 2018 at www.ecreekpotteryandtearooom.com, replete with photos of Plaintiff's pottery, in which Defendants state:

> Located inside the renovated 100 year old farmhouse, **Emerson Creek Pottery Shop offers a wide array of hand crafted gifts and accessories as well as our namesake hand painted pottery.** From artisan-crafted candles and beautiful, unique jewelry, to the ever-popular dinner and bakeware and locally made honey, each item in the shop is personally selected to offer a unique and original collection of merchandise. Whether you are looking to add to **your collection of Emerson Creek Pottery** or simply pick up a new handmade candle there is something for everyone at the shop.
>
> Whats [*sic*] in store?<br>Emerson Creek Pottery
>
> ....
>
> **All of our beautiful pottery is created and painted in Bedford, Virginia and is the original source of inspiration for the Pottery Shop and Tearoom that you enjoy today. This family owned company began in 1977 and has been producing functional pottery pieces ever since.** Each piece is an authentic original as there is not a template or stencil used in the process. There is an **Emerson Creek pottery** [*sic*] piece for almost every use in your home!
>
> In our Pottery Shop you will find dinnerware, coffee and tea mugs, bakeware, serving dishes, bathroom accessories, and more! There are currently 14 patterns available. All the pottery is lead free, and can be used in the oven, microwave and dishwasher. Come on in and check out our full line of Brie Bakers. This is the ideal pottery bakeware for baking casseroles or desserts.

(emphasis added). The 14 lines available were all Plaintiff's designs, which Defendants acquired directly from Plaintiff under the license.

18. Ms. Demiduk incorporated Defendant Countryview in 2001 to operate the outlet shop, which opened in 2001 on the property located at 4914 Stephens Road, Oswego, IL 60543. Unbeknownst to Plaintiff, Defendant Countryview registered the assumed names EMERSON CREEK POTTERY and EMERSON CREEK TEAROOM with the Illinois Secretary of State. None of the defendants have ever filed a trademark application for COUNTRYVIEW.

19. Plaintiff subsequently licensed Ms. Demiduk to operate a tea room at the gift shop location under the mark and sold her pottery to use in serving food there. Likewise, Plaintiff licensed Ms. Demiduk to offer a cookbook and events such as weddings there. Over the years, Ms. Demiduk visited Plaintiff's Virginia workshop several times to affect the license, discuss business, designs, shipments and payments, including in 2007 and 2012 / 2013. According to records of the Illinois Secretary of State, Ms. Demiduk and/or Mr. Demiduk incorporated Defendant EC Events in 2012.

20. Through Ms. Demiduk's visits and regular and extensive communications with her regarding pottery orders, shipments, accounts and operations, Plaintiff monitored and knew that Ms. Demiduk was personally active in and managing the provision of all the gift shop, restaurant and events services in her typical best efforts and quality.

21. Defendants use Plaintiff's pottery for serving at least some foods at their café restaurant using the EMERSON CREEK POTTERY & TEAROOM mark. Attached hereto as Exhibit F is a page from a Specimen of Use Defendant Countryview filed with the PTO in its application no: 87613773 stating: "Our classic Flower Pot salad, served in an actual Emerson Creek flower pot, is the favorite of many." Also attached as Exhibit G is an image taken from Defendants' website at www.EMERSONCREEK.com on or about the date hereof, showing a scoop of ice cream a la mode over a baked food item in an actual EMERSON CREEK bowl.

22. Defendants also use the EMERSON CREEK POTTERY & TEAROOM mark to offer wedding event services. Attached as Exhibit H are images from Defendants' July 19, 2020, Facebook post for a recent wedding using the mark at the beginning, twice, followed by 30 hashtags, the text "@ Emerson Creek Pottery and Tearoom" and photos of the event, as well as a

photo of Defendants' road signage from an earlier wedding prominently using the EMERSON CREEK POTTERY mark separated from the generic terms "tea room."

23. Defendants advertise, promote and market all their uses of Plaintiff's EMERSON CREEK POTTERY mark online at the website <emersoncreek.com> and in multiple social media platforms. Defendants have expressly highlighted their association with Plaintiff in these venues. Defendants' tearoom and events services and cookbook benefit greatly from association with Plaintiff's EMERSON CREEK mark and the associated good will Plaintiff developed in the mark over the roughly 25 years Plaintiff offered its pottery before Christina Demiduk first visited Plaintiff in Virginia.

### DEFENDANTS STOP PURCHASES FROM PLAINTIFF AND APPLY TO REGISTER ITS TRADEMARKS.

24. In February 2017, Defendant Christina Demiduk asked Plaintiff's Jim Leavitt for an increased discount for purchasing pottery. Plaintiff declined to increase the discount, and Mr. Leavitt told Ms. Demiduk that Defendants' use of EMERSON CREEK in social media posts was creating confusion. On or about March 1, 2017, Mr. Leavitt emailed Defendant Dave Demiduk and stated: "Also keep in mind that "Emerson Creek Pottery" is our trademarked name and you should only use it appropriately and with "and Tea Room" when referring to your store."

25. Defendant's last placed an order with Plaintiff for EMERSON CREEK POTTERY marked pottery on or about July 19, 2017.

26. In September 2017, a private investigator visited Defendants' location in Oswego, Illinois, and Plaintiff learned for the first time that Defendants were selling third-party pottery, rather than Plaintiff's brand pottery, in violation of the license. Specifically, on or about September 26, 2017, the investigator purchased 6 pieces of third-party pottery from Defendants at their location in Oswego. Attached hereto as Exhibit I are two purchase receipts given to the

9

investigator by Defendants marked EMERSON CREEK POTTERY and EMERSON CREEK POTTERY AND TEAROOM and images of the purchased pottery. This third-party pottery included foreign-made pottery, some of which was manufactured in China. This third-party pottery is typically of a much lower quality than Plaintiff's goods.

27. On September 19, 2017, Defendant Countryview filed trademark application 87613743 in the PTO for EMERSON CREEK POTTERY & TEAROOM for "Tea rooms; Providing banquet and social function facilities for special occasions; Restaurant and café services." The PTO refused to register the mark to Defendant. The assigned PTO Examining Attorney concluded such registration would violate Trademark Act Section 2(d), 15 U.S.C. §1052(d), because of a likelihood of confusion with Plaintiff's registration 4835568 for EMERSON CREEK POTTERY. The PTO Examining Attorney also stated Countryview's mark might be refused because of Plaintiff's application 87400157. Countryview subsequently expressly abandoned its '743 application.

28. Also on September 19, 2017, Defendant Countryview filed trademark application 87613773 in the PTO for EMERSON CREEK TEAROOM for "tea rooms; restaurant and café services," and subsequently disclaimed the generic term TEAROOM. The PTO also refused to register this mark to Defendant. The PTO Examining Attorney concluded such registration would violate the Trademark Act for the same reason, because of a likelihood of confusion with Plaintiff's registration 4835568 for EMERSON CREEK POTTERY. And the Examining Attorney again stated the PTO might refuse Countryview's mark because of Plaintiff's application 87400157. Defendant submitted argument, but the Examining Attorney maintained the rejection, stating: "Applicant's arguments have been carefully considered but found unpersuasive."

10

29.  Defendant Countryview and Defendant EC Events also filed trademark application number 87613813 on September 19, 2017, for EMERSON CREEK EVENTS for "providing banquet and social function facilities for special occasions." Plaintiff has opposed this application at the PTO.

30.  Defendants Christina Demiduk and Dave Demiduk subsequently registered for a trade show in Las Vegas, Nevada, identifying themselves with company name "emerson creek pottery" and email addresses at info@ecreekpotteryandtearoom.com and chris@ecreekpotteryandtearoom.com. Attached hereto as Exhibit J is a printout showing these registrations with text "THE PAVILIONS TEMPS JAN 28 – 31-2018."

31.  More recently, on June 7, 2019, Defendant Countryview filed trademark applications 88464124 and 88464155 for EMERSON CREEK CAFE for "restaurant and café services" and EMERSON CREEK CONFECTIONERY for "retail bakery shops," and subsequently disclaimed the generic terms CAFE and CONFECTIONERY. The PTO again refused to register Defendants' marks. A different PTO Examining Attorney from their above '743 and '773 applications concluded like the first Examining Attorney that such registration would violate the Trademark Act because of a likelihood of confusion with Plaintiff's registration 4835568 for EMERSON CREEK POTTERY among other reasons.

### PLAINTIFF'S ATTEMPT TO RESOLVE THE DISPUTE, FILING OF PTO OPPOSITIONS, AND TERMINATION OF THE LICENSE.

32.  Plaintiff sought to resolve the matter and formalize the license in writing. The parties filed oppositions at the PTO against each other's trademark applications, and Plaintiff continued to try to negotiate the matter with Defendants. In a letter on or about January 5, 2018, Plaintiff through counsel terminated its license to Defendants and demanded an immediate

11

cessation of all use of its EMERSON CREEK mark in all forms. In subsequent emails in 2018, Plaintiff through counsel repeated its cease and desist demand to Defendants' counsel. And again on March 12, 2019, Plaintiff's counsel wrote Defendants' counsel: "In any case, the Demiduks must discontinue and not resume any sales of 3d party pottery."

33.   Nonetheless, on or about May 30, 2019, Plaintiff's investigator returned to Defendants' location in Oswego and observed Defendants continuing to use the EMERSON CREEK POTTERY and EMERSON CREEK POTTERY & TEAROOM mark on outdoor signage. Despite receiving actual notice of infringement, Defendants continued to sell third-party pottery alongside Plaintiff's pottery at the gift shop and serving food in the tearoom on Plaintiff's marked pottery. On that visit, the investigator purchased two pieces of third-party pottery from Defendants' gift shop and two items of food from its tearoom, which were served on Plaintiff's pottery. Printed on both the pottery and tearoom receipts prominently is the header EMERSON CREEK POTTERY AND TEAROOM, and the menu has the email address …@ecreekpotteryandtearoom.com. Attached hereto as Exhibit K are photographs of the inferior pottery, purchase receipts, menu and road signage from the investigator's May 30, 2019, visit.

34.   There have been several instances of actual consumer confusion with respect to the affiliation, association, connection, sponsorship, or approval between the parties directly resulting from Defendants' use of EMERSON CREEK. These instances have come in various forms, including social media posts by consumers and phone calls to Plaintiff. Attached as Exhibit L is an example of a customer post on Plaintiff's website inquiring whether the Oswego, Illinois location sold linens.

35.   The parties' goods and services travel in the same channels of commerce. Plaintiff and Defendants maintain presences on the internet and social media, including Facebook, Twitter

# United States of America
## United States Patent and Trademark Office

# Emerson Creek Pottery

**Reg. No. 4,835,568**  EMERSON CREEK POTTERY INC. (VIRGINIA CORPORATION)
1068 POTTERY LANE
**Registered Oct. 20, 2015** BEDFORD, VA 24523

**Int. Cl.: 21**  FOR: CERAMIC SCULPTURES, VASES, VESSELS, BOWLS, PLATES AND POTS; HOUSEHOLD CONTAINERS FOR FOODS; MUGS; SERVING PLATTERS; TEA POTS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

**TRADEMARK**

FIRST USE 6-1-1977; IN COMMERCE 6-1-1977.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "POTTERY", APART FROM THE MARK AS SHOWN.

SER. NO. 86-545,729, FILED 2-25-2015.

KEVIN CORWIN, EXAMINING ATTORNEY



Michelle K. Lee

Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

*****ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.