# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | | |
|---|---|---|
| EMERSON CREEK POTTERY INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 6:20-CV-0054-NKM |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTRYVIEW POTTERY CO., | ) | |
| EMERSON CREEK EVENTS, INC., | ) | |
| CHRISTINA DEMIDUK, and | ) | |
| DAVID DEMIDUK | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................ 1

PLAINTIFF'S SUPPLEMENTAL FACTS ........................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

    I.   Plaintiff And Defendants' Business Relationship Did Not Amount To A "Close Working Relationship" And Thus Plaintiff Did Not Sufficiently Exercise Quality Control. ............................. 2

    II.  Defendants' Use Of EMERSON CREEK Does Not Amount To "Inevitable Confusion" And Thus Plaintiff Has Not Revived Its Causes Of Action. ....................................................................... 4

    III. Plaintiff's Allegations Of Actual Confusion Are Not Supported Under Law. ............................ 6

CONCLUSION .................................................................................................................................... 7

# TABLE OF AUTHORITIES

**CASES**

*B.H. Bunn Co. v. AAA Replacement Parts Co.,* 451 F.2d 1254, 1270 (5th Cir.1971) .............................. 6

*Beach Mart, Inc. v. L&L Wings, Inc.*, No. 2:11-CV-44-FL, 2020 WL 5026742, at *1 (E.D.N.C. Aug. 25, 2020) ..................................................................................................................................... 2, 3

*Brooklyn Brewery Corp. v. Brooklyn Brew Shop*, 17 F.4th 129, 143 (Fed. Cir. 2021) ........................... 5

*Coca-Cola Co. v. Purdy*, 382 F.3d 774, 784, (8th Cir. 2004) ................................................................... 6

*Lang v. Retirement Living Pub. Co.*, 949 F.2d 576 (2d Cir.1991) ........................................................... 7

*Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88 (4th Cir. 1997) .................... 7

*Playnation Play Sys. v.Velex Corp.*, 924 F.3d 1159 (11th Cir. 2019) ...................................................... 6

*Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 124 (5th Cir. 1973) ........................... 4

*Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc.*, 851 F.3d 440, 458 (5th Cir. 2017) ............................................................................................................................................... 7

*SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1335 (11th Cir. 1996) .......... 4, 5, 6

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991) .................................. 3

*Winchester Federal Savings Bank v. Winchester Bank, Inc.*, 359 F. Supp. 2d 561, 570 (E.D. Ky. 2004) ........................................................................................................................................................... 7

**TREATISES**

McCarthy on Trademarks and Unfair Competition § 18:63 (5th ed.) ................................................. 4, 7

Restatement Third of Unfair Competition § 20 ....................................................................................... 7

## INTRODUCTION

Defendants Countryview Pottery Co., Emerson Creek Events Inc., Christina Demiduk, and David Demiduk, through counsel, file this Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment. For the reasons set forth below, Defendants respectfully request the Court grant their motion in its entirety.

## PLAINTIFF'S SUPPLEMENTAL FACTS

Much of Plaintiff's factual section of its Opposition Memorandum sets forth supplemental facts rather than disputed facts. Defendants do not believe the supplemental facts to be "material" to their Motion for Summary Judgment.

In each of its filings in connection with the cross motions for summary judgment, Plaintiff's uses its "facts" sections to argue the ways in which documents should be interpreted (i.e. facts that demonstrate confusion, facts that demonstrate a license existed, facts that demonstrate control by Plaintiff, facts that demonstrate intent and infringement.) The exhibits speak for themselves. Defendants dispute Plaintiff's interpretations *beyond* what is set forth in the exhibits.

To reiterate, Plaintiff has not submitted any documents demonstrating that any party ever explicitly agreed to a trademark license, nor has Plaintiff submitted any documents demonstrating Plaintiff granted or controlled Defendants' use of EMERSON CREEK with their shop, restaurant and events services. The only evidence submitted by Plaintiff to demonstrate an explicit license, or any oversight of Defendants by Plaintiff, is through Mr. Leavitt's own conclusory statements.

# ARGUMENT

I. **Plaintiff And Defendants' Business Relationship Did Not Amount To A "Close Working Relationship" And Thus Plaintiff Did Not Sufficiently Exercise Quality Control.**

Plaintiff argues that under Fourth Circuit law, when two parties have a "close working relationship", Plaintiff can rely on Defendants' own quality control standards to meet Plaintiff's quality control requirement for a trademark license, whether to demonstrate an implied license and/or to defend an allegation of naked licensing.[1] (Plaintiff's Memorandum in Opposition pp. 14-17, *citing Beach Mart, Inc. v. L&L Wings, Inc.*, No. 2:11-CV-44-FL, 2020 WL 5026742 (E.D.N.C. Aug. 25, 2020)). Defendants agree that this is the correct standard, and in fact, discussed this same standard in their Memorandum in support of summary judgment.[2]

Though this standard is correct, it does not support Plaintiff's exercise of sufficient quality control as Plaintiff contends. In fact it demonstrates Plaintiff's *lack* of quality control.

In *Beach Mart*, the Court analyzed four licensing agreements to determine whether the licensor met its duty of quality control. None of those four licenses includes quality control standards. The Court found that in all four instances, the licensor could rely on the licensee's own quality control standards because of the close working relationship between the parties, which *predated* each license in question. *Id.*

In the first license, the Court noted that the licensee had worked for the licensor for 15 years in one of licensor's stores, selling licensor's goods under the trademark in question. During a portion of this 15-year working relationship, licensee was a manger of licensor's store. The

---

[1] Plaintiff's first argue there was an oral license, but as Defendants have stated in each of its past memorandums, Plaintiff has not submitted documentary evidence of any such oral license.

[2] Defendants cited multiple cases regarding a "special relationship". One of these cases is *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir.1991), which is cited in *Beach Mart* as an example of a "close working relationship".

2

court determined that this long-term prior working relationship might amount to a "close working relationship" such that the licensor could rely on the licensee's own quality control. The remaining three licenses were similar. *Id.* The second, third and fourth licenses involved licensees that had worked for the licensor for 16, 12 and 10 years, respectively, prior to licensor granting the license. *Id.*

The Court noted that not only did licensor's *prior* long-standing close working relationship with each licensee demonstrate quality control, but in three of the four licenses, licensor had actually visited and inspected licensee's stores. From all of these facts, the Court determined, not that this level of quality control was sufficient, but that this level of quality control *might* be sufficient. *Id.*

As stated in *Beach Mart*, courts will find a sufficient level of quality control in two instances: 1) where Plaintiff demonstrated *actual* control through quality standards, inspection and supervision; or 2) where the parties had a "close working relationship" such that Plaintiff could rely on Defendants' own quality control. *Beach Mart*, 2020 WL 5026742, *citing Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991). Neither instance exists in the case at bar. The parties had no prior working relationship whatsoever, and Plaintiff did not visit and inspect Defendants' shop until 2017 when it sent a private investigator to do so. Due to this lack of quality control, there was never a license agreement between the parties.

Plaintiff further argues that it exercised its own quality control with its pottery because it manufactured the pottery. Defendants do not dispute that Plaintiff manufactured its own pottery and thus exercised quality control over its own pottery. That is not the issue. The issue is with regard to Defendants' shop, restaurant and events services. Plaintiff asserted no standards as to the nature of Defendants' services nor to the other products being sold by Defendants that did not

3

originate from Plaintiff. For 17 years, it never inspected any of Defendants shop, tearoom, restaurant or barn. Plaintiff has provided no documentary or third-party evidence to the contrary. The evidence submitted with the parties' cross motions for summary judgment shows that Defendants determined, on their own, the signage and décor of the shop, the goods they would sell in the shop, how to price those goods, the advertising they would use with those goods, how the goods would be packaged, etc. The same is true for Defendants' restaurant and events services. For 17 years, Plaintiff showed no care or interest in what Defendants did or how they used EMERSON CREEK with their businesses.

Plaintiff further contends that "black letter law" prevents Defendants from raising licensee estoppel as a defense (Plaintiff's Memorandum in Opposition p. 3). Defendants disagree.

Though licensee estoppel often applies when a licensee attempts to argue naked licensing based on its own license, when a lack of quality control extends over a period of many years, the licensor is itself estopped from bringing an action. *See Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 124 (5th Cir. 1973); *see also* McCarthy on Trademarks and Unfair Competition § 18:63 (5th ed.).[3] Due to Plaintiff's lack of control, as detailed herein and in Defendants' other briefs, Defendant is not estopped from raising a naked license, and in fact Plaintiff is estopped from bringing this action.

II. **Defendants' Use Of EMERSON CREEK Does Not Amount To "Inevitable Confusion" And Thus Plaintiff Has Not Revived Its Causes Of Action.**

As Plaintiff notes in its Memorandum, acquiescence is not absolute since it is an equitable defense. *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1335 (11th Cir. 1996). Despite Plaintiff's past acquiescence, if it can prove that confusion is a certainty, or

---

[3] The naked licensing defense in such an instance is similar to other estoppel defenses.

4

as courts have stated is "inevitable", then Plaintiff will overcome the defense of acquiescence. *Id.* In other words, Plaintiff will "revive" its claims. *Id.* However, when Defendants establish acquiescence, Plaintiff's burden increases requiring proof of inevitable confusion rather than a likelihood of confusion. *Id.*

To find inevitable confusion, the goods or services and marks in question must be identical or nearly identical, whereas for likelihood of confusion the goods/services must only be related and the marks only similar. *See Brooklyn Brewery Corp. v. Brooklyn Brew Shop*, 17 F.4th 129, 143 (Fed. Cir. 2021)[4]. Where a "nearly identical" standard has been applied, it has been with marks that are not identical but are sufficiently similar such that confusion as to a purchasing decision of identical goods/services is inevitable. *Id.*

In the case at bar, Defendants previously sold pottery through its shop operating under different iterations of EMERSON CREEK. Plaintiff acquiesced to each such use. Defendants are no longer selling pottery and are now only providing restaurant and events services under their EMERSON CREEK and EMERSON CREEK EVENTS marks. Plaintiff's pottery and Defendants' restaurant and events services are not identical, and thus confusion is not inevitable.[5] Consumers will not be confused into making a purchasing decision of one party's goods or services that will harm the other party.

Even if there were inevitable confusion, injunctive relief will not automatically result. Inevitable confusion must be proven in response to acquiescence. Due to the equitable nature of

---

[4] Plaintiff also states this in its Memorandum in Opposition on page 19.

[5] As Defendants have noted in their other briefs, these goods and services are also not sufficiently related to lead to a standard likelihood of confusion. Plaintiff states multiple times that its pottery is shown in some of Defendants' advertising of these services and that this somehow creates a connection with Plaintiff. There is no evidence to show that a consumer of Defendants would recognize the pictured pottery as Plaintiff's pottery. Plaintiff may know the pottery is its own, but that does not create consumer knowledge of the same. Moreover, Defendants having been working to remove all instances of pottery from their advertising.

5

acquiescence, when inevitable confusion is found, the Court will then be tasked with crafting an equitable solution to mitigate the inevitable confusion. *SunAmerica Corp. at* 1335. "The equitable relief that is granted should be only that which is required to distinguish the two products, and no more." *B.H. Bunn Co. v. AAA Replacement Parts Co.,* 451 F.2d 1254, 1270 (5th Cir.1971). Thus, if inevitable confusion were found, the Court here should consider "the full range of remedial alternatives available to cure marketplace confusion..." and "...fashion a remedy less harsh than the strong medicine of a total injunction." *SunAmerica Corp.* at 1337.

Thus, though Plaintiffs have not shown inevitable confusion, even if inevitable confusion is found, an equitable remediation should be determined. Defendants no longer sell pottery nor associate themselves with pottery. They direct any pottery inquiries they receive to Plaintiff. Defendants intend to continue to receive any random inquiries for pottery to Plaintiff. These actions should be sufficient to cure any instances of mistaken identity that might arise in the future.

### III.     Plaintiff's Allegations Of Actual Confusion Are Not Supported Under Law.

Plaintiff contends that a minimal amount of confusion may be sufficient to demonstrate actual confusion. However, the cases cited by Plaintiff in support of this position do not align with the case at bar. It is not the amount of confusion that matters, it is the nature of the alleged confusion.

The cases cited by Plaintiff relate to: 1) nearly identical marks being used with the same goods (*Playnation Play Sys. v.Velex Corp.*, 924 F.3d 1159 (11th Cir. 2019)); 2) bad faith intent to harm a famous mark (*Coca-Cola Co. v. Purdy*, 382 F.3d 774, 784, (8th Cir. 2004)); and 3) significant confusion in which banking customers *took commercial action* based on confusion, including direct debits, cash withdraws, mortgage payoff checks, and other instances of

6

consumers acting on confusion (*Winchester Federal Savings Bank v. Winchester Bank, Inc.*, 359 F. Supp. 2d 561, 570 (E.D. Ky. 2004)).

The alleged confusion here is distinguishable. Confusion that the Lanham Act seeks to prevent is that which "sway[s] consumer purchases." McCarthy on Trademarks and Unfair Competition § 23:13 (5th ed.), *citing Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc.*, 851 F.3d 440, 458 (5th Cir. 2017) "[T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally." *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576 (2d Cir.1991), citing Restatement Third of Unfair Competition § 20.

Plaintiff's alleged instances of confusion are minimal considering that Defendants used various EMERSON CREEK marks for over 17 years, all with Plaintiff's consent. Moreover, there is no evidence demonstrating that the alleged confusion is anything more than instances of general confusion. Even if the alleged confusion raised by Plaintiff amounts to actual confusion under law, the extent of confusion and the effect of that confusion should be considered. *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 44 U.S.P.Q.2d 1921 (4th Cir. 1997). There has been no actual confusion under the Lanham Act, nor is there any evidence of any effect on Plaintiff resulting from any alleged confusion.

## CONCLUSION

For the reasons set forth above and in Defendants Memorandum in support of their Motion for Summary Judgment, Defendants respectfully request that the Court grant their Motion for Summary Judgment in its entirety.

        Respectfully submitted,

        LAUBSCHER & LAUBSCHER, PC


        _____/leljr/_____
        Lawrence E. Laubscher Jr.
        VSB No. 18680
        llaubscher@laubscherlaw.com
        1160 Spa Road, Suite 2B
        Annapolis, MD  21403
        (410) 280-6608 (Tel)
        (410) 280-6758 (Fax)

        Law Offices of McLaughlin & Associates, P.C.

        _____/ksm/_____
        Kenneth S. McLaughlin, Jr.
        IARDC No. 6229828
        1 E. Benton Street, Suite 301
        Aurora, IL 60505
        (630) 230-8434
        (630) 230-8435 fax
        kmclaughlin@ma-lawpc.com

        *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 6, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                                                                /leljr/
                                                          Lawrence E. Laubscher, Jr.
                                                          Attorney for Defendants