IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| EMERSON CREEK POTTERY INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COUNTRYVIEW POTTERY CO., )<br>EMERSON CREEK EVENTS, INC., )<br>CHRISTINA DEMIDUK, and )<br>DAVID DEMIDUK )<br>)<br>Defendants. ) | Case No.: 6:20-CV-0054-NKM |

## DEFENDANTS RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION IN LIMINE AND/OR SPOLIATION INFERENCES

Defendants Countryview Pottery Co., Emerson Creek Events Inc., Christina Demiduk, and David Demiduk, through counsel, file this Response in Opposition to Plaintiff's Motion in Limine and/or Spoliation Inferences. For the reasons set forth below, Defendants respectfully request the Court deny Plaintiff's motion in its entirety and award Defendants reasonable attorneys' fees and costs.

## INTRODUCTION

Plaintiff contends that Defendants lost documents that are relevant to the pending action and that the loss of documents amounts to spoliation which requires an evidentiary remedy in favor of Plaintiff. As detailed below, the facts alleged throughout Plaintiff's memorandum do not demonstrate spoliation. The facts are more appropriate for arguments in support of a motion to compel. Indeed, Plaintiff had its bite of the apple with its motion to compel in connection with

1

Defendants' document production which was fully briefed, argued and denied by Judge Ballou. ECF 61.

Plaintiff contends that documents produced by Defendant are not a "mirror image" to documents produced by a third party, and thus the only possible conclusion that could be inferred from this is that Defendants lost documents. This is not supported by the facts or logic. In fact, the more reasonable conclusion, as discussed in detail below, is that Defendants believed certain documents were not relevant or were privileged, and thus Defendants did not provide those documents to Plaintiff.

Again, the more appropriate action for the facts detailed throughout Plaintiff's memorandum would be a motion to compel. If that motion were found in favor of Plaintiff and Defendants subsequently could not produce documents, then spoliation might be applicable. However, plaintiff cannot presume spoliation simply because it believes there should have been more documents that resulted from Defendants' production.

Page 12 of Plaintiff's memorandum in support of spoliation summarizes the main reasoning for alleging spoliation: "[a]fter a de-duplication scan performed in the electronic discovery platform Relativity, [Defendants'] Production consisted of 1,181 documents. As counsel for ECP reviewed the Production, certain patterns could easily be detected, *establishing that responsive documents had not been produced.*" (Emphasis added). The proper action to a non-responsive production of discovery is a motion to compel, not the present motion alleging spoliation. This should have been evident to Plaintiff, and in fact, because Plaintiff should have known that the facts in its memorandum support a motion to compel and not a motion for spoliation, the pending motion should have never been brought. As the motion was brought in

2

bad faith, Defendants request that the court deny Plaintiff's motion in its entirety and award Defendants attorneys' fees and costs.

Defendants' statement of Relevant Facts and Procedural Status impugns the integrity of Defendants' counsel, Kenneth S. McLaughlin, Jr. In response, Mr. McLaughlin submits herewith his Affidavit ("McLaughlin Affidavit") and a supporting Affidavit of Defendant David Demiduk ("Demiduk Affidavit"). Significant portions of the McLaughlin Affidavit are reproduced below:

5. I informed Plaintiff's attorney during and after the depositions of Demiduk and Domanus that Defendants would work with Winkler Design to retrieve relevant emails, mailers, customer intake, and the like. However, I continued to object to the scope of Plaintiff's requests beyond pottery-related discovery.

6. Sometime prior to October 29, 2021, Winkler Design released all electronic data it had regarding Defendants to Plaintiff's counsel, without in any way culling what Defendants might consider irrelevant or confidential information. In fact, none of Defendants' attorneys were shown what was produced by Winkler Design until it was produced to Defendants' attorneys. This data production amounted to some 18,000 pages, which was produced to me for the first time on October 29, 2021.

7. In the meantime, on November 11, 2021, Defendants produced what emails it had access to, as referenced by Plaintiff's counsel in its motion. These emails related primarily to settlement discussions and attempts to resolve the issues between the parties but were nonetheless produced.

8. Throughout November 2021, Defendants worked with Domanus to access the emails, keeping me apprised of their progress. Because Winkler Design controlled the emails, website, mailers, and customer intake for Defendants, I believed that any emails produced by

Defendants would be duplicative of and a subset of those produced by Winkler Design. Nonetheless, Defendants in good faith continued efforts to retrieve the emails.

9. As set forth in the response to motion to compel, I made efforts to schedule a "meet and confer" to determine what additional emails and other data Plaintiff's felt was missing.

10. As set forth in the response to motion to compel, instead of participating in a "meet and confer," Plaintiff's counsel unilaterally set a discovery conference with Judge Ballou.

11. Sometime in the first week of December 2021, Defendants, with the assistance of Domanus, were ultimately able to access the emails.

12. On December 6, 2021, Demiduk forwarded to me a dozen emails, in which were embedded zip files and emails with attachments for all emails he could find based on a search of Emerson Creek Pottery, including searches for: Jim Leavitt, Emersoncreekpottery.com, Bedford Va., Lindsay Winkler, and Jonathan Domanus. The search terms were identified in an attorney-client privileged communication which was inadvertently included in the production and upon which Plaintiff's counsel is basing its motion in limine.

13. The emails were in .eml format, which is used by Gmail. In my office, I use Microsoft Exchange, so I had to download a program to convert them to .msg format, which is read by Microsoft Exchange. In the process of converting the emails, the program gave the files a number (i.e., 1, 2, 3, etc.) instead of their original subject line name. Therefore, it was not possible for me to quickly review the emails but instead I had to individually review them.

14. On December 8, 2021, I informed Judge Ballou and Plaintiff's counsel that Defendants had retrieved approximately 3,000 emails but that I had to review them prior to production.

15. On December 8, 2021, I sent an email to Plaintiff's counsel informing them that:

As discussed before, your discovery did not request emails, but nonetheless, <u>they were not deleted.</u> As explained, the migration of emails has caused its share of technical issues in retrieving what otherwise should have been a relatively simple task. Through some significant efforts, our clients were able to retrieve the last few years of emails. <u>I have a few thousand, but many are not relevant to this litigation. I am working on culling the relevant emails and saving them as PDFs so they can be Bates stamped.</u> My goal is to have these produced tomorrow. While I do not believe they necessarily help your cause, they will nonetheless be produced. (Emphasis added)

16. By agreement, the deadline for a motion to compel was extended to December 15, 2021.

17. For the next two days, I reviewed all 3,000 emails. Originally, I tried to rename them, but due to time constraints, by around the 400th email, I had to simply keep the number assigned. I also initially attempted to keep email strings so as to not produce duplicative emails, but again due to time constraints, only did this for the first few hundred. Nonetheless, there are some produced emails that are strings rather than the individual emails. I also removed emails that I deemed irrelevant to the issues in this lawsuit, which I informed Plaintiff's counsel by email (see below).

18. On December 10, 2021, I produced over 1,000 emails and documents to Plaintiff's counsel. These documents were uploaded for a period of several hours to Plaintiff's counsel's Dropbox. Plaintiff's counsel was informed that a few may not have properly uploaded. I was not able to monitor what Plaintiff's counsel received on their end. Due to time constraints, I produced them in their native format. I emailed Plaintiff's counsel as follows:

> I have reviewed a little over 2,700 emails and have culled certain emails for production. Unfortunately, due to the time of day, I won't be able to convert them to PDFs and redact them, as planned, by end of day.
>
> I am willing to provide them as emails in .msg format, with the express understanding that they are to all be received Attorney's Eyes Only. The basis is that many of these documents contain internal emails related to marketing. Further, some of the documents include confidential and proprietary customer

5

information. <u>These documents are being produced subject to our prior and continuing assertion that any documents outside of pottery or pottery-related sales are irrelevant. These include but are not limited to any documents related to the restaurant, weddings, bridal showers, vintage market, wine and yoga, and non-ceramic or pottery sales.</u>

<u>Emails which contain usernames and/or passwords, generic confirmation of email backup, and generic error messages have not been produced.</u>

<u>Emails for sales of wine and yoga, vintage market, weddings, and bridal showers have not been produced, as they are irrelevant and do not involve pottery.</u> Emails related to marketing of those events and related to inquiries of the location for a wedding have been produced, notwithstanding this objection but without prejudice to our objection that they are irrelevant.

I have spoken with Ashley Schmitz, and she is going to send a link for a Dropbox for the attorneys, which I will deposit these into. I will then convert these to Bates stamped PDF files next week.

<u>Kindly confirm this email and your agreement to preserve these Attorney's Eyes Only, subject to further court order.</u>

19. Unbeknownst to me, I forwarded the last email from Demiduk to me, which has been identified by Plaintiff's counsel. This email contained the last set of documents and contained information about the search, which was intended to be conveyed, but included attorney-client communications between Demiduk and me which were inadvertently not redacted. This was first revealed to me by Plaintiff's counsel on December 28, 2021, 18 days after the production, as follows:

> The attached email was included as part of the production on December 10. This email clearly confirms the limited scope of the searches conducted by Defendants, the lack of requisite preservation of emails, and contradicts the position taken in your opposition to our Motion to Compel. Accordingly, I would ask that you withdraw your opposition to our Motion to Compel with respect to emails and that you immediately undertake to conduct an appropriate search, that includes the email accounts for the employees who were/are responsible for social media and marketing efforts and include search terms likely to lead to responsive emails. Please note that this includes internal communications by and between employees of Defendants. As Ken is no doubt aware, since he reviewed all of the emails provided by the Defendants, there are internal communications we do not have, but know exist, because Defendants produced the iterations of them that ended up being

forwarded to Lindsey Winkler (and this does not account for all the other internal communications that obviously existed but never ended up being forwarded to Ms. Winkler). I also ask that you search for and produce the additional internal marketing documents referenced during the deposition of Ms. Winkler.

20. On December 28, 2021, I emailed Plaintiff's counsel, as follows:

<u>It appears that an attorney-client privileged communication was inadvertently included. I am not obligated to divulge attorney-client communications, but I can tell you nothing was deleted and everything has been produced, including the marketing materials themselves (in fact beyond the scope of the request itself).</u> You should withdraw your motion to compel. <u>At worst, the emails weren't printed; they weren't destroyed as you can see from the extensive production from Lindsay Winkler and my own 5 days before you filed your motion.</u> (Emphasis added.)

21. Thus, I told Plaintiff's counsel that I inadvertently produced an attorney-client communication and intended to preserve the privilege.

22. The parties fully briefed the motion to compel, which included Plaintiff's counsel's contention that additional documents should be produced, which motion to compel was denied by Judge Ballou as untimely.

23. Given the ruling on the motion to compel, no further work was done on the discovery production, the issue now being resolved by Judge Ballou.

24. In the course of my representation of Defendants, I informed them to provide me any relevant documents related to their and customer dealings with Emerson Creek Pottery and have responded fully to the written discovery requests. I informed them that they should produce documentation and retain relevant documentation. I did not instruct them to delete emails or other marketing materials. These instructions are included in attorney-client communications and also in verbal discussions.

25. Chris and Dave Demiduk have informed me that they did not delete any emails or communications but simply temporarily lost access during the Gmail migration. Their frustration was that they wished they had printed them out, not that they were deleted.

## ARGUMENT

Plaintiff has no evidence of spoliation. To the best of Defendants' knowledge, they have not lost documents relevant to this action let alone caused spoliation. Plaintiff's entire motion related to spoliation is based on the following: (1) Defendant David Demiduk stated in his deposition that he thought old emails had been lost[1]; (2) Once those emails were located, the documents provided to Plaintiff by Defendants were not a "mirror image" to the emails provided by third parties Lindsey Winkler and Jonathan Domanus; and (3) Defendants have stated that they have provided "everything" to Plaintiff. From this set of facts, without anything further, Plaintiff filed its spoliation motion contending that: (1) emails were in fact lost; (2) that loss was due to Defendants own actions; and (3) the allegedly lost emails could not be recovered. As discussed below, every one of these allegations is based on conjecture.

*I. Discrepancies between documents provided by one party compared to documents provided by another party does not equate to spoliation.*

Under standard discovery practice, following a request by one party, the other party is required to produce any nonprivileged, relevant documents. Defendant did this throughout the discovery process. As Plaintiff notes in its memorandum, Defendants' counsel has stated multiple times that Defendants have produced "everything". This is true. Defendant has produced everything in its possession that it believes to be relevant and not privileged. During discovery, Defendants continually informed Plaintiff that it believed communications related to

---

[1] The emails were in fact not lost as stated by third party Jonathan Domanus during his deposition and noted in Plaintiff's memorandum at pages 11 and 12. Plaintiff knew this. Defendant David Demiduk's previous belief that they were lost has no bearing on whether they actually were lost.

8

pottery were relevant, and that communications related to sales of wine and yoga, vintage market, weddings, and bridal showers were not relevant and thus not produced. (McLaughlin Affidavit). If at any time during discovery, Plaintiff believed that Defendants' production was not fully responsive to Plaintiff's discovery requests, Plaintiff could have filed a motion to compel. Yet Plaintiff failed to do so, waiting until after the discovery period closed to file its motion to compel which Judge Ballou denied as set forth above.

Plaintiff, however, construes counsel's statements regarding Defendants' production as meaning Defendants have literally produced everything in their possession, regardless of relevance or privilege. From there, Plaintiff compares document production from Winkler and Domanus to document production from Defendants, notes there are discrepancies, and posits that, because Defendants have produced "everything", the only logical conclusion is that Defendants lost documents amounting to spoliation. This strains credulity.

The fact is Winkler and Domanus produced every document they have in connection with their relationship with Defendants and Defendants selected the documents they believed they were required to provide pursuant to the rules of discovery and evidence. Winkler and Domanus are not parties to this suit and are not attorneys. They had no need to review their documents for relevance and confidentiality prior to providing them to Plaintiff, nor do they have the legal training to know what must be provided. Defendants, on the other hand are in the middle of litigation with Plaintiff and are represented by counsel. As a consequence, it is not surprising that the productions from Winkler and Domanus on the one hand and Defendants on the other hand are not mirror images.

Plaintiff states that Defendant David Demiduk's comments are the smoking gun in all of this. Mr. Demiduk stated during his deposition that he believed emails had been lost during

9

migration of emails from one account to another. He also stated that he did not know that Defendants were supposed to maintain documents, and that "if we had known we should print all email up to now we simply would have done that." Plaintiff contends that, in light of Defendant David Demiduk's comments and the discrepancies between the Winkler/Domanus documents and Defendants produced documents there must be lost emails and spoliation. This argument does not hold water.

First, Plaintiff's own memorandum contradicts its contention that emails had been lost. During Plaintiff's deposition of Jonathan Domanus, a third-party contractor who assisted Defendants with administration of their emails including migration from Defendants old email account to its new account, Mr. Domanus stated that all of the emails "had copied over successfully." (Plaintiff's Memorandum page. 12). David Demiduk thought emails had been lost, but this was not correct. (Demiduk Affidavit). It is irrelevant if Defendant David Demiduk previously thought emails had been lost during migration to Defendants' new email account. As stated by Jonathan Domanus and confirmed by Defendant Demiduk, the emails were transferred during the migration and were ultimately recovered by Defendants.

As to David Demiduk's deposition testimony that he was unaware of the need to preserve emails, that also has no relevance to actual preservation of emails. One of the benefits of modern-day electronic mail is that it is almost never lost unless a person takes specific action to permanently remove it, which is not the case here. The emails in question during Mr. Demiduk's deposition were previously located and reviewed, and relevant emails were provided to Plaintiff. No evidence was affected by Mr. Demiduk's being unaware of the need to preserve evidence.

The actual facts presently relevant are as follows: (1) Defendants had difficulty locating old emails after migrating from one email account to another; (2) Defendants' third-party email

10

administration professional worked with Defendants to locate the emails, which, according to this professional "...had copied over successfully"; and (3) Defendants ultimately located the emails, reviewed them and produced discovery related to the emails. (Demiduk and McLaughlin Affidavits). Plaintiff has not produced evidence to the contrary.

II.  *Had Defendants Lost Documents as Plaintiff Contends, which is not the case, the process by which those documents would have been lost does not amount to spoliation.*

Plaintiff contends that Defendants lost relevant emails during migration of its emails from one email account to another. As laid out above, this is not the case. However, even if Defendants had lost emails through its email migration, that would not lead to spoliation.

Spoliation does not result from lost documents alone. For spoliation to be found, Defendants had to have known the allegedly lost documents were relevant to the case and must have lost them through willful actions. *See Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004). Also, courts often conclude that documents that are lost and/or deleted due to standard business practice, such as due to a business' automatic deletion protocol. Defendants' actions in migrating from one email provider to another is akin to this type of business practice.

As noted in Plaintiff's memorandum in support of its motion, David Demiduk stated during his deposition that he believed emails were lost during migration from one email account to another. This migration of accounts was from the "ecreekpotteryandtearoom.com" account to Defendants new "emersoncreek.com" account. Defendants changed from the former web domain to the latter due to the ongoing present litigation in an attempt to mitigate Plaintiff's issues with the Defendants' use of "pottery" with its branding. Just as courts have found that automatic deletion control is a standard business practice that typically does not amount to spoliation, Defendants' migration from one email account to another does not amount to spoliation. As Mr.

11

Demiduk has affirmed, neither he nor anyone for Defendants have deleted emails. (Demiduk Affidavit).

Plaintiff further argues that Defendants' lack of printing the documents shows unreasonableness. Defendants had no responsibility to print any documents. As stated in Plaintiff's memorandum, printing is one way to preserve documents. Others include exporting them to an external hard drive or contacting the internet provider to obtain them. Defendants contacted their email administration professional to obtain the emails which were in fact obtained. Defendants' normal course of business not to print their emails has no bearing on reasonableness.

Again, Defendants are not aware of any lost emails related to the pending case. But had there been lost emails, the way in which those emails would have been lost would not constitute willful loss or disposition of documents that Defendants knew to be relevant to the pending action, as required for spoliation. *See Turner v. United States,* 736 F.3d 274, 282 (4th Cir. 2013). Through reasonable, standard business practices, Defendants migrated from one email account to another. Had there been any lost documents, those documents would have been lost due to no fault of Defendants, and at worst due to Defendants' inattentiveness, which is not sufficient to find spoliation. *Id.*

Thus, though Defendants are not aware of any lost documents, any such documents lost as described by Plaintiff do not amount to spoliation.

III. *Had Plaintiff proven that loss of documents occurred due to Defendant's lack of reasonableness, which it has not, Plaintiff has not demonstrated that the allegedly lost documents could not be restored through further discovery.*

Plaintiff has not presented any evidence to demonstrate that, through discovery, relevant documents cannot be produced. Again, Plaintiff relies on Defendants' representations that

12

everything has been produced. Defendants' use of "everything" relates to those documents it believes to be relevant. From the outset, counsel for Defendants informed counsel for Plaintiff that certain documents would not be produced because they are believed to either not be relevant or be privileged. (McLaughlin Affidavit). In response to Plaintiff's failed motion to compel, Defendants reiterated that they have produced everything they believe they are required to produce under the rules of discovery. These facts do not lead to the non-existence of other documents as Plaintiff contends. Owing to the denial of its motion to compel, Plaintiff does not know what, if any, documents have been lost and cannot be recovered. That is Plaintiff's lack of diligence in bringing its motion to compel now works to Plaintiff's alleged detriment. It should not now be placated with the relief sought pursuant to the present motion.

IV. *Had Defendants lost documents amounting to spoliation, which they have not, Plaintiff's proposed remedy would improperly prejudice Defendants.*

As Plaintiff notes in its memorandum, there are two forms of remedy that result from a finding of spoliation. The first, which is to be applied when there is a finding of spoliation, the documents found to be lost cannot be restored through additional discovery, and the party who caused the spoliation "failed to take reasonable steps to preserve" the documents, is that the Court "may order measures no greater than necessary to cure the prejudice." Federal Rules of Civil Procedure Rule 37(e). The stricter remedy, which is to be applied when the above applies and where the party who caused the spoliation did so with *intent to deprive the other party of the documents*, is that the Court may: (1) presume the lost information was unfavorable to the party; (2) instruct the jury that it may or must presume information was unfavorable to the party; or (3) dismiss the action or enter a default judgment. *Id.*

Plaintiff does not argue that Defendants lost documents intentionally, thus, if there were spoliation, the stricter remedy would not apply. (Plaintiff's Memorandum page 19). Plaintiff's

13

requested relief, however, though not directly one of the three explicit remedies for intentional spoliation, would have the effect of the first and second remedies. Plaintiff requests that the Court presume the lost information was unfavorable to Plaintiff and not allow Defendants to argue against Plaintiff's evidence, or lack thereof, related to Defendants' use of marks, actual confusion and intent. If this were the proper remedy, the Defendants would effectively be precluded from stating that Plaintiff has not met its burden of proof on these issues, which would have the same effect as would an instruction to the jury to presume that the documents would show Defendants' use, actual confusion, and intent. Even if spoliation were found, which Defendants vigorously deny, this remedy would not be equitable under the circumstances.

## CONCLUSION

Plaintiff has presented no evidence that demonstrates lost or destroyed emails, let alone sufficient evidence to meet the standards of spoliation. Plaintiff's allegations that Defendants' document production was incomplete would be proper for a motion to compel, not for spoliation inference. The pending motion is improper and not supported by the facts.

Accordingly, in light of the foregoing, Defendants respectfully request that the Court deny Plaintiff's untimely and baseless motion and award Defendants reasonable attorneys' fees and costs in having to respond thereto.

Respectfully submitted,

LAUBSCHER & LAUBSCHER, PC

_____/leljr/_____
Lawrence E. Laubscher Jr.
VSB No. 18680
llaubscher@laubscherlaw.com
1160 Spa Road, Suite 2B
Annapolis, MD 21403
(410) 280-6608 (Tel)
(410) 280-6758 (Fax)

Law Offices of McLaughlin & Associates, P.C.

\_\_\_\_\_/ksmjr/_____
Kenneth S. McLaughlin, Jr.
IARDC No. 6229828
1 E. Benton Street, Suite 301
Aurora, IL 60505
(630) 230-8434
(630) 230-8435 fax
kmclaughlin@ma-lawpc.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 11, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                /leljr/
                                        Lawrence E. Laubscher, Jr.
                                        Attorney for Defendants