# EXHIBIT A

1. INTRODUCTION

We are about to begin the trial of the case you heard about during the jury selection. Before the trial begins, I am going to give you instructions that will help you to understand what will be presented to you and how you should conduct yourself during the trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you. The party who sues is called the plaintiff. In this action, the plaintiff is Emerson Creek Pottery Inc.. The parties being sued are called the defendants. In this action, the defendants are Countryview Pottery Co., Emerson Creek Events, Inc., Christina Demiduk and David Demiduk.

You will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

When I "sustain" an objection, I am excluding that evidence from this trial for a good reason. When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

When I say "admitted into evidence" or "received in to evidence," this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else. In addition, you should not permit anyone to discuss the case in your presence.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers. It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible. You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

The lawyers are not allowed to speak with you during this case. When you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Sometimes, you may be excused from the courtroom during these discussions. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

3 Fed. Jury Prac. & Instr. § 101:01 (6th ed.)

2. ORDER OF TRIAL

The case will proceed as follows:

First, the lawyers for each side may make opening statements. What is said in the opening statements is not evidence but is simply an outline or summary to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.

After the opening statements, the plaintiff will present evidence in support of plaintiff's claims and the defendants' lawyer may cross-examine the witnesses. At the conclusion of the plaintiff's case, the defendants may introduce evidence and the plaintiff's lawyer may cross-examine the witnesses. The defendants are not required to introduce any evidence or to call any witnesses. If the defendants introduce evidence, the plaintiff may then present rebuttal evidence.

After the evidence is presented, the parties' lawyers make closing arguments explaining what they believe the evidence has shown. What is said in the closing arguments is not evidence. Finally, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

3 Fed. Jury Prac. & Instr. § 101:02 (6th ed.)

3.  CLAIMS AND DEFENSES

The positions of the parties can be summarized as follows:

Plaintiff claims that Defendants infringed Plaintiff's trademarks, competed unfairly with Plaintiff, and breached a contract, also referred to as a trademark licensing agreement, between Plaintiff and Defendant.

Defendant denies those claims and also contends that Plaintiff acquiesced to Defendants' use of trademarks, and Plaintiff and Defendants never entered into a trademark licensing agreement.

I will explain these terms.


3 Fed. Jury Prac. & Instr. § 101:03 (6th ed.)

4. PROVINCE OF JUDGE AND JURY

After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts. I must stress that you must accept the rules of law that I give you, whether or not you agree with them.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury. Such comments are only expressions of my opinion as to the facts. You may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.)

5.  JUROR CONDUCT

To ensure fairness, you must obey the following rules:

1. Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2. Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors. "Anyone else" includes members of your family and your friends. You may tell people you are a juror, but do not tell them anything else about the case.

3. Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended. If someone should try to talk to you about the case during the trial, please report it to me immediately.

4. During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5. Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

6. Do not do any research, such as checking dictionaries, or make any investigation about the case on your own.

7. Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

8. If you need to tell me something, simply give a signed note to the marshal/bailiff/clerk to give to me.

3 Fed. Jury Prac. & Instr. § 101:11 (6th ed.)

## 6. EVIDENCE IN THE CASE

The evidence in the case will consist of the following:

1. The sworn testimony of the witnesses, no matter who called a witness.
2. All exhibits received in evidence, regardless of who may have produced the exhibits.
3. All facts that may have been judicially noticed and that you must take as true for purposes of this case.

Depositions may also be received in evidence. Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions. In some cases, a deposition may be played for you on videotape. Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements and arguments of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact. A "stipulation" is an agreement between both sides that certain facts are true or that a person would have given certain testimony. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events. When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited to the statements of the witness. In other words, you are not limited solely to what you see and hear as the witnesses testified. You may draw from the facts that you find have been proved, such reasonable inferences or conclusions as you feel are justified in light of your experience.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

3 Fed. Jury Prac. & Instr. § 101:40 (6th ed.)

### 7. DIRECT AND CIRCUMSTANTIAL EVIDENCE

"Direct evidence" is direct proof of a fact, such as testimony by a witness about what the witness said or heard or did. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

3 Fed. Jury Prac. & Instr. § 101:42 (6th ed.)

## 8.  CREDIBILITY OF WITNESSES

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

3 Fed. Jury Prac. & Instr. § 101:43 (6th ed.)

9.  PREPONDERANCE OF THE EVIDENCE

Plaintiff has the burden in a civil action, such as this, to prove every essential element of plaintiff's claim by a preponderance of the evidence. If plaintiff should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence, you should find for defendant as to that claim.

The Defendants have the burden of establishing the essential elements of certain affirmative defenses. I will explain this later.

"Establish by a preponderance of the evidence" means evidence, which as a whole, shows that the fact sought to be proved is more probable than not. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

3 Fed. Jury Prac. & Instr. § 104:01 (6th ed.)

## 10. COURT RECESS

We are about to take our first recess. I want to remind you of the instructions I gave earlier. Until the trial is over, you are not to discuss this case with anyone, including other jurors, members of your family, people involved in the trial, or anyone else. You may not permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.

Do not read or listen to any news reports of the trial, including reports on the Internet. If a newspaper headline or news broadcast catches your attention, do not examine the article or watch or listen to the broadcast any further. The person who wrote or is reporting the story may not have listened to all the testimony, may be getting information from persons whom you will not see here in court under oath and subject to cross examination. The report may emphasize an unimportant point or may simply be wrong. You must base your verdict solely and exclusively on the evidence received in court during the trial.

Finally, you must keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors. If you need to speak with me about anything, simply give a signed note to the marshal/bailiff/clerk/law clerk to give to me.

3 Fed. Jury Prac. & Instr. § 102:01 (6th ed.)

## 11. MULTIPLE DEFENDANTS

Although there is more than one defendant in this action, it does not follow from that fact alone that if one defendant is liable to the plaintiff, all defendants are liable. Each defendant is entitled to a fair consideration of the evidence. No defendant is to be prejudiced should you find against the other defendants. Unless otherwise stated, all instructions I give you govern the case as to each defendant.

3 Fed. Jury Prac. & Instr. § 103:14 (6th ed.)

## 12. EXPERT WITNESS

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. There is an exception to this rule for "expert witnesses." An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses give state their opinions as to matters in which they profess to be expert and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

3 Fed. Jury Prac. & Instr. § 104:40 (6th ed.)

13. ELECTION OF FOREPERSON; DUTY TO DELIBERATE; COMMUNICATIONS WITH COURT; CAUTIONARY; UNANIMOUS VERDICT; VERDICT FORM

You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury and try to reach agreement.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with the other jurors, and listen to the views of the other jurors. Do not be afraid to change your opinions if the discussion persuades you that you should. But do not make a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember you should not tell anyone—including me—how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law I have given to you in these instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be—that is entirely for you to decide.

Finally, the verdict forms are simply the written notices of the decisions that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdicts, your foreperson will fill in the forms, sign and date them, and advise the marshal or bailiff that you are ready to return to the courtroom.


3 Fed. Jury Prac. & Instr. § 103:50 (6th ed.), 3 Fed. Jury Prac. & Instr. § 103:50 (6th ed.)

14. CONTRACT: TRADEMARK LICENSING AGREEMENT

ISSUES AND BURDEN OF PROOF

Your verdict must be based on the facts as you find them and on the law contained in all of these instructions.

The issues in this case are:

> (1) Was there a trademark licensing agreement between the parties?
> (2) If there was, did each of the Defendants breach it?

TRADEMARK LICENSING AGREEMENT

A trademark licensing agreement is an agreement, for consideration, between two or more parties. An agreement can be express or implied. An express agreement is an agreement, either written or oral, in which the terms are stated by the parties. An agreement may be implied from the circumstances and the conduct of the parties.

An express trademark licensing agreement arises when an offer is accepted.

An offer is a proposal of the terms on which a person will enter into an agreement if that proposal is accepted by the person to whom it is made.

Acceptance of an offer is a voluntary expression of assent to be bound by the terms of the offer.

For an express agreement to exist, the minds of the parties must have met on every material term of the alleged agreement. The agreement must be both complete and reasonably certain. It is complete if it includes all the essential terms. It is reasonably certain if all the essential terms are expressed in a clear and definite way. If these factors are not met, the parties did not enter into an express trademark licensing agreement.

For an implied trademark licensing agreement to exist, the circumstances and conduct of the parties must include:

> (1) Permission by Plaintiff for Defendant to use its trademark; and
> (2) Quality control by Plaintiff over the nature and quality of goods and services sold under the mark.

The quality control factor requires Plaintiff to both establish quality control standards regarding the goods and services and exercise quality control over Defendants' goods and services. Quality control cannot be found unless Plaintiff established quality control standards and exercised quality control. Plaintiff cannot rely on Defendants' own quality control standards. Decision-making authority over quality of Defendants' goods and services must have been established and exercised by Plaintiff.

Virginia Model Jury Instructions Nos. 45.000, 45.010, 45.020, 45.030, 45.070, 45.090, 45.170, 45.200, 45.210; *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991); *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 368 (2d Cir. 1959); *FreecycleSunnyvale v. Freecycle Network,* 626 F.3d 509, 519 (9th Cir. 2010); Restatement Third of Unfair Competition § 33 comment c (1995)

## 15. TRADEMARK INFRINGEMENT

Plaintiff claims that Defendants have infringed Plaintiff's EMERSON CREEK POTTERY and EMERSON CREEK trademarks by Defendants' use of EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS with Defendants' services.

A trademark or service mark is a word, symbol, or combination of words or symbols used by a person to identify his or her product or services, respectively, to distinguish his or her product or services from those manufactured, sold or rendered by others, and to indicate the source of his or her product or services, respectively.

The purpose of trademark law is to prevent confusion among consumers about the source of products or services and to permit trademark and service mark owners to show ownership of their products or services and control the reputation of their products or services.

Plaintiff claims that Defendants infringed Plaintiff's EMERSON CREEK POTTERY and EMERSON CREEK trademarks for its pottery by providing gift shop services, restaurant services and events services with the EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS service marks.

Defendants deny that Plaintiff owns the trademark EMERSON CREEK and that they have infringed Plaintiff's EMERSON CREEK POTTERY trademark. Defendants contend that Plaintiff acquiesced to Defendants' use of the EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS service marks, and that there is not a likelihood of confusion with Plaintiff's trademarks.


U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions; 15 U.S.C. 1114, 1125

16. TRADEMARK INFRINGEMENT—ELEMENTS

Plaintiff claims that Defendant infringed Plaintiff's EMERSON CREEK POTTERY trademark. To succeed on this claim, Plaintiff must prove the following by a preponderance of the evidence:

1. Plaintiff owns EMERSON CREEK POTTERY as a valid trademark;

2. Defendants used EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS with its services in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Defendants' services.

I will explain what I mean by these terms.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff. However, if Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.

Plaintiff also claims that Defendant infringed Plaintiff's EMERSON CREEK trademark. To succeed on this claim, Plaintiff must also prove the following things by a preponderance of the evidence:

1. Plaintiff owns EMERSON CREEK as a valid trademark;

2. Defendants used EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS with its services in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Defendants' services.

I will explain what I mean by these terms.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff. However, if Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.


Affirmative Defenses:

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's claim that Plaintiff Acquiesced to Defendants' use of EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS, and Defendants' claim that Plaintiff has abandoned its trademark. If you find that Defendants have proved these by a preponderance of the evidence, then you must find for Defendant.

I will explain what I mean by these terms.

U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions

17. OWNERSHIP AND PRIORITY

As I have told you, one of the things Plaintiff must prove to find infringement of its EMERSON CREEK mark is that Plaintiff owns EMERSON CREEK as a trademark.

Plaintiff owns EMERSON CREEK if Plaintiff used the term in a manner that allowed consumers to identify the terms with Plaintiff or its products before Defendants began to use EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS with its services.

If Plaintiff has proven this, then it has ownership and priority in the EMERSON CREEK mark.

U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions

18. ELEMENTS OF LIKELIHOOD OF CONFUSION

As I have told you, one of the things that Plaintiff must prove is that Defendants used EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS with its services in a manner that is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Defendants' services. Plaintiff must prove a likelihood of confusion among a significant number of people who use, or consider using, the services or similar services. In deciding this, you should consider the following:

(1) the distinctiveness of the senior mark; the degree to which purchasers or potential purchasers recognize Plaintiff's trademark as an indication of the origin of Plaintiff's products;

(2) the similarity of the two marks; whether the overall impression created by Defendants' service marks is similar to that created by Plaintiff's trademark in appearance, sound, and meaning;

(3) the similarity of the goods or services that the marks identify; whether Defendant sand Plaintiff use their trademarks/service marks on the same or related products or with the same or related services;

(4) the similarity of the facilities employed by the parties to transact their business; whether Plaintiff's and Defendant's products and services, respectively, are likely to be sold in the same or similar stores or outlets, or advertised in similar media;

(5) the similarity of the advertising used by the parties; whether Plaintiff's and Defendant's products and services, respectively, are likely to be advertised in similar media;

(6) the defendant's intent in adopting the same or similar mark; whether Defendants intended to pass off their services as that of Plaintiff, or intended to confuse consumers;

(7) actual confusion; whether Defendants' use of its service marks has led to instances of actual confusion among purchasers or potential purchasers about the source, origin, sponsorship, or approval of Defendants' services;

(8) the quality of the Defendants' products; and

(9) the sophistication of the consuming public; the degree of care that purchasers or potential purchasers are likely to exercise in buying or considering whether to buy the product or services. This may depend on the level of sophistication of potential buyers of the product or services and/or the cost of the product or services.

The weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion.

U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions; *Sara Lee Corp v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996)

19. AFFIRMATIVE DEFENSE: ACQUIESCENCE

The owner of a trademark cannot exclude others from using the trademark if the owner has acquiesced to such use.

Defendants contend that Plaintiff has acquiesced to the use of EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS.

Acquiescence in trademark law occurs when the owner of a trademark expressly or impliedly consents to the infringement. It arises through affirmative actions of the trademark owner, resulting in an implied consent to use the mark. The owner of a trademark acquiesces to use of its trademark when:

(1) the owner actively represented that it would not assert a right or claim;
(2) the delay between the representation and the assertion of the right or claim was not excusable; and
(3) the delay caused Defendant undue prejudice.

The first two elements can be implied in a business relationship in which the owner of the trademark works directly with the defendant for an extended period of time without asserting rights over the trademark.

Undue prejudice can be found when a defendant reasonably relies on the owner of the mark's actions.


*What-A-Burger Of Virginia, Inc. v. Whataburger, Inc. Of Corpus Christi, Texas*, 357 F.3d 441, 452 (4th Cir. 2004); *Sara Lee Corp v. Kayser-Roth Corp.*, 81 F.3d 455, 463-64 (4th Cir. 1996); *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325 (11th Cir. 1996)

20. AFFIRMATIVE DEFENSE: NAKED LICENSING

The owner of a trademark in a trademark licensing agreement is required to exercise adequate control over the nature and quality of the goods or services of a licensee, and exercise adequate control over the licensee's use of the trademark owner's mark. A trademark owner's failure to adequately exercise control will result in the owner's loss of rights in the mark.

*Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991); *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 368 (2d Cir. 1959); *FreecycleSunnyvale v. Freecycle Network,* 626 F.3d 509, 519 (9th Cir. 2010); Restatement Third of Unfair Competition § 33 comment c (1995)

21. UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

Plaintiff claims that Defendants committed unfair competition and false designation of origin by Defendants' use of EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS service marks with Defendants' services.

A trademark or service mark is a word, symbol, or combination of words or symbols used by a person to identify his product or services, respectively, to distinguish his product or services from those manufactured, sold or rendered by others, and to indicate the source of his product or services, respectively.

The purpose of unfair competition and false designation of origin law is to prevent confusion among consumers about the source of products or services and to permit trademark and service mark owners to show ownership of their products or services and control the reputation of their products or services.

If you find that Plaintiff has proved each element of trademark infringement by a preponderance of the evidence, then you should also find for Plaintiff on unfair competition and false designation of origin. However, if Plaintiff did not prove each element of trademark infringement by a preponderance of the evidence, then you should find for Defendant on unfair competition and false designation of origin.

Affirmative Defenses:

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's claim that Plaintiff Acquiesced to Defendants' use of EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS, and Defendants' claim that Plaintiff has abandoned its trademark. If you find that Defendant has proved either of these defenses by a preponderance of the evidence, then you must find for Defendant.


U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions; 15 U.S.C. 1125

## 22. COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff claims that Defendants committed trademark infringement and unfair competition by Defendants' use of EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS service marks with Defendants' services.

A trademark or service mark is a word, symbol, or combination of words or symbols used by a person to identify his product or services, respectively, to distinguish his product or services from those manufactured, sold or rendered by others, and to indicate the source of his product or services, respectively.

The purpose of trademark and unfair competition law is to prevent confusion among consumers about the source of products or services and to permit trademark and service mark owners to show ownership of their products or services and control the reputation of their products or services.

If you find that Plaintiff has proved each element of trademark infringement by a preponderance of the evidence, then you should also find for Plaintiff on common law trademark infringement and unfair competition. However, if Plaintiff did not prove each element of trademark infringement by a preponderance of the evidence, then you should find for Defendant on common law trademark infringement and unfair competition.

Affirmative Defenses:

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's claim that Plaintiff Acquiesced to Defendants' use of EMERSON CREEK POTTERY, EMERSON CREEK POTTERY & TEAROOM, EMERSON CREEK and EMERSON CREEK EVENTS, and Defendants' claim that Plaintiff has abandoned its trademark. If you find that Defendant has proved either of these defenses by a preponderance of the evidence, then you must find for Defendant.


U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions;

23. ACTUAL DAMAGES

To recover damages to Plaintiff, Plaintiff must prove two things by a preponderance of the evidence:

1. Defendants' infringement caused actual confusion among consumers; and

2. As a result, Plaintiff sustained injury.

If you find that Plaintiff has proved these things, then you must consider what amount of money to award to Plaintiff as damages, if any.

Damages consist of the amount of money required to compensate Plaintiff for the injury caused by Defendants' infringement. Plaintiff must prove its damages by a preponderance of the evidence.

You may consider the following types of damages:

• Plaintiff's lost profits on lost sales, if any, which consists of the revenue Plaintiff would have earned but for Defendants' infringement, less the expenses Plaintiff would have sustained in earning those revenues.

• Loss of royalties. A royalty is a payment for the right to use a trademark. In determining lost royalties, you should determine the royalty that Plaintiff and Defendant would have agreed upon if they had negotiated the terms of a royalty before Defendants' infringement.

• Loss of goodwill. Goodwill is consumer recognition or drawing power of a trademark. In determining loss of goodwill, you should compare the value of Plaintiff's goodwill before the infringement with the value of Plaintiff's goodwill after the infringement.

• Cost of corrective advertising. This is the amount spent by Plaintiff to counteract the effects of Defendants' infringement and the amount necessary to dispel any public confusion that lingers after Defendant's infringement has stopped.

U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions

24. DEFENDANTS' PROFITS

In addition to Plaintiff's damages, Plaintiff may recover the profits Defendant gained from the trademark infringement. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money Defendants received due to its use of the trademark.

Plaintiff is required only to prove Defendant's gross revenue. Defendant is required to prove any expenses that it argues should be deducted in determining its profits. Plaintiff is entitled to recover Defendant's total profits from its use of the trademark, unless Defendant proves that a portion of the profit is due to factors other than use of the trademark.


U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions

25. INTENTIONAL INFRINGEMENT

If you find that Defendants infringed Plaintiff's trademark, you must also determine whether Plaintiff has proven that, at the time Defendants used its service marks Defendants knew that they were infringing Plaintiff's trademark.

U.S. Court of Appeals for the Seventh Circuit Pattern Civil Jury Instructions