# EXHIBIT C

Trial Transcript Day 3 Excerpts

1

```
          Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
                              6:20cv54, 2/24/2022

                           UNITED STATES DISTRICT COURT
                       FOR THE WESTERN DISTRICT OF VIRGINIA
                                 LYNCHBURG DIVISION

****************************************************************

EMERSON CREEK POTTERY, INC.   CIVIL CASE NO.:  6:20CV54
                              FEBRUARY 24, 2022, 9:37 A.M.
                              JURY TRIAL, DAY 3
        Plaintiff,
vs.

EMERSON CREEK EVENTS, INC.,   Before:
ET AL.,                       HONORABLE NORMAN K. MOON
                              UNITED STATES DISTRICT JUDGE
        Defendants.           WESTERN DISTRICT OF VIRGINIA

****************************************************************
APPEARANCES:

For the Plaintiff:       HENRY IRVING WILLETT, III, ESQUIRE
                         Christian and Barton, LLP
                         909 East Main Street, Suite 1200
                         Richmond, VA   23219

                         GARFIELD BERNARD GOODRUM, ESQUIRE
                         Garfield Goodrum, Design Law
                         90 Canal Street, 4th Floor
                         Boston, MA   02114

For the Defendants:      KENNETH S. MCLAUGHLIN, JR., ESQUIRE
                         Law Offices of McLaughlin &
                         Associates, P.C.
                         1 E. Benton Street, Suite 301
                         Aurora, IL   60505

                         LAWRENCE E. LAUBSCHER, JR., ESQUIRE
                         Laubscher & Laubscher, PC
                         1160 Spa Road, Suite 2B
                         Annapolis, MD   21403


Court Reporter:    Lisa M. Blair, RPR, RMR, CRR, FOCR
                   255 West Main Street, Suite 304
                   Charlottesville, Virginia   22902
                   434.296.9284

         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
TRANSCRIPT PRODUCED BY COMPUTER.
```

1  "pottery and tearoom," followed by "pottery and tearoom wedding
2  venues."
3  Q    To be really clear about this, these aren't the results.
4  This is what what's auto filling at this point.  This is what
5  you're seeing as you type it in in real time, "wedding" is the
6  first thing that comes up, then nothing, then "pottery," then
7  "pottery and tearoom," then "pottery and tearoom wedding
8  venues"?
9  A    Just like all algorithmic understandings for search,
10 Pinterest's algorithm is determining based on the keyword terms
11 this user typed in, that this is the content that's going to be
12 most relevant to them on the platform before they even click
13 return.
14 Q    I'm going to switch gears a little bit and talk for a
15 second about -- well, let me ask you this.  We don't have a
16 slide of this.  We've seen something presented on Ms. Demiduk
17 on LinkedIn.  Does LinkedIn factor into searching or consumers
18 looking at LinkedIn, or is that just a business thing?
19 A    No, it's 100 percent -- it plays into reputation because
20 it also can populate on Google.
21 Q    And consumers use LinkedIn as well as businesses?
22 A    Correct.
23 Q    Now, let's talk for a second about, you talked about
24 Google.  So we've sort of done what I call the social media
25 side of this.  Let's talk about the search side of this.  What

Belisle - Direct

1  did you determine from your analysis on the search side?
2  A    We determined that there has been so much activity on the
3  part of -- there's been so much activity relative to the search
4  term "Emerson Creek" that there is significant -- there's been
5  a significant presence in search engine results that have
6  resulted in muddying the waters.  There's significant
7  confusion, just by the algorithms, if not then translates to
8  users, for the fact that there is not one entity that shows up
9  for the short tail search term, right?  So here's -- we're
10 pulling up the results now.  This is just on the next page.
11 Q    The search is the same search, "Emerson Creek"?
12 A    Yep, you search "Emerson Creek" in Google, you get these
13 results.  If you search a little further -- this was done on a
14 mobile phone so it's a little crunched.
15 Q    Let me ask you this:  As you're performing this search on
16 Google, does it matter where you are?
17 A    Yes, it does.  There are over 200 factors in Google's
18 algorithm.  So just by solving for one particular factor
19 doesn't necessarily heavily influence the results.  There's a
20 definite hierarchy to all those factors.  But there's over 200
21 factors.  One of those factors is your geography.  Hence,
22 anyone hops on their phone or computer, wherever they're based,
23 Google recognizes that as an IP address and recognizes your
24 location and might serve you local results based on what you're
25 searching for.

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/24/2022

1   gentlemen of the jury, we'll take a lunch recess now and I'll
2   ask you to come back at 1:45.
3   **(Jury out, 12:40 p.m.)**
4               (Recess.)
5               THE COURT:  Before the jury comes back, have you
6   finished with your witnesses?
7               MR. WILLETT:  Yes, Your Honor.  We've finished our
8   witnesses.  We have a couple things we were going to stipulate
9   to for the record and then there's one other issue.  There's a
10  witness, Mr. Wehrli, who we are not going to call in our case
11  in chief.  He may be called by the defendants, but we may end
12  up having to take him out of order at some point.  We'll work
13  around that just so he can be on Zoom and we don't slow down
14  the process.  But we are done with our witness presentation.
15              THE COURT:  Okay.
16              MR. WILLETT:  Do you want us to take that up -- there
17  are a few exhibits I need to run through with Carmen, that
18  those have been stipulated to that those can be admitted.  The
19  other thing we would ask about, there are some discovery
20  designations, things we had designated 30 days out that we
21  wanted to have part of the record.
22              THE COURT:  Anything else -- you want to show it to
23  the jury, right?
24              MR. WILLETT:  Yes.  Yes.
25              MR. LAUBSCHER:  Your Honor, since the plaintiffs have

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/24/2022

1  now rested their case, we would like to file a motion for a
2  directed verdict.
3         THE COURT:  All right.
4         MR. LAUBSCHER:  So it would be on the issues of
5  breach of contract, we don't think they've met their burden of
6  proof with regard to the existence of a contract.  We certainly
7  don't think they've met their burden of proof that there was a
8  license agreement that was agreed to by the parties.  So on
9  these breach of contract and the licensing claims, we think
10 that judgment should be in our favor.
11        Moreover, as a result of Mr. Leavitt's testimony, we
12 think that the acquiescence that we have asserted as a defense
13 has been established.  And as you know, that's an equity relief
14 which you can grant without regard to the jury.
15        So again, we don't think there's been proof of breach
16 of contract.  We don't think that there has been -- we think
17 there's acquiescence.  And quite honestly, on the trademark
18 infringement claim, we don't think they've met their burden on
19 that as well.
20        THE COURT:  All right.  If you'll respond.
21        MR. WILLETT:  In response, Judge, we have met our
22 burden on all of those issues.  With respect to breach of
23 contract, we've got the testimony of Mr. Leavitt as to the
24 handshake agreement that was reached between the parties.  As
25 the Court knows, that would qualify both for the contract as

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/24/2022

1  well as for the license.

2          We've also argued that in the event it was determined
3  that there was not a contract, that there is an implied license
4  as well.  So we have met our brief on that.  We've also met --
5  well, we've established that there was a license.  They were
6  holdover licensees.  It would be their burden to show
7  acquiescence.  But we've shown there was the necessary control
8  exerted, and we believe we've met all elements of our
9  affirmative case, Your Honor.  And happy to address any
10 specific questions the Court may have.

11         THE COURT:  I'm going to let the case go forward and
12 deny the motion at this time.  These are close issues, but I'm
13 going to let it go forward and we'll revisit it after the
14 verdict.

15 **(Jury in, 1:51 p.m.)**

16         THE COURT:  Have a seat.  We'll proceed.

17         MR. WILLETT:  And may it please the Court, Henry
18 Willett again on behalf of the plaintiff.  Prior to concluding
19 plaintiff's presentation of evidence, I'd just like to pull up
20 a few exhibits so that they can be admitted.  They have been
21 stipulated to by defendants.  Those are going to be --
22 actually, we'll start with the exhibits, 4, 5, 6, and 7.  Do
23 them one at a time.

24         The first one, Carmen, is going to be Exhibit 4 that
25 we move to be admitted.  Again, I'm not going to go through all

C. Demiduk - Cross

1  C E R T I F I C A T E
2       I, Lisa M. Blair, RMR/CRR, Official Court Reporter for
3  the United States District Court for the Western District of
4  Virginia, appointed pursuant to the provisions of Title 28,
5  United States Code, Section 753, do hereby certify that the
6  foregoing is a correct transcript of the proceedings reported
7  by me using the stenotype reporting method in conjunction
8  with computer-aided transcription, and that same is a
9  true and correct transcript to the best of my ability and
10 understanding.
11      I further certify that the transcript fees and format
12 comply with those prescribed by the Court and the Judicial
13 Conference of the United States.
14      /s/ Lisa M. Blair                    Date: March 9, 2022