# EXHIBIT D

Trial Transcript Day 4 Excerpts

```
       Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
                         6:20cv54, 2/25/2022

 1                      UNITED STATES DISTRICT COURT
                    FOR THE WESTERN DISTRICT OF VIRGINIA
 2                            LYNCHBURG DIVISION

 3     **************************************************************

 4     EMERSON CREEK POTTERY, INC.  CIVIL CASE NO.:  6:20CV54
                                    FEBRUARY 25, 2022, 9:14 A.M.
 5                                  JURY TRIAL, DAY 4
              Plaintiff,
 6     vs.

 7     EMERSON CREEK EVENTS, INC.,  Before:
       ET AL.,                      HONORABLE NORMAN K. MOON
 8                                  UNITED STATES DISTRICT JUDGE
              Defendants.           WESTERN DISTRICT OF VIRGINIA
 9
       **************************************************************
10     APPEARANCES:

11     For the Plaintiff:           HENRY IRVING WILLETT, III, ESQUIRE
                                    Christian and Barton, LLP
12                                  909 East Main Street, Suite 1200
                                    Richmond, VA  23219
13
                                    GARFIELD BERNARD GOODRUM, ESQUIRE
14                                  Garfield Goodrum, Design Law
                                    90 Canal Street, 4th Floor
15                                  Boston, MA  02114

16     For the Defendants:          KENNETH S. MCLAUGHLIN, JR., ESQUIRE
                                    Law Offices of McLaughlin &
17                                  Associates, P.C.
                                    1 E. Benton Street, Suite 301
18                                  Aurora, IL  60505

19                                  LAWRENCE E. LAUBSCHER, JR., ESQUIRE
                                    Laubscher & Laubscher, PC
20                                  1160 Spa Road, Suite 2B
                                    Annapolis, MD  21403
21

22     Court Reporter:   Lisa M. Blair, RPR, RMR, CRR, FOCR
                         255 West Main Street, Suite 304
23                       Charlottesville, Virginia  22902
                         434.296.9284
24
                 PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25     TRANSCRIPT PRODUCED BY COMPUTER.
```

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/25/2022

1  If you find acquiescence, you must then determine
2  whether, despite that acquiescence, likelihood of confusion is
3  apparent.
4  Because it is an affirmative defense, defendants have
5  the burden to prove acquiescence by a preponderance of the
6  evidence.
7  Plaintiff also brings a claim for unfair competition
8  and false designation of origin.
9  To prove false suggestion of affiliation or
10 sponsorship, plaintiff must prove that defendants used "Emerson
11 Creek Pottery" or "Emerson Creek" commercially in a manner that
12 is likely to cause confusion, or to cause mistake, or to
13 deceive as to the affiliation, connection, or association of
14 defendants with plaintiff, or as to the origin, sponsorship, or
15 approval of defendants' goods, services, or commercial
16 activities by plaintiff.
17 If you find that plaintiff has proved each trademark
18 infringement by a preponderance of the evidence, then you
19 should find for plaintiff on unfair competition and false
20 designation of origin.  However, if plaintiff did not prove
21 each element of trademark infringement by a preponderance of
22 the evidence, then you should find for defendants on unfair
23 competition and false designation of origin.
24 If you find for plaintiff on plaintiff's infringement
25 claim, you must determine plaintiff's damages.  Plaintiff has

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/25/2022

1 throughout this case. You've seen it in the email
2 correspondence. You've seen it in the way Ms. Demiduk referred
3 to Mr. Leavitt's business. You've seen it in the way that he
4 referred to his business. You've seen those examples of the
5 Emerson Creek mark. He had both marks, and he had those marks
6 as of the time that the parties first met in 2001. We've
7 looked at the historical as well.
8     So if, indeed, he had that mark or the company had
9 that mark, did plaintiff and defendants enter into an express
10 licensing agreement? All right. What does this mean? We
11 talked about the different forms of licensing agreement
12 earlier. And, you know, Mr. Laubscher showed you -- although I
13 don't think it ended up in evidence -- but he showed you what
14 he said was some sort of standard licensing agreement. Why
15 didn't they use the standard licensing agreement? But in any
16 event -- and then we saw the draft one that ultimately in 2017
17 when things kind of blew up, that was presented to Ms. Demiduk.
18     But let's talk about what happened back in 2001,
19 right? So before we do, you look at the instructions for this.
20 And these are 13. This is the important part here, and I
21 really want to be very clear on this. This type of agreement,
22 a license agreement, can be an oral agreement, all right? You
23 may have heard other things about other types of agreements.
24 We're talking about a license agreement. No disagreement on
25 this. You look at the instructions. It can be an oral

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/25/2022

1  agreement.  You have to have an offer; you have to have
2  acceptance; and you have to have consideration.
3           Consider the things that I just spoke of.  Consider
4  the 2002 article, right?  We've got the offer by Ms. Demiduk.
5  Can I replicate this in Oswego?  We have the acceptance by
6  Mr. Leavitt.  And then we have the consideration, which is the
7  deal, which flows both ways.  He allows her to do this.  He
8  sells her the pottery at a discount.  And in exchange, she
9  sells that pottery.  So she's buying pottery from him and --
10 and she markets his product.  We have where the meeting took
11 place.  We have the article we just referred to.  And then
12 we've got this document, right?
13          And so this document, we've got this document that we
14 see from 3-23-2001.  And you have Mr. Leavitt who says, I
15 prepared the document.  We've got the metadata that shows that
16 the document is from a Word document.  That's a copy of an
17 actual document, and then we've got the metadata from the Word
18 document that shows it was created -- last modified two days
19 after that.  And we have Mr. Leavitt's testimony as to what he
20 put together.  This was not a contract.  This was not
21 Mr. Leavitt's attempt at a license agreement.  He was not
22 trying to take, you know, long documents and put it into this
23 paragraph.  He was memorializing what had been agreed to by the
24 parties in Bedford, Virginia.  What did he refer to it as?
25 Handshake agreement, right?  His oral agreement with them, his

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/25/2022

1  word.  Now, he may have had to enter into agreements from time
2  to time with big companies and artists like Thomas Kincaid and
3  folks like that.  But he told you how he does business:  The
4  King Arthur way, right?  His handshake.  His word is his bond.
5          Go to the next slide.  That's the metadata.  Keep
6  going.
7          And so there's all this question about what did the
8  agreement say?  You'll have that document back there.  Again,
9  we need to look no further than Ms. Demiduk's own words; in
10 this case, not that long ago.  "He said to call it 'Emerson
11 Creek Pottery.'"  That was the deal.  It was going to be a
12 replication -- just like the 2002 article said -- it was going
13 to be a replication of what he had in Bedford in Oswego,
14 Illinois.  And that is critical.  Why?  Because it was.  He
15 says it's in the document.  You'll see it, Exhibit 57.  He says
16 outlet store.  She says, Well, I didn't want to call it an
17 outlet store, what have you.  Look at their testimony.  You
18 heard their testimony.  The bottom line is you've got his shop,
19 right?  He calls it an outlet store.  He didn't put outlet
20 store all over it.  That's just how he describes it.  She went
21 back.  She was opening an Emerson Creek Pottery shop.  That's
22 what the deal was.  She was going to call it an Emerson Creek
23 Pottery shop.  And lo and behold -- lo and behold, what does
24 she do when she gets back, or what happens when she gets back
25 to Illinois?  We saw it on the registration document.  It was

```
           Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
                              6:20cv54, 2/25/2022
```

1  and you look at whether they had an implied license agreement.
2  And you're going to look at the following factors:  Again, no
3  written agreement required.  You look at permission.  She said
4  yes.  And you're going to look at control.  Let's just go
5  through control, because this is an important factor.  And I
6  know I promised I'd be brief to the judge, and I want to be
7  brief for you all.
8           Look at control.  July through May -- I'm sorry to
9  give you big documents.  Some of them have been broken down.
10 Those documents express the relationship.  These folks were in
11 constant contact.  I started thinking about it this morning.  I
12 was like, How do I explain that?  Because they're trying to
13 say, Jim didn't care.  Jim didn't care.  Jim didn't care?
14 There are constant emails back and forth.  Okay.  Maybe Chris
15 writes more emails than Jim maybe.  I don't know.
16          I was thinking about it in terms of my son and
17 school, right?  I mean, I send him to school.  He goes to
18 kindergarten.  And, you know, gosh, there's all sorts of
19 contact, right?  I'm checking on him and they're checking in,
20 and they're giving me reports, and I'm talking to the teacher
21 when I pick him up and all these things.  Gradually, you know,
22 I trust the school.  My son, he's a junior now.  He'll be a
23 senior next year.  I trust the school.  And gradually over
24 time, yeah, I'm probably not in as frequent contact, but I'm
25 keeping up with what's going on.  I'm watching him.  He's my

178

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/25/2022

1  mark, right?  I'm watching.  I'm making sure they're doing
2  their job.
3          That's exactly what the evidence shows Mr. Leavitt
4  did over time.
5          Go to the next slide, please.
6          Look at this.  Yeah, look at this.  Keep going.
7  Opening Emerson Creek.  Keep going.  All of this.  She's
8  sending these things.  How does he know what's happening?
9  She's sending him these things constantly along the way.  Can
10 be no doubt about the control that was being exhibited by
11 Mr. Leavitt.  Look, for example, right before these in 2009,
12 right, she wants to open -- or start a website.  She had a
13 problem with the vendor.  They were "ecreek" before then.  She
14 wants to be ecreek -- "ecreekpotteryandtearoom.com, if that's
15 okay," plaintiff's 192.  That's control.  She's asking him the
16 question.  He says yes.  He allows her to do it.
17         We saw it again -- and I'm going to just kind of go
18 through this, guys, because there's a lot of documents and I'm
19 trying to give you specific numbers when I can.  We saw it
20 again in 2012 when the whole Google Maps thing came up, right?
21 First instance of confusion.  This is before he knows of any
22 breach of the license agreement.  What's his control?  Hey, add
23 "and tearoom."  Add "and tearoom."  He's exhibiting control all
24 along the way.  2014:  Hey, what's going on with your sales?
25 Tell me.  Give me an answer.  Give me an explanation, right?

Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
6:20cv54, 2/25/2022

1  The same idea.  Hey school:  I don't like something that's
2  happening.  I don't like that my son's grades are low, or
3  whatever the situation is.  I'm exhibiting control.  That's
4  what he's doing here.
5           Now, again, I don't think there can be any question
6  about control, but that's your determination to make.  And if
7  you determine that, right, if you determine that, okay, maybe
8  there wasn't an express license, but there was an implied
9  license, then you're going to go to questions 4 to 8.
10          So let's look at 4.  I'm trying to hurry this up.
11 What names were covered by the parties' licensing agreement?
12 You guys have seen this.  You know the evidence exists.
13 Emerson Creek, we have seen that time and time again.  I've
14 just shown you multiple examples of that.  The defendants have
15 used that mark since the beginning.  Emerson Creek Pottery,
16 they have used that mark since the beginning.  This 2002
17 article is great because it really has so many of these uses.
18 And then look at their websites.  Look at the way they did it
19 there.  Just like what the mother ship was doing in Bedford,
20 Virginia.
21          Emerson Creek Pottery & Tearoom, you heard the story,
22 the expansion.  On the porch of the pottery shop when people
23 come to the pottery shop, they expand.  They go.  And all of a
24 sudden they start using Emerson Creek Pottery & Tearoom.  And
25 we just saw -- at Exhibit 192 we just saw allowing them to

```
          Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
                         6:20cv54, 2/25/2022
```

214

1  are shop documents, and those documents should be -- they

2  should be informed of that.

3            MR. GOODRUM:  They're certainly relevant to it.

4            THE COURT:  You know, these are things that in

5  closing argument should have been pointed out to the jury.

6            (Recess.)

7            THE COURT:  Call the jury back.

8  **(Jury in, 5:55 p.m.)**

9            THE COURT:  You may have a seat.

10           Have you agreed upon a verdict?

11           FEMALE JUROR:  Yes, sir.

12           THE COURT:  Hand it to me.

13           (Pause.)

14           THE COURT:  All right.  You did not answer question

15  3, and I think that's -- Carmen, would you publish the verdict?

16           THE CLERK:  Ladies and gentlemen, is this your

17  verdict:  In the matter of Emerson Creek Pottery, Incorporated

18  versus Emerson Creek Events, Incorporated and others, Case

19  Number 6:20cv54, as to breach of licensing agreement claim,

20  Count Four, does plaintiff have a valid trademark in the mark

21  "Emerson Creek?"  Yes.

22           Question 2:  Did plaintiff and defendants enter into

23  an express licensing agreement?  Yes.

24           Question 3 was not answered.

25           Question 4:  What names were covered by the parties'

```
       Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.,
                           6:20cv54, 2/25/2022

 1                            C E R T I F I C A T E
 2         I, Lisa M. Blair, RMR/CRR, Official Court Reporter for
 3   the United States District Court for the Western District of
 4   Virginia, appointed pursuant to the provisions of Title 28,
 5   United States Code, Section 753, do hereby certify that the
 6   foregoing is a correct transcript of the proceedings reported
 7   by me using the stenotype reporting method in conjunction
 8   with computer-aided transcription, and that same is a
 9   true and correct transcript to the best of my ability and
10   understanding.
11         I further certify that the transcript fees and format
12   comply with those prescribed by the Court and the Judicial
13   Conference of the United States.
14         /s/ Lisa M. Blair                  Date: March 9, 2022
15
16
17
18
19
20
21
22
23
24
25
```