CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/26/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| EMERSON CREEK POTTERY, <br><br> *Plaintiff*, <br><br> v. <br><br> EMERSON CREEK EVENTS, et al. <br><br> *Defendants*. | CASE NO. 6:20-cv-54 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

## I. INTRODUCTION

This matter comes before the Court on Defendants' "Renewed Motion for Judgment as a Matter of Law, or, Alternatively, for a New Trial or Amended Judgment," Dkt. 145. Respecting the sound judgment of the jury, the Court will deny judgment as a matter of law and will not order a new trial. And, after reviewing the Lanham Act's provisions on compensatory damages for trademark infringement and the Fourth Circuit's guidance on that statute's application, the Court will deny Defendants' request for reduced damages. The evidence of damages in the record is simply too thin for the Court to reduce the award in a non-arbitrary manner, and the jury award of $2,000,000 still constitutes a substantial discount from Defendants' total profits for the years in which Defendants infringed Plaintiff's trademark, and, most importantly, does not constitute a penalty.

The Court will briefly review the present posture of this case. Plaintiff Emerson Creek Pottery operates a pottery manufacturing facility and retail outlet in Bedford County, VA. Jim Leavitt is the sole owner of Emerson Creek Pottery. In 2001, Defendant Christina Demiduk, along with her then-partner, Ron Wehrli, approached Leavitt about opening a store to sell Emerson Creek pottery in her town of Oswego, Illinois. The parties came to such an agreement,

1

and the exact nature of the agreement became the core dispute in this case. Defendants argued that they came to a mere sales agreement, not a trademark licensing agreement with respect to the name "Emerson Creek," and that, although Plaintiff allowed Defendants to use the name "Emerson Creek," it was merely a "naked license" without conditions attached. Plaintiff argued that the parties came to an oral licensing agreement for Defendants to use the name "Emerson Creek" (and variations thereof) in addition to the sales agreement.

In 2002, Demiduk opened her store in Oswego doing business under the name "Emerson Creek Pottery." The shop sold the pottery that Demiduk and Wehrli had purchased from Leavitt, as well as other non-pottery items such as soap, candles, and towels. In the next few years, Demiduk continued to expand her business, and in 2004 opened a tearoom adjoining the shop and began operating under the name "Emerson Creek Pottery and Tearoom." In 2010, Demiduk began operating a wedding and events business on the Oswego property, operating as a separate business, "Emerson Creek Events, Inc." During those years, Demiduk continued to buy pottery from Leavitt and kept him apprised of her plans for the business.

In 2012, Leavitt became concerned that Google search results for "Emerson Creek" were returning results for both his and Demiduk's companies. He asked her to add "& Tearoom" to all of her references to her company's name, to which she agreed. There were no issues between the parties for the next few years until 2017, when Leavitt again asked Demiduk to add "& Tearoom" when using her company's name due to continued confusion over online search results.

In July 2017, Defendants placed their last order with Plaintiff. In September 2017, Plaintiff, increasingly suspicious, hired a private investigator to go to Defendants' store in Oswego. There, the private investigator observed that Defendants were selling third-party

pottery, which Plaintiff believed to be in violation of their agreement. In January 2018, Leavitt demanded that Defendants stop using the name "Emerson Creek" categorically.

After Leavitt asked Defendants to stop referring to themselves as "Emerson Creek," Demiduk asked her website developer to remove references to Emerson Creek Pottery (that is, Leavitt's Virginia business) from her website and marketing materials but continued to use the name "Emerson Creek" in general. She asked her website developer to purchase the domain names "emersoncreekevents.com" and "EmersonCreek.com" to add to the domain she already possessed, "ecreekpotteryandtearoom.com." Demiduk expressed that she wanted to purchase those domain names before Leavitt was able to do so. The website developer successfully purchased the domains, and Demiduk began using the address "@emersoncreek.com" for her company email.

Plaintiff brought the Complaint for this case in August 2020, and the case proceeded to a jury trial in February 2022. After a four-day trial, the jury returned a verdict in Plaintiff's favor on each claim. The jury found that Plaintiff has a valid trademark in the mark "Emerson Creek," that the parties entered into an express oral licensing agreement, that the licensing agreement covered all of the variations of "Emerson Creek" in question, and that the licensing agreement extended to all services offered at Defendants' businesses. The jury found that Defendants breached the licensing agreement and found Defendants liable in the amount of $5,119.51 for the breach. The jury also found Defendants liable for infringing Plaintiff's trademarks in "Emerson Creek" and "Emerson Creek Pottery," that Defendants acted willfully in doing so, and that Defendants' infringement was likely to cause confusion or mistake, or to deceive as to the affiliation, sponsorship, or association between Defendants and Plaintiff. For the trademark infringement claim, the jury found Defendants liable for $2,000,000 in damages. The jury also

found in Plaintiff's favor on Defendants' affirmative defenses of naked licensing and acquiescence.

## II. ANALYSIS

### A. Renewed Motion for Judgment as a Matter of Law

At the conclusion of the trial on February 25, 2022, Defendants made a renewed motion for judgment as a matter of law. (Dkt. 134 (Feb. 25 Trial Tr.) at 218–219). The Court denied the motion on the record at that time but permitted the parties to brief the motion. (*Id.*).

Federal Rule of Civil Procedure 50(a) allows a party to move for judgment as a matter of law, which the Court must grant if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Rule 50(b) authorizes a party to renew its motion for judgment as a matter of law after the return of the jury verdict. In such case, "[w]hen a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605, 610 (4th Cir. 2021) (quoting *Int'l Ground Transp. v. Mayor & City Council of Ocean City, MD*, 475 F.3d 214, 218–19 (4th Cir. 2007)). Courts reviewing a jury's verdict must construe all of the facts—including all inferences drawn from the evidence—in support of the verdict. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150–151 (2000). Accordingly, the Court must affirm if a "rational trier of fact" could have reached the jury's conclusion. *Id.* at 153.

Indeed, a rational trier of fact could have reached each of the jury's conclusions. On the Breach of Licensing Agreement Claim (Count IV), the jury found that Plaintiff had a valid

trademark in the name "Emerson Creek," that Plaintiff and Defendants entered into an express licensing agreement, that the names "Emerson Creek," "Emerson Creek Pottery," "Emerson Creek Pottery & Tearoom," and "Emerson Creek Events" were covered by the agreement, that the agreement covered gift shop services, restaurant services, and events services, that Plaintiff exercised adequate control over the mark, that Defendants breached the licensing agreement, and that Defendants were liable for damages. (Dkt. 114 at 1–2). Plaintiff proved this count largely through the testimony of Jim Leavitt, who testified, *inter alia*, that he, Chris Demiduk, and Ron Wehrli had come to an express (but unwritten) licensing agreement, and that Leavitt memorialized the terms of that agreement in a written document. (*See* Ex. 3 to Dkt. 148 at 87:6–7, 129:21–130:15, 134:1–10 (Leavitt testimony); Ex. 4 to Dkt. 148 at 78:16–79:6, 82:19-83:10 (Demiduk testimony)). The jury then heard considerable evidence about the execution of that agreement, including the facts that Demiduk and Wehrli purchased a large amount of pottery from Leavitt, that they began a business operating under the name "Emerson Creek Pottery," that Demiduk continued to order pottery from Leavitt on an ongoing basis. (*See generally* Ex. 2, 4 to Dkt. 148). On the issue of adequate control, the jury heard evidence that Demiduk and Leavitt would periodically discuss the progress of Demiduk's business, and that Leavitt would approve (tacitly or explicitly) each development. (*Id.*). The jury also heard evidence that Plaintiff exercised its rights in the mark by issuing a cease-and-desist letter soon after Plaintiff began to believe that Defendants were infringing the mark. (Ex. 2 to Dkt. 148 at 63:5–17).

    Because the jury had a reasonable basis to find that there was an express licensing agreement, Plaintiff did not need to prove—and the jury did not find—that there was an implied licensing agreement.

    With respect to Plaintiff's Trademark Infringement and False Suggestion of Affiliation or

Sponsorship Claims (Counts I, II, and III), the jury found that Defendants infringed Plaintiff's marks, that Defendants acted willfully in doing so, and that Defendants used the marks in a manner likely to cause confusion, to cause mistake, or to deceive. (Dkt. 114 at 3–4). The jury also found that Plaintiff did not acquiesce to Defendants' infringement. (*Id.* at 3). The jury has a legally sufficient basis for those findings. Especially notable on these Counts was the testimony of Townsend Belisle, an expert in search engine optimization who testified at length about how customers were confusing Plaintiff and Defendants' businesses during online searches. (Dkt. 133 (Feb. 24 Trial Tr.) at 84–128). With respect to willfulness, the jury heard evidence about how Chris Demiduk attempted to obtain certain domain names so that Plaintiff could not use them. (Ex. 3 to Dkt. 148 (Feb. 23 Trial Tr.) at 197:6–201:20). With respect to acquiescence, the jury heard evidence about how Plaintiff communicated with Defendants about developments with Defendants' business and ordered Defendants to cease-and-desist soon after learning that Plaintiff was selling third-party pottery. (Ex. 1 to Dkt. 148 (Feb. 22 Trial Tr.) at 126:7–8; 162:2–168:14).

Thus, the jury had a legally sufficient basis for each of its findings. The Court will deny Defendants' renewed motion for judgment as a matter of law.

### B. Motion for New Trial

A Rule 59 Motion for a New Trial may be granted, at the Court's discretion, when the verdict is (1) against the clear weight of the evidence, (2) based upon false evidence, or (3) will result in miscarriage of justice. Fed. R. Civ. P. 59; *see also Atlas Food Sys. And Serv. Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996) (discussing standard).

Defendants move for a new trial in general as an alternative to their renewed motion for judgment as a matter of law, and specifically move for a new trial on the issue of the existence of

an implied license. Like a motion for judgment as a matter of law, a motion for a new trial based on the weight of the evidence turns on "whether the claim[s] should succeed or fail because the evidence developed at trial was insufficient as a matter of law to sustain the claim[s]." *United States ex rel Cody v. ManTech Inti'l Corp.*, 746 F. App'x 166, 175 (4th Cir. 2018). Thus, for the same reasons as stated above, the Court holds that the jury had a legally sufficient basis for each of its findings and will deny a new trial based on the sufficiency of the evidence.

The Court will also deny a new trial on the issue of an implied license because the jury simply did not need to find whether an implied license existed once the jury found that an express license existed. The Court also notes that in Defendants' proposed jury instructions, Defendants proposed that the jury did not need to find whether an implied license existed if the jury found that an express license existed. (*See* Dkt. 93-2 at 1).

### C. Motion for Amended Judgment on Damages

In the alternative to their motion for judgment as a matter of law and motion for a new trial, Defendants also move for an amended judgment on damages.

Under the Lanham Act, damages for trademark infringement may include (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). "The court shall assess such profits and damages or cause the same to be assessed under its direction" and ensure that any relief awarded "shall constitute compensation and not a penalty." *Id*. Moreover, the Lanham Act provides that in "assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id*.

The district court retains the authority to amend a jury award under the Lanham Act following the jury's verdict. *See Super Duper, Inc. v. Mattel, Inc.*, 382 F. App'x 308, 317 (4th

7

Cir. 2010) ("[I]f the court . . . find[s] that the amount of recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.") (quoting 15 U.S.C. § 1117(a)); *see also Exclaim Mktg., LLC v. DirectTV, LLC*, 674 F. App'x 250, 257 (4th Cir. 2016) ("The district court has broad discretion to award such relief in order to achieve an equitable result.").

District courts must consider the following factors when evaluating an award of damages under the Lanham Act:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006). "[T]he trial court's primary function is to make violations of Lanham Act unprofitable to the infringing party[.]" *PBM Prods., Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 424, 430 (E.D. Va. 2001) (citing *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985)); *see also Choice Hotels Int'l, Inc.*, 409 F. Supp. 3d at 569 ("Awarding damages makes 'violations of the Lanham Act unprofitable to the infringing party.'").

### i. Intent to Confuse or Deceive

This factor weighs in favor of a monetary award. The jury found Defendants' infringement of the mark to be willful. (Dkt. 114). Defendants admitted that they had sold third-party pottery. (Ex. 2 to Dkt. 148 (Feb. 23 Trial Tr.) at 54:5–63:7; 69:1–71:18; Ex. 3 to Dkt. 148 (Feb. 24 Trial Tr.) at 10:5–16:8). The evidence supported that Defendants continued to sell third party pottery after receiving the cease-and-desist letter. (*See id.*; Pl. Trial Ex. 84; Pl. Trial Ex. 106).

Most clearly, Defendants communicated with their website manager that they wanted to

8

purchase certain URLs in order to keep Plaintiff from obtaining those URLs. ("I also thought if we bought the other names Jim in Virginia couldn't"). (Pl. Trial Ex. 41; *see also* Ex. 2 to Dkt. 148 at 197:7–201:20). That is plainly evidence of intent to confuse or deceive.

### ii. Whether Sales Were Diverted

This factor does not weigh clearly either way. On one hand, Defendants' sale of third-party pottery likely diverted some sales. On the other hand, the bulk of Defendants' business was not selling Plaintiff's pottery but operating the restaurant and events space.

### iii. The Adequacy of Other Remedies

This factor weighs in favor of a monetary award. There is an injunction in place here, but that only prevents future infringement on Plaintiff's trademark. An award of money damages is necessary to make Plaintiff whole from Defendants' past infringement.

### iv. Unreasonable Delay

This factor weighs in favor of a monetary award. The evidence at trial indicated that Plaintiff asserted its rights soon after discovering that Defendants were selling third-party pottery in breach of the parties' agreement. Plaintiff notified Defendants about the issue and sent a cease-and-desist letter a few months later. (*See* Pl. Trial Ex. 66; Pl. Trial Ex. 67).

In addition, as discussed above with respect to the renewed motion for judgment as a matter of law and motion for new trial, the evidence at trial indicated that Plaintiff did not acquiesce to Defendants' infringement on the mark, nor did Plaintiff issue a naked license.

### v. Public Interest

This factor weighs neutrally. This factor requires the Court to strike a balance "between a plaintiff's right to be compensated for the defendant's trademark infringement activities" and a defendant's statutory right "not to be assessed a penalty." *Synergistic,* 470 F.3d at 176. As will

be discussed further below, it is the Court's finding that a monetary penalty in this case does not constitute a penalty.

### vi. Palming Off

This factor weighs in favor of a monetary award. Although not all of Defendants' profits were from palming off third-party pottery under the name Emerson Creek, the evidence at trial showed that Defendants sold third-party pottery under the banner of that name. (*See* Pl. Trial Ex. 65, 171; Ex. 2 to Dkt. 148 at 54:5–63:7, 205:6–206:3). Both before and after the cease-and-desist letter, Defendants stated on their website that "All of our beautiful pottery is created and painted in Bedford, Virginia and is the original source of inspiration for the Pottery Shop and Tearoom that you enjoy today," even though they sold pottery that was not made by Plaintiff. (*See* Pl. Trial Exs. 8, 9, 14, 15, 61).

### vii. Monetary Damages Amount

A monetary award is appropriate in this case. But the Court finds itself caught between two competing circumstances. On one hand, the $2,000,000 jury award constitutes a significant portion of Defendants' profits, and it is not perfectly clear how much of Defendants' profits could be reasonably attributed to their infringement of Plaintiff's mark. On the other hand, Defendants made little effort at trial to establish their costs or to argue which portions of their profits might or might not be attributable to their use of Plaintiff's mark. Nor have Defendants done so in their pleadings on this motion.

Most of the difficulty arises from the unique circumstances of this case. Unlike many trademark infringement cases which involve a competitor selling a product under the mark of a competitor, this case involved a broken licensing agreement where one party, Plaintiff, had a trademark (Emerson Creek) and a product that carried the mark (their pottery), and the other

party, Defendants, adopted that mark for their unrelated business ventures—the restaurant and event space. Defendants emphasize that their pottery sales were a relatively small amount of their overall business, and that their events space was their largest source of revenue in the years for which the jury imposed damages. (Dkt. 146 at 25–26). Plaintiff emphasizes that every one of Defendants' businesses operated under the name "Emerson Creek" (Dkt. 148 at 3–4), so there is at least a colorable argument that *all* of Defendants' profits are attributable to Defendants' infringement.

The evidence at trial on damages was thin, to say the least. At trial, Plaintiff introduced evidence of Defendants' profits for one of the years in which Defendants infringed: $1,129,530 in 2018. (Pl. Trial Ex. 30; Ex. 3 to Dkt. 148 at 17:6–14; 20:12–17; 21:23–22:6). Plaintiff adduced evidence about Defendants' business during the subsequent years (2019 through 2021), and based on that evidence, provides a reasonable estimation of Defendants' profits for those years as $1,033,555 (2019), $322,600 (2020) (lower because of COVID-19), and $1,323,881 (2021) (*see* Dkt. 148 at 30), bringing Defendants' total profits during the years of infringement, very roughly, to about 3.8 million dollars. Defendants have not contested that figure, instead choosing to argue that the only appropriate amount of damages is none. (*See generally* Dkt. 146, 152). Defendants adduced some evidence of Defendants' labor costs at trial but otherwise introduced no evidence of their costs or deductions. (*See* Ex. 3 to Dkt. 148 at 72:21–24; 73:7–9; 78:16–21; 79:22–25).

Taking the 3.8 million number, the jury award constituted 52.6% of Defendants' profits for the years in which Defendants infringed Plaintiff's mark. The jury, after hearing all the evidence, decided that was the amount of Defendants' profits attributable to the infringement. The Court will not second-guess the jury. *See Choice Hotels Int'l, Inc. v. A Royal Touch Hosp.,*

*LLC*, No. 7:17-cv-381, 2019 WL 4781879, at *3 (W.D. Va. Sept. 30, 2019) ("A damages award for lost profits in excess of two million dollars may seem excessive, but it was defendants' burden to prove offsetting costs[.]") (internal citation omitted). At the very least, the jury's award is not excessive and does not constitute a penalty under the Lanham Act.

Therefore, the Court will affirm the jury's damages award and deny Defendants' motion to reduce damages.

### III.  CONCLUSION

In an accompanying order, the Court will DENY Defendants' renewed motion for judgment as a matter of law, motion for new trial, and motion for amended judgment (Dkt. 145) in full.

The Clerk of Court is directed to send a copy of this memorandum opinion to all counsel of record.

Entered this 26th day of August 2022.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE