CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/4/2022
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| EMERSON CREEK POTTERY, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 6:20-CV-54 |
| COUNTRYVIEW POTTERY CO., EMERSON CREEK EVENTS, INC., CHISTINA DEMIDUK, and DAVID DEMIDUK | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

In this trademark infringement litigation, Plaintiff, Emerson Creek Pottery, Inc., asks the Court to award attorneys' fees and tax costs following a jury verdict finding that Defendants Emerson Creek Events, Inc., Countryview Pottery Co., Christina Demiduk and David Demiduk (collectively "Defendants") beached a trademark licensing agreement and willfully infringed Plaintiff's trademarks. Defendants oppose the motion for attorneys' fees and the amount sought in taxed costs. The district court referred the attorneys' fee and costs request for a report and recommendation, and having considered the record, the legal arguments submitted and the applicable law, I **RECOMMEND DENYING** Plaintiff's Motion for Attorneys' Fees (Dkt. 155); **GRANTING** Plaintiff's Bill of Costs in the amount of $8,973.65.

I. **BACKGROUND**

The facts of this case are fully set forth in the District Court's Memorandum Opinion denying the parties' cross-motions for summary judgment. Dkt. 87. In brief, following the breakdown of a 17-year business relationship between the parties, Plaintiff asserted claims against Defendants under the Lanham Act for trademark infringement, unfair competition and

false designation of origin, common law trademark infringement and unfair competition, and common law breach of contract. Dkt. 1. Plaintiff argued that the parties entered into a trademark licensing agreement; that Plaintiff later terminated the license; that Defendants continued to use the mark after the license was terminated, and thus, were holdover licensees; and that Defendants continued to infringe Plaintiff's trademarks. Defendants argued that the parties did not enter into a formal licensing agreement; that Plaintiff allowed Defendants to use the name "Emerson Creek" as a "naked license" and/or Plaintiff acquiesced to Defendants' use of the mark; and Plaintiff could not enforce the trademark against Defendants.

The parties filed cross-motions for summary judgment on all claims. Judge Moon denied the motions, finding genuine issues of material fact with respect to all issues raised in the pleadings. Dkt. 87. Specifically, Judge Moon determined that there was a clear dispute of fact regarding whether the parties created an express licensing agreement; whether an implied license existed for Defendants to use the mark "Emerson Creek Pottery;" whether Plaintiff exercised adequate quality control over the mark; and whether Plaintiff acquiesced to Defendants' use of the mark. Judge Moon further determined that a reasonable jury could find for either party on Plaintiff's trademark infringement claim.

The case was tried to a jury, which returned a verdict for Plaintiff on all counts, finding that Plaintiff owned valid trademark rights for the "Emerson Creek" mark; that the parties entered into an express licensing agreement; that Plaintiff exercised adequate control over the nature and quality of services offered by Defendants under the mark; that Defendants breached the licensing agreement; that Defendants infringed Plaintiff's trademarks; and that Defendants' infringement was willful. Dkt. 114. The jury awarded Plaintiff damages of $5,119.51 for breach of the licensing agreement and $2,000,000.00 for trademark infringement. Id.

Following the verdict, Judge Moon entered a permanent injunction order, enjoining Defendants from using the trademarks at issue and requiring them to remove or destroy the marks from their materials and merchandise. Dkt. 143. Thereafter, Defendants filed a renewed Motion for Judgment as a Matter of Law, asking the Court to set aside the verdict, award a new trial, or reduce the monetary award to Plaintiff as excessive. Dkt. 145. Judge Moon denied the motion in its entirety. Dkt. 169. Plaintiff filed the instant Motion for Attorneys' Fees and Costs, seeking over $1,000,000 in attorneys' fees[1] and related expenses, and $18,692.75 in taxable costs (Dkt. 156-8). On September 27, 2022, Defendants filed a Notice of Appeal. Dkt. 175.

## II. ATTORNEYS' FEES UNDER THE LANHAM ACT

The Lanham Act permits the court to award reasonable attorney fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). The statute does not define what constitutes an "exceptional case," and there is no "precise rule or formula for" determining whether a case is exceptional. Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014).

A district court may find a case "exceptional" under § 1117(a) when it determines, in light of the totality of the circumstances, that: 1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; 2) the non-prevailing party has litigated the case in an unreasonable manner; or 3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 719–21 (4th Cir. 2015). These factors are not exhaustive or determinative, and the Court should look to the totality of the circumstances to determine whether the case, as a whole,

---

[1] Plaintiff's motion for attorneys' fees, supporting briefs and exhibits do not state an exact figure of attorneys' fees, expenses or costs sought in this action. The figures stated in this opinion are based upon the Court's best calculation given the figures provided by Plaintiff.

in exceptional. Id. The party seeking fees bears the burden to show that the case is "exceptional" by a preponderance of the evidence. Verisign, Inc. v. XYZ.COM LLC, 891 F.3d 481, 484–85 (4th Cir. 2018). It is rare for a case to be found exceptional. Id. at 488.

### A. Merits of Defendants' Position

Plaintiff argues that this case is exceptional because Defendants willfully infringed its trademarks, exercised bad faith as holdover licensees, and persisted in pursuing unreasonable and baseless positions during the litigation. Reviewing the case as a whole, I find that Defendants litigated in good faith, and that while ultimately unsuccessful, their claims were not so lacking in merit that the action as a whole was "exceptional."

Plaintiff is unquestionably the prevailing party in this litigation. The jury found for Plaintiff on every issue litigated at trial, and awarded Plaintiff significant damages. The jury determined that Defendants breached the parties' express trademark licensing agreement, that Defendants willfully infringed Plaintiff's trademarks, and Defendants used the trademarks in a manner likely to deceive consumers or cause consumer confusion or mistake. Dkt. 114.

However, as Defendants note, the inquiry for attorneys' fees is not based on the ultimate outcome and trial verdict. Rather, the court must consider the totality of the circumstances to determine if Defendants' position was frivolous or objectively unreasonable. Georgia-Pacific Consumer Prod. LP, 781 F. 3d at 721. This standard requires that the claim be so unreasonable that no reasonable litigant could believe it would succeed. Design Res., Inc. v. Leather Indus. of Am., No. 1:10cv157, 2016 WL 5477611, at *2 (M.D.N.C. Sept. 29, 2016) (quoting Exclaim Mktg., LLC v. DirecTV, LLC, No. 5:11cv684, 2015 WL 5725703, at *7 (E.D.N.C. Sept. 30, 2015)). The Fourth Circuit clarified in Verisign, Inc., that "subjective bad faith is not required to

4

establish an exceptional case," but that "either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Id. at 487.

Plaintiff asserts that Defendants' willful infringement of their marks "independently" justifies an award of attorneys' fees. Dkt. 156, p. 4. A finding of willful infringement under the Lanham Act does not, by itself, establish an exceptional case for purposes of attorneys' fees. Exclaim Mktg., LLC v. DirecTV, LLC, 674 Fed. Appx. 240, 260 (4th Cir. Dec. 29, 2016); Under Armour, Inc. v. Exclusive Innovations, Inc., No. SAG-20-03427, 2021 WL 2042320 at *8 (D. Md. May 21, 2012) ("[W]illfulness alone does not warrant an award of attorney fees."). "[T]he Fourth Circuit has made clear that an 'exceptional' case requires more than just volitional conduct." Concordia Pharm. Inc. v. Method Pharm. LLC, 240 F. Supp. 3d 449, 458 (W.D. Va. 2017). The jury's finding that Defendants willfully infringed Plaintiff's trademarks is a factor to consider in the attorneys' fee analysis, but does not independently justify awarding fees.

Plaintiff also argues that Defendants' infringement of the trademarks as holdover licensees establishes Defendants' subjective bad faith, warranting an award of attorneys' fees. Dkt. 156, p. 5. In support, Plaintiff cites cases finding bad faith by a franchisee that continues to use a franchisor's trademarks after termination of a franchise agreement. Id.; see Eleven, Inc. v. McEvoy, 300 F. Supp. 2d 352, 357 (D. Md. 2004) (citing Ramada Inns, Inc. v. Gadsen Motel Co., 804 F.2d 1562, 1563, 1567 (11th Cir. 1986)); Motor City Bagels, L.L.C. v. Am. Bagel Co., 50 F. Supp. 2d 460, 488 (D. Md. 1999); Choice Hotels Int'l, Inc. v. A Royal Touch Hosp., LLC (NC), 409 F. Supp. 3d 559, 570 (W.D. Va. 2019). These cases are factually and legally distinguishable from this case. The parties' relationship here was not the equivalent of a franchisor/franchisee relationship with an undisputed trademark license agreement. Rather, the very existence of a license agreement between the parties was in dispute. Defendants contested

the existence of a trademark license agreement with Plaintiff, and argued that their use of the marks was pursuant to a "naked license" and not in violation of an agreement, and they were not holdover licensees. While this argument ultimately failed at trial, Defendants asserted that they believed in good faith that they had the right to continue using the marks, and that Plaintiff either failed to police its marks and/or acquiesced to their use of the marks.

Judge Moon considered these positions when ruling on the parties' cross-motions for summary judgment and found genuine issues of material fact in the record on these issues. The court stated, "[e]ach side has put forth *some* evidence that, if taken as true, would support their position with respect to the creation of an express licensing agreement. However, neither party has offered *undisputed* evidence of the existence or nonexistence of an express licensing agreement, written or oral." Dkt. 87. The court also stated, "[s]imply put, there is a clear dispute of fact about whether the parties created an express licensing agreement in 2001." Dkt. 87. Further, the court found that a reasonable jury could find that Plaintiff acquiesced to Defendants' use of the marks. This provides evidence that Defendants' position, while unsuccessful, was not unreasonable.

Conversely, in Choice Hotels, the court awarded attorneys' fees under the Lanham Act where a hotel franchisee continued to use the franchisor's trademark after they were admittedly notified to discontinue use of the mark. 409 F. Supp. 3d at 570. The court noted, "[d]efendants admitted Choice's material allegations in their answer to Choice's complaint and during discovery. Moreover, defendants have litigated this case in an unreasonable manner by not responding to Choice's motion for summary judgment and effectively abandoning their defense in this case." Id. at 570. This is not an exceptional case such as Choice Hotels where the Defendants admitted to the material allegations in the Complaint, failed to respond to summary

judgment and abandoned their defense. Id.; see also Dewberry Eng'rs, Inc. v. Dewberry Grp., Inc., No. 1:20cv610, 2022 WL 1439826, at *14 (E.D. Va. March 2, 2022) (awarding fees and finding case "exceptional" where the record "demonstrates beyond a preponderance of the evidence that [Defendant] engaged in bad faith, intentional misconduct," pervasively breached the agreement in the face of multiple red flags, and infringed a mark in disregard of clear obligations under a settlement agreement).

Plaintiff also argues that Defendants' subjective bad faith was evidenced by their continued use of the trademarks after Plaintiff terminated the license, creating consumer confusion, and by Defendants' continued pursuit of their affirmative defenses at trial. Plaintiff describes Defendants' positions at trial as a "fantastical tale" and "façade." Dkt. 156, pp. 10–11. Plaintiff's arguments in support of these positions re-assert the factual and legal basis for Plaintiff's underlying case. These positions were successful at trial, but do not deprive Defendants' defenses of potential merit.

Overall, Plaintiff has not established that Defendants' positions on the trademark licensing or infringement claims were frivolous or objectively unreasonable. While Plaintiff ultimately prevailed at trial, the court denied its dispositive motions on the issue of liability, both at the summary judgment stage and the close of Defendants' evidence. "Pressing a claim that is ultimately found to lack merit does not require a finding that position of the party is frivolous or unreasonable." Passport Health, LLC v. Avance Health Sys., Inc., No. 5:17cv187, 2021 WL 276165, at *1 (E.D.N.C. Jan. 26, 2021) (citing Express Homebuyers USA, LLC v. WBH Mktg., Inc., No. 18-2353, 2019 WL 6048822 (4th Cir. Nov. 15, 2019)).

Accordingly, I cannot say that Defendants' position, although not accepted by the jury, was brought in bad faith, or was so frivolous or meritless to warrant an award of attorneys' fees. See Concordia Pharm. Inc., 240 F. Supp. 3d at *459 (finding claim not frivolous or objectively unreasonable when it survived summary judgment and motions at the end of defendants' evidence) (citing cases).

**B. Litigation Conduct**

Plaintiff also fails to establish that this case was litigated in an unreasonable manner. "Typically, this prong is satisfied where the non-prevailing party engages in some form of 'egregious behavior' in litigating a case." Concordia Pharm., Inc., 240 F. Supp. 3d at 459 (citing LendingTree v. Zillow, Inc., 54 F.Supp.3d 444, 460 (W.D.N.C. 2014)).

Plaintiff argues that Defendants' persistence of their "frivolous and objectively unreasonable positions," warrants an award of attorneys' fees. Dkt. 156, p. 17. Plaintiff also asserts that Defendants conducted themselves in an unreasonable manner, and cited the "antics" of defendant Christina Demiduk during her deposition, describing her as an uncooperative witness who failed to answer questions and "clearly had an objective in answering questions." Dkt. 156, pp. 18–19. However, the deposition excerpts provided by Plaintiff in support reflect an unexceptional deposition cross-examination. Dkt. 156-7, 163-1. Further, it is neither unexpected nor unreasonable for a party deponent to have an "objective" when answering deposition questions by explaining a party's position.

Plaintiff also asserts that Defendants required unnecessary discovery by failing to preserve relevant communications with third-party vendors and producing documents late. Plaintiff's arguments regarding discovery and litigation tactics are not well founded. Plaintiff filed multiple discovery motions which were largely unsuccessful. Specifically, Plaintiff's late-

filed motion to compel was denied for being untimely, noting Plaintiff's failure to bring discovery issues to the court's attention prior to the discovery deadline. Dkt. 45, 46 & 61. Additionally, Plaintiff's motion *in limine* asserting spoliation was denied, and indeed, the relief requested was described as "draconian" and "massively disproportional" by the court. Dkt. 98, p. 6.

Overall, Plaintiff's allegations that Defendants' conduct was egregious, and included deceptive behavior, lack of candor in testimony and willful infringement is not borne out in Plaintiff's supportive argument, in the Court's orders and opinions, or in the overall docket of the case. I do not find that the case as a whole was litigated unreasonably, or that Defendants' litigation tactics were so exceptional as to justify an award of fees.

### C. Compensation and Deterrence

Finally, an award of attorneys' fees is not necessary to advance considerations of compensation or deterrence in this case. The need for compensation is addressed by the jury's verdict awarding damages. Further, the award of damages will adequately deter the defendants and others from engaging in similar unlawful conduct in the future. See Concordia Pharm. Inc., 240 F. Supp. 3d at 459 (award of damages sufficient to compensate plaintiff and deter defendants and others from unlawful conduct).

### III. TAXATION OF COSTS

Plaintiff also asks the court to tax costs pursuant to 28 U.S.C. §1920. Dkt. 156, p. 25. The court may tax costs in favor of the prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court provides otherwise. See Fed. R. Civ. P. 54(d); Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999). Rule 54 creates the presumption that costs are to be awarded to the prevailing party. Id. at 446.

Recoverable costs under Rule 54 are set forth in 28 U.S.C. § 1920, which allow the following items: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services. 28 U.S.C. § 1920.

Here, Plaintiff seeks $18,692.75 in costs, broken down as follows: filing fees for the complaint and a pro hac vice motion ($500.00); court reporter fees for depositions ($1,485.00); videographer fees for depositions ($4,795.00); deposition transcript fees ($6,442.70); transcript fees for court hearings and trial ($2,763.95); printing and preparation of trial exhibit binders ($2,706.13). Dkt. 156-8.

The prevailing party bears the initial burden of demonstrating that the requested costs are allowable under § 1920. Mayse v. Mathyas, No. 5:09–cv–100, 2010 WL 3783703, at *1 (W.D. Va. Sept. 28, 2010). Section 1924 provides that before taxing costs, the party claiming any item of cost must provide an affidavit that the costs sought are correct and necessarily incurred in the case. The burden then shifts to the losing party to show the impropriety of taxing the proposed costs. Mayse, 2010 WL 3783703, at *1. However, "[i]n order to recover costs a party is required to provide explanation and adequate supporting documentation for the bill of costs." Scallet v. Rosenblum, 176 F.R.D. 522, 525 (W.D. Va. 1997).

### A. Deposition Expenses and Video Recordings

The Fourth Circuit "has held that costs of a deposition, including transcript fees, should be awarded 'when the taking of a deposition is reasonably necessary at the time of its taking.'"

Delapp v. Shearer's Foods, Inc., No. 1:15-cv-20, 2016 WL 1718395, at *2 (W.D. Va. Apr. 29, 2016) (quoting LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n, 830 F.2d 522, 528 (4th Cir. 1987)). Included in this calculation are court reporters' appearance fees. See id. at *3 (concluding that "recoverable costs include attendance fees"). A party can also recover expedited costs "when the recovering party can show necessity for the expedited service." Id. at *2 (citations omitted). However, courts generally do not award costs "for the inclusion of exhibits, 'as these are primarily for the convenience of counsel, who often has a copy of the exhibit at hand already.'" Id. (quoting Scallet v. Rosenblum, 176 F.R.D. 522, 529 (W.D. Va. 1997)).

Here, Defendants object to the costs sought for video recordings of depositions, which were prepared in addition to written transcripts of the depositions. A prevailing party may recover "fees of the court reporter for all or any part of [a] stenographic transcript necessarily obtained for use in the case." Cherry v. Champion Int'l Corp., 186 F.3d 442, 448 (4th Cir. 1999) (quoting 28 U.S.C. § 1920(2)) (internal alteration and quotations omitted). However, a party is not generally entitled to recover fees for both transcribing and videotaping a deposition. Id. at 449. Indeed, unless the prevailing party can show that both costs were "necessarily obtained for use in the case, only transcription costs are recoverable." Id. (quoting 28 U.S.C. § 1920(2)) (internal quotations omitted).

The "concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial." Id. (citation omitted). For example, courts consider videotaped depositions as necessary for use at trial when the witnesses are beyond the court's subpoena power and there is no assurance that the witnesses will attend the trial. Hanwha Azdel, Inc. v. C & D Zodiac, Inc., No. 6:12–CV–00023, 2015 WL 1417058, at *5 (W.D. Va. Mar. 27, 2015); see also Powell v. Prince George's County, Md., No.

11

8:18cv3683, 2020 WL 5417563, at *10 (D. Md. Sept. 10, 2020) (Denying costs for video depositions where Plaintiff argued that the witnesses were adverse and video was important to assess their credibility).

Plaintiff seeks to recover costs for both transcription and videography services for five witness depositions. Dkt. 165-2. Plaintiff has not established "why either a transcript or a videotape would not have been sufficient" for these depositions. Cherry, 186 F.3d at 449. Plaintiff asserts that the witnesses all live outside of the court's subpoena power and video preservation of their testimony was necessary for trial, citing to Hanwha Azdel, Inc., 2015 WL 1417058, at *5. However, in Hanwha, videographer fees were allowed where the witnesses were outside the subpoena power of the court, it was known that the witnesses would be unavailable for trial, and the Defendant only ordered the videotapes of necessary, unavailable witnesses when it was required to prepare for trial. Conversely, here, Christina Demiduk and David Demiduk are named defendants in the case and appeared at trial in person, Lindsay Winkler appeared at trial by Zoom, and neither party called Jonathan Domanus or Ronald Wehrli as witnesses at trial. Further, the invoices for video deposition expenses were dated around the same time as the invoices for written transcripts, reflecting that the video recordings were a duplication and/or convenience for counsel, rather than a necessity. While the videotaped depositions may have been helpful to counsel in the preparation and presentation of this case, Plaintiff has not established any additional reason why both deposition transcripts *and* videos were necessarily obtained in this case.

Accordingly, Plaintiff is entitled to recover costs for the court reporter appearance fees and written deposition transcripts for the depositions of Christina Demiduk, David Demiduk, Ron Wehrli, and James Leavitt (transcript only), because the depositions and review of the

transcripts were reasonably necessary for use in the case. Dkt. 165-1. Plaintiff has not met the burden to recover costs for both written and videotaped deposition transcripts. Regarding the depositions of Lindsay Winkler and Jonathan Domanus, I recommend allowing the attendance fee ($925.00) and the cost of a rough draft ($607.50), but denying the costs for expedited video deposition original and copy. See Dkt. 165-2, p. 15 & 16. I also recommend reducing the costs of deposition exhibits, as "district courts in the Fourth Circuit have held that a prevailing party may not tax certain expenses associated with a deposition beyond the cost of the actual transcript itself, such as costs for the inclusion of exhibits...." Selective Way Ins. Co. v. Apple, No. 3:13-cv-42, 2017 WL 111439, at *2 (W.D. Va. Jan. 11, 2017) (quoting Delapp v. Shearer's Foods, Inc., 2016 WL 1718395, at *3).

Accordingly, I recommend reducing the taxable deposition costs by $5196.90, for a total of $7525.80, as set forth below:

1) Ron Wehrli: Court reporter attendance $330.00 (allow)

    Certified original transcript $606.30 (allow)

    Videography $450.00 (deny)

2) David Demiduk: Court reporter attendance $660.00 (allow)

    Certified original transcript $763.35 (allow)

    Scanned exhibits $36.50 (deny)

    Equipment rental $50.00 (deny)

    Videography $662.50 (deny)

3) Christina Demiduk: Court reporter attendance $495.00 (allow)

    Certified original transcript $2787.90 (allow)

    Scanned exhibits $57.25 (deny)

         Equipment rental $50.00 (deny)

         Videography $2,308.75 (deny)

4) James Leavitt:  Transcript $350.75 (allow)

         Scanned exhibits $18.40 (deny)

5) Lindsay Winkler and
  Jonathan Domanus: Court reporter attendance $925.00 (allow)

         Expedited video deposition original and copy $1563.50 (deny)

         Rough draft $607.50 (allow)

**B. Court Hearing Transcripts, Printing and Copying Expenses**

Defendants object to awarding costs for printing and preparation of trial exhibits and trial transcripts, asserting that Plaintiff provided no explanation as to why those fees are necessary. Dkt. 168, p. 3. Plaintiff seeks to recover costs for the hearing transcript of Plaintiff's Motion to Compel at a "daily" rate for a total of $229.90; and the "hourly" transcript fee for the four-day trial, totaling $2,534.05.

An award of the costs of transcripts of pre-trial hearings and trial transcripts are taxable where reasonably necessary in the case. Brickey v. Hall, No. 1:13cv00073, 2017 WL 895746, at *2 (W.D. Va. Mar. 3, 2017) (holding that transcript of summary judgment hearing was reasonably necessary to the litigation). A party can also recover expedited costs "when the recovering party can show necessity for the expedited service." Ford v. Zalco Realty, Inc., 708 F. Supp. 2d 558, 562 (E.D. Va. 2010). Plaintiff provides no explanation as to why an expedited daily transcript of the motion to compel hearing was reasonably necessary, or why an hourly four-day trial transcript was necessary, with "daily" meaning the calendar day following receipt of the order, and "hourly" meaning that a transcript to be delivered within two hours from receipt of the order. See Dkt. 60, 120 & 140.

With regard to the motion hearing, Plaintiff provided a receipt for the cost listing the ordinary rate (Dkt. 165-2, p. 17); thus, I recommend reducing the taxable cost to $142.35 (39 pages x $3.65 ordinary rate per page). However, the Court cannot tax the ordinary cost for the trial transcript because Plaintiff did not provide the ordinary rate or the number of pages in the transcript for the Court to calculate the cost. Rather, Plaintiff simply provided a copy of what appears to be a PayPal receipt for $2,279.65 to court employee Lisa Blair, without any associated billing statement (Dkt. 165-2, p. 19) and a receipt from the Court for day one of trial, listing 212 pages at an hourly rate of $1.20 per page for a total of $254.40 (Dkt. 165-2, p. 20). Thus, I find that Plaintiff did not provide the required explanation or evidence to support its request to recover costs for an hourly four-day trial transcript, and recommend reducing Plaintiff's taxable transcript costs by $2,621.60.

Plaintiff also seeks copying costs of $2,706.13 for: 1) black and white blowbacks on color machine (3,720 at .20 cents each = $740.40); standard paper blowback (color) (2,763 at .50 cents each = $1,381.50); slipsheets (6 at .05 cents each = $0.30); preprinted tabs (720 at .25 cents each = $180.00); 4 inch binders (6 at $15.00 each = $90.00); 5 inch binders (3 at $30.00 each = $90.00); hourly charge for insertion of $75.00, and tax of $148.93. Plaintiff represents that the copying charges are associated with printing copies of trial exhibits for use at trial. Dkt. 156, p. 26. The docket reflects that the Court ordered counsel to submit three courtesy paper copies of trial exhibits to the Court's chambers prior to trial. Dkt. 79.

Section 1920(4) allows printing and copying expenses to be taxed when they are "necessarily obtained for use in the case." 28 U.S.C. § 1920 (2012). This covers "'discovery-related costs' and is not limited to 'materials attached to dispositive motions or produced at trial.'" McKinley v. Salvation Army, No. 7:15CV00166, 2017 WL 2799889, at *4 (W.D. Va. June 27,

2017) (quoting Country Vinter of N.C., LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 257 (4th Cir. 2013)). While taxable expenses include copies "submitted to the court and provided to opposing counsel," copies made for a party's own convenience are not allowed. Webb v. Kroger Ltd. P'ship I, No. 7:16–CV–00036, 2017 WL 2651721, at *5 (W.D. Va. June 19, 2017); Kennedy v. Joy Techs., Inc., 484 F. Supp. 2d 502, 505 (W.D. Va. 2007). The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge. Ford v. Zalco Realty, Inc., 708 F. Supp. 2d 558, 563 (E.D. Va. 2010).

Here, Plaintiff explained that the copies were required to provide the Court with three copies of its trial exhibits. Plaintiff did not provide any additional explanation, however, such as why color copies were necessary. See McAirlaids, Inc. v. Kimberly-Clark Corp., No. 7:12-cv-578, 2014 WL 495748, at *12 (W.D. Va. Feb. 6, 2014) (finding "no reason that color versions" of documents were "necessarily obtained for use in this case"). "The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge." Ford, 708 F. Supp. 2d at 563.

Additionally, this Court has ruled, consistent with prior decisions, that copy charges of ten cents per page are reasonable. See Stultz v. Virginia, No. 7:13-cv-589, 2019 WL 4741315, at *25 (Aug. 14. 2019), Delapp v. Shearer's Foods, Inc., 2016 WL 1718395, at *5; Hanwha Azdel, 2015 WL 1417058, at *16; see also Elderberry of Weber City, LLC v. Living Centers-Southeast, Inc., No. 6:12–cv–00052, 2014 WL 3900389, at *6, *17 (W.D. Va. Aug. 11, 2014); McAirlaids, Inc. v. Kimberly-Clark Corp., 2014 WL 495748, at *12; Adkins, 2005 WL 2563028, at *5–*6. Thus, I recommend allowing taxable costs for the black and white copies at a reduced .10 cent per copy rate (3,702 at .10 cents each = $370.20), and the charges for slipsheets ($0.30), preprinted tabs ($180.00), binders ($180.00) and insertion ($75.00), for a total of $805.50.

## IV. CONCLUSION

For the reasons set forth above, I **RECOMMEND DENYING** Plaintiff's Motion for Attorneys' Fees, and **GRANTING** Plaintiff's motion for costs, in the reduced amount of $8,973.65, as set forth in the chart below.

| **Taxable Costs** | **Plaintiff's Request** | **Amount Awarded** |
| --- | --- | --- |
| Filing Fees | $500.00 | $500.00 |
| Deposition Fees | $12,722.70 | $7,525.80 |
| Hearing Transcript Fees | $2,763.95 | $142.35 |
| Copies and Printing Fees | $2,706.13 | $805.50 |
| **TOTAL:** | **$18,692.78** | **$8,973.65** |

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: October 4, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge